**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| VICTORIA EVANOFF, as Administrator of the ESTATE OF JOHN EVANOFF, DECEASED | : : : | CIVIL ACTION |
| Plaintiff, | : : | No. 5:23-cv-03417-JFL |
| vs. | : : | |
| MARSH USA, LLC, | : : | |
| THERESE PERRETTE, and | : : | |
| JOHN DOE DEFENDANTS # 1-2 | : : | |
| Defendants. | : : | |

**BRIEF IN SUPPORT OF**
**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Defendants ("Marsh USA") and Therese Perrette (together, "Defendants"), by and through their undersigned counsel, Goldberg Segalla LLP, respectfully submit this Brief in Support of Defendants' Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56.

Dated: February 5, 2024

**GOLDBERG SEGALLA LLP**

_s/ Michael P. Luongo_
Michael P. Luongo, Esq. (PA I.D. No. 311948)
1700 Market Street, Suite 1418
Philadelphia, PA 19103
T: 267.519.6852
F: 267.519.6801
mluongo@goldbergsegalla.com

_Attorneys for Defendants_
_Marsh USA, LLC and Therese Perrette_

## <u>TABLE OF CONTENTS</u>

I.      STATEMENT OF PERTINENT FACTS ............................................................. 1

   A.   The March 6, 2021 Smelter Incident. ...................................................... 1

   B.   Marsh USA's January 2019 Statement of Work for East Penn. ..................... 2

   C.   Procedural History. .............................................................................. 6

II.     STATEMENT OF THE QUESTIONS INVOLVED ......................................... 7

III.    SUMMARY OF ARGUMENT ......................................................................... 8

IV.     ARGUMENT ................................................................................................. 10

   A.   Legal Standard. .................................................................................. 10

   B.   Summary Judgment Must Be Entered In Favor Of Defendants
        Because Marsh USA's Contractual Services For East Penn
        Pursuant To The January 2019 Statement Of Work Do Not Support
        The Essential Elements Of Duty, Breach, Or Causation Of Harm
        To Plaintiff Or Decedent As A Matter Of Law. ...................................... 11

        1.   Defendants did not owe a legal duty of care to Plaintiff or
             Decedent because they were neither parties to, nor intended
             third-party beneficiaries of, Marsh USA's Statement of
             Work With East Penn. .................................................................. 16

        2.   Plaintiff cannot establish liability under Restatement §
             324A because Marsh USA did not undertake any duty to
             visit the Smelter plant, let alone inspect Smelter plant for
             physical safety hazards. ............................................................... 21

             a.   Defendants did not specifically undertake a duty to
                  inspect or identify physical safety hazards at the
                  Lyons Complex. .................................................................. 21

             b.   Defendants did not undertake any duty to visit or
                  inspect all operations at the Lyons Complex or to
                  the Smelter plant in particular, where the Smelter
                  Incident occurred. .............................................................. 23

        3.   Summary judgment is additionally required because
             Plaintiff cannot satisfy any of the three subparts to § 324A.
             ................................................................................................. 25

   C.   Summary Judgment Must Be Entered In Favor Of Defendants
        Because Fairness And Public Policy Preclude Any Findings Of
        Duty, Foreseeability, Or Proximate Causation As A Matter Of Law
        Between Marsh USA's Gap Assessment For East Penn And The
        Smelter Incident. ................................................................................ 27

V.      CONCLUSION .............................................................................................. 29

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Betts v. New Castle Youth Dev. Ctr.*,
621 F.3d 249 (3d Cir. 2010) ...................................................................... 10

*Blessing v. United States*,
447 F. Supp. 1160 (E.D. Pa. 1978) ..................................................... 14, 26

*Bunis v. Masha Mobile Moving & Storage, LLC*,
2023 U.S. Dist. LEXIS 92401 (E.D. Pa. May 26, 2023) ........................... 16

*Cantwell v. Allegheny County*,
483 A.2d 1350 (Pa. 1984) ......................................................................... 13

*Casselbury v. Am. Food Serv.*,
30 A.3d 510 (Pa. Super. 2011) .................................................................. 13

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) ................................................................................... 11

*Chamberlain v. Giampapa*,
210 F.3d 154 (3d Cir. 2000) ...................................................................... 11

*Daraio v. Cary Can., Inc.*,
309 F. Supp. 2d 706 (E.D. Pa. 2004) ............................................. 15, 25, 26

*Dobransky v. EQT Prod. Co.*,
273 A.3d 1133 (Pa. Super. 2022) ................................................................ 2

*Estate of Zimmerman v. SEPTA*,
168 F.3d 680 (3d Cir. 1999) ...................................................................... 12

*Farabaugh v. Pa. Tpk. Comm'n*,
911 A.2d 1264 (Pa. 2006) ..................................................................... 11, 12

*Kaucher v. Cnty. of Bucks*,
455 F.3d 418 (3d Cir. 2006) ...................................................................... 10

*Massey v. Fair Acres Geriatric Ctr.*,
881 F. Supp. 2d 663 (E.D. Pa. 2012) ........................................................ 12

*N. Am. Elite Ins. Co. v. Victory Fire Prot., Inc.*,
2019 U.S. Dist. LEXIS 13765 (E.D. Pa. Jan. 29, 2019) ........................... 16

*Novak v. Jeannette Dist. Mem. Hosp.*,
600 A.2d 616 (Pa. Super. 1993) ............................................................ 10

*Patentas v. United States*,
687 F.2d 707 (3d Cir. 1982) ........................................................... passim

*Port Auth. v. Arcadian Corp.*,
189 F.3d 305 (3d Cir. 1999) ........................................................... 27, 28

*Pyeritz v. Commw.*,
32 A.3d 687 (Pa. 2011) ........................................................................ 27

*Reeser v. NGK N. Am., Inc.*,
14 A.3d 896 (Pa. Super. 2011) ............................................................. 14

*Ruehl v. S.N.M. Enters*,
2017 U.S Dist. LEXIS 5399 (M.D. Pa. Jan. 12, 2017) ......................... 12

*Sheridan v. NGK Metals Corp.*,
609 F.3d 239 (3d Cir. 2010) ............................................... 9, 13, 14, 20

*Sheridan v. NGK Metals Corp.*,
614 F. Supp. 2d 536 (E.D. Pa. 2008) ................................................... 14

*Steinbrink v. Rothstein, Kass & Co., P.C.*,
2008 U.S. Dist. LEXIS 21527 (W.D. Pa. Mar. 19, 2008) ...................... 16

*Straw v. Fair*,
187 A.3d 966 (Pa. Super. 2018) ..................................................... 11, 12

*Turbe v. Government of Virgin Islands*,
938 F.2d 427 (3d Cir. 1991) ................................................................. 14

*Unique Techs., Inc. v. Micro-Stamping Corp.*,
2003 U.S. Dist. LEXIS 12060 (E.D. Pa. Apr. 15, 2003) ...................... 16

*Wilson v. Hartford Cas. Co.*,
492 F. Supp. 3d 417 (E.D. Pa. 2020) ................................................... 21

**Statutes**

29 U.S.C. § 654(a)(1) .............................................................................. 8

42 Pa.C.S. § 8301 .................................................................................. 12

77 P.S. § 481(a) ……………………………………………………………...…….. 2 n.3

**Other Authorities**

Restatement (Second) of Torts § 324A......................................................... 7, 9, 12, 13

**Rules**

Fed. R. Civ. P. 56................................................................................................. 10, 11

## <u>TABLE OF EXHIBITS</u>

**ECF No. 1**      Notice of Removal

**ECF No. 1-5**  Plaintiff's Amended Complaint

**ECF No. 1-7**  Plaintiff's Complaint

**ECF No. 8**      Defendants' Answer to Plaintiff's Amended Complaint

**Exhibit 1**       Affidavit of Troy Greiss (East Penn)

**Exhibit 2**       Affidavit of Brian Birckbichler (East Penn)

**Exhibit 3**       Deposition Transcript of Brian Birckbichler (East Penn)

**Exhibit 4**       Deposition Transcript of Therese Perrette (Marsh USA)

**Exhibit 5**       January 2019 Statement of Work

**Exhibit 6**       October 17, 2018 Email Chain Between Marsh USA and East Penn

**Exhibit 7**       January 9, 2019 Email from Marsh USA to East Penn

**Exhibit 8**       February 10, 2019 Email from East Penn to Marsh USA
with attached Onsite Visit Scheule for February 13 and 14, 2019 Site Visits

**Exhibit 9**       February 15, 2019 Email from Marsh USA to East Penn

**Exhibit 10**     February 25, 2019 Email from East Penn to Marsh USA
with attached Onsite Visit Schedule for February 27, 2019 Site Visit

**Exhibit 11**     March 5, 2019 Email from East Penn to Marsh USA

**Exhibit 12**     Marsh 6, 2019 Email from East Penn to Marsh USA

**Exhibit 13**     March 20, 2019 Email from Marsh USA to East Penn
with attached Operational Loss Prevention Gap Assessment

**Exhibit 14**     May 13, 2019 Email from East Penn to Marsh USA

**Exhibit 15**     May 14, 2019 Email from Marsh USA to East Penn
with attached PowerPoint

**Exhibit 16**     November 28, 2018 Email Chain Between Marsh USA and East Penn

**Exhibit 17**     Deposition Transcript of Troy Greiss (East Penn)

I.      **STATEMENT OF PERTINENT FACTS**[1]

A.      **The March 6, 2021 Smelter Incident.**

Plaintiff Victoria Evanoff filed this negligence, wrongful death, and survival action lawsuit in connection with the workplace death of John Evanoff ("Decedent") – a refinery attendant employed in the Smelter plant of non-party East Penn Manufacturing Company ("East Penn"). Decedent's death is undeniably tragic.  On March 6, 2021, while in course of his employment as a refinery attendant at East Penn, Decedent stepped onto the lid of a kettle in the Smelter plant to manually facilitate a piece of lead through an opening in the lid, when he fell through the opening, resulting in fatal injuries (the "Smelter Incident").[2]  (SMF ¶ 57-58.)  Plaintiff alleges that the opening in the lid of the kettle constituted a fall hazard, and that this existing fall hazard could have been remediated with the addition of a guardrail or other physical safety barrier.  (Am. Compl. ¶¶ 49, 53, 59.)  According to East Penn, if a piece of lead is too large to fit through the opening in the lid of a kettle, employees should cut it down to size away from the kettle or on a forklift, and then load the lead using a forklift. (SMF ¶¶ 60-61.)  East Penn provided training to employees, including Decedent, on the procedure for loading lead into kettles, and employees were trained not to climb onto the kettle lid when loading lead.  (SMF ¶¶ 61-63.)

Regardless of whether Decedent failed to follow East Penn's training, East Penn was at all times responsible for the safety of its workplace and that of its employees.  East Penn is a sophisticated manufacturing company with its own companywide safety program that it has developed over the past 25 years, as well as its own safety, industrial hygiene, medical, and

---

[1] The undisputed material facts, with citations to the record, are set forth in the Defendants' accompanying Statement of Undisputed Material Facts. The material facts are summarized here, with references, at times, to the numbered paragraphs in the Statement of Material Facts ("SMF").

[2] The kettles, which are used to process and refine lead in the manufacture of batteries, are approximately 8' wide, 6.25' deep, with a 4' opening in the lid for access, and are partially recessed into the floor, such that the lid of the kettle is approximately 2' above the floor.  (SMF ¶¶ 53-54.)

environmental departments.  (SMF ¶ 12.)  East Penn has implemented written safety policies and procedures, provided training to employees, and conducted frequent and regular inspections of its premises. (SMF ¶¶ 12-15, 61.)  Plaintiff, however, is barred from pursuing tort claims against East Penn related to the Smelter Incident. That is because employers such as East Penn are immune from tort liability for injuries sustained by employees in the course of their employment under Pennsylvania's Workers' Compensation Act.[3]  Because Plaintiff has no legal remedy against East Penn outside of workers' compensation benefits, Plaintiff's counsel instead turned their attention to any third parties who may have contracted with East Penn.  Plaintiff's counsel ultimately identified Defendants Marsh USA and Therese Perrette – a Consulting Director in Marsh USA's Workforce Strategies Group.  (SMF ¶ 21.)  While Defendants acknowledge the tragic nature of Decedent's death, it has absolutely nothing to do with the contractual services that Defendants provided to their client, *East Penn*, in early 2019 – two years before the Smelter Incident. The absence of any legal duty of care or causation is evident from the undisputed material facts.

### B.    Marsh USA's January 2019 Statement of Work for East Penn.

East Penn is a battery manufacturing company that operates a "massive"[4] 520-acre single-site battery manufacturing complex in Lyons, Pennsylvania.  (SMF ¶¶ 1-2.)  The Lyons Complex has multiple operational divisions, comprised of approximately twenty separate buildings/plants, totaling over three million square feet of floor space, with over 7,500 employees.  (SMF ¶¶ 3-4.) The Smelter plant, which is part of the Metals Division, is a physically separate facility from other plants and divisions at the Lyons Complex, all of which are different and unique. (SMF ¶¶ 10-11.)

---

[3] 77 P.S. § 481(a); *see Dobransky v. EQT Prod. Co.*, 273 A.3d 1133, 1134 (Pa. Super. 2022) ("with respect to work-related injuries, the employers have immunity from tort liability").

[4] *See* https://www.eastpennmanufacturing.com/about/facilities/ ("East Penn is proud to operate a massive, 520-acre single-site battery manufacturing complex in Berks County, Pennsylvania.")

In January 2019 – over two years prior to the Smelter Incident – East Penn engaged Marsh USA pursuant to a written agreement (the "Statement of Work") to perform a one-time outside evaluation / "gap assessment" of the strengths and weaknesses of East Penn's existing loss prevention processes and work culture at the Lyons Complex.  (SMF ¶ 25.)  It was East Penn's choice to request the gap assessment; it was not required.  (SMF ¶ 18.)  Pursuant to the Statement of Work, the gap assessment was to be accomplished, in large part, through two to four site visits to certain locations in the Lyons Complex, for the purpose of interviewing select employees and supervisors using a survey/questionnaire on six categories of safety culture.  (SMF ¶ 32.)  This approach of interviewing employees and supervisors using a survey containing questions on categories of safety culture is described in the Statement of Work as an "OPS Gap."  (*See* **Ex. 4**, Perrette Dep. 55:3-13;[5] **Ex. 5**, Statement of Work, at p. 4.)

East Penn's Director of Health & Safety, Brian Birckbichler, emailed Ms. Perrette onsite visit schedules to be sent to East Penn escorts in advance of the site visits, which explained:

> **Marsh Risk Consulting H&S Program Gap Analysis – onsite survey**
> On the dates listed below Marsh Risk Consulting will be present on the Lyons facility to do informal interviews with employees and Department Supervision at the Lyons Facility.  The purpose of the interviews is a component of an analysis of our Health & Safety Program so we can determine future steps to reduce incident rates.  The interviews are expected to be no longer than 15 minutes and will be conducted on the floor.  Please be available at the time listed to aid in the evaluation by acting as an escort for the Marsh representatives. . . . The selection of participants is random, however, we would like to ensure a focus on the following 4 departments; Compupress (Stripmaking/Punch), Enveloping, Rawfill, and Finish

---

[5] Ms. Perrette explained the OPS Gap section of page 4 of the Statement of Work as follows:

> Q.  What was meant by safety?
> A.  May I explain what the OPS gap is?
> Q.  Can you just tell me first what you meant by safety?
>            * * *
> A.  There are 40 questions in the OPS gap.  The 40 questions relate to those six bullets [on page 4 of the Statement of Work].  What is meant by safety is the concept of safety within the organization or safety culture.

due to incident history in these areas, balanced with random samples in other departments.

(**Ex. 8**, 10 Feb. 10, 2019 Email from East Penn, attachment; *see also* **Ex. 10**, Feb. 25, 2019 Email attachment.)  The departments identified as areas of focus – compupress, enveloping, rawfill, and finish – have nothing to do with the Smelter department.  (**Ex. 3**, Birckbichler Dep. 72:10-15.)

In February 2019, Ms. Perrette appeared for an introductory visit, and three subsequent site visits of certain areas of the Lyons Complex for the purpose of interviewing select employees and supervisors regarding Marsh USA's "OPS Gap" survey/questionnaire on safety culture. (SMF ¶¶ 32-33.)  As stated in the Statement of Work, and as confirmed by the testimony of both parties to that agreement (Marsh USA and East Penn), the purpose of the Statement of Work was *not* to identify potential physical safety hazards at the Lyons Complex, and there was no expectation by East Penn that Marsh USA would do so.  (SMF ¶¶ 25-26.)  Marsh USA's site visits to the Lyons Complex were limited to select plants in the Automotive, Motive, and Reserve Power Divisions (specifically, plants A-1, A-2, A-3, A-4, S-1, and Industrial), which are physically separate from, and unrelated to, the Smelter plant in the Metals Division.  (SMF ¶¶ 10, 35.)  East Penn did not request, expect, or intend that Marsh USA would visit, let alone *inspect*, all plants or operations at the Lyons Complex in performing its gap assessment for East Penn. (SMF ¶¶ 28, 36.)  East Penn never requested Marsh USA to visit the Smelter plant and Marsh USA never did visit the Smelter plant.  (SMF ¶¶ 36, 37.)  In other words, **Defendants never saw, were never asked to see, and had no duty to see the Smelter plant, where the Smelter Incident occurred**.  (SMF ¶ 37.)

Further, while Plaintiff has suggested that Ms. Perrette had some discretion as to what parts of the Lyons Complex to visit, there is no evidence that the Smelter plant was identified as a particular area of concern by East Penn, or that Ms. Perrette had any reason to select that one part of the sprawling Lyons Complex to visit over any other.  The areas that Marsh USA did visit were

the ones identified for focus by East Penn. (*See* **Exs. 8**, **10**.)  That was not arbitrary. East Penn

provided injury data by plant, department, and job to Marsh USA in March 2019 as part of the gap

assessment (SMF ¶ 42), which show that the plants that Marsh USA visited had the highest total

injury counts; the Smelter plant count was significantly lower, by a factor of four to nine times.

Marsh USA agreed to this one-time, limited-scope, assignment, to help East Penn identify

and address gaps in its current loss prevention program and to recommend systems for overall

improvement; Marsh USA did not agree, and could not agree, to eliminate all incidents, or any

particular incident, from occurring at East Penn.  (**Ex. 5**, Statement of Work, at p. 3.)  To remove

any doubt, the Statement of Work expressly and conspicuously states that: "**MARSH [USA]**

**DOES NOT GUARANTEE OR WARRANT THE SAFETY OF ANY [OF EAST PENN]'s**

**PROPERTIES OR OPERATIONS**."  (SMF ¶ 26; **Ex. 5**, Statement of Work, at p. 12 (emphasis

in original).) Further, pursuant to the Statement of Work, and as confirmed by the parties to that

agreement, Marsh USA's gap assessment was solely for the use of East Penn, as the client, and

was not for the benefit of any third party, including East Penn's employees.  (SMF ¶ 31.)

After conducting its limited site visits to the Lyons Complex, Marsh USA used the data

obtained from its on-site surveys and information from the documents provided by East Penn to

prepare a written report to East Penn titled Operational Loss Prevention Gap Assessment (the "Gap

Assessment"), which Marsh USA emailed to East Penn on March 20, 2019.  (SMF ¶ 45.)  The Gap

Assessment reiterates the purpose of the Statement of Work, discusses the procedure for the safety

culture surveys that were performed in February 2019, identifies the select plants and operations

that were visited, and makes certain recommendations for consideration by East Penn.  (*See* **Ex.**

**13**, Mar. 20, 2019 Email from Marsh USA to East Penn attaching Gap Assessment.)  Marsh USA

also prepared a PowerPoint slide show summarizing the Gap Assessment, which it presented to

East Penn at a May 15, 2019 meeting.  (SMF ¶ 48.)  East Penn had the sole discretion whether to implement any recommendations made by Marsh USA.  (SMF ¶ 49.)  Marsh USA's services pursuant to the Statement of Work concluded in May 2019, and Marsh USA was not engaged to perform any services for East Penn in subsequent years.  (SMF ¶¶ 51-52.)  According to East Penn, the Gap Assessment delivered positive results for East Penn, including improvement in East Penn's workplace safety culture and East Penn's development of an improved program of safety management, as well as management boards that review key indicators of safety and health.  (SMF ¶ 50.)  These results were to East Penn's benefit. (SMF ¶ 50.)

### C. Procedural History.

Plaintiff commenced this action by filing a Complaint in the Court of Common Pleas of Philadelphia County on March 3, 2023.  (ECF No. 1-7, Compl.)  Plaintiff's Complaint named 15 defendants believed to have contracted with East Penn.  (*Id.*)  On August 23, 2023, Plaintiff filed her Amended Complaint naming only Marsh USA and Therese Perrette.  (ECF No. 1-5, Am. Compl.)  On August 31, 2023, Marsh USA removed the action to the United States District Court for the Eastern District of Pennsylvania on diversity jurisdiction grounds.  (ECF No. 1, Notice of Removal.)

Plaintiff's Amended Complaint asserts claims against Defendants for negligence (Counts I and II), wrongful death (Count IV), and survival action (Count V), as well as vicarious liability against Marsh USA as the employer of Ms. Perrette (Count III).  Each of these counts is based on alleged negligence of Defendants.  Specifically, Plaintiff alleges that the Smelter Incident resulted from a supposed existing fall hazard around the Smelter plant kettle, and that it could have been remediated with the addition of safety barriers.  Plaintiff's theory of negligence is predicated on the false allegations that: (a) Defendants were supposedly hired by East Penn "to inspect its premises to . . . identify any safety hazards or issues;" and (b) that Defendants supposedly had a duty to inspect

the Smelter plant for alleged fall hazards and identify or remediate the supposed hazards pursuant to Marsh USA's Statement of Work with East Penn.  (*See* Am. Compl. at ¶¶ 2, 49, 56.)

Plaintiff's allegations have no legal or evidentiary basis.  The undisputed material facts, as confirmed by the express written terms of the Statement of Work, the written Gap Assessment, and the testimony of both Marsh USA and East Penn, instead show that Marsh USA: (a) did not assume any duty to East Penn employees; (b) was not engaged to inspect or identify physical safety hazards for East Penn; (c) did not undertake any duty to visit the Smelter plant, let alone inspect the Smelter plant for potential safety hazards; (d) was not asked to visit or inspect the Smelter plant; and (e) never did visit or inspect the Smelter plant as part of its gap analysis for East Penn.  Further, there is no evidence, or even any allegation, that Defendants caused the alleged fall hazard in the Smelter plant through any affirmative act.  Nor are Plaintiff or Decedent express intended third-party beneficiaries of the Statement of Work. The absence of a legal duty of care or causation precludes liability.

## II.    STATEMENT OF THE QUESTIONS INVOLVED

1.    Whether Defendants are entitled to judgment as a matter of law because Defendants did not owe a duty of care to Plaintiff or Decedent, who are not parties to, or express intended third-party beneficiaries of, Marsh USA's Statement of Work with East Penn? *Answer: Yes.*

2.    Whether Defendants are entitled to judgment as a matter of law because Plaintiff cannot establish any of the essential elements of liability under the controlling standard set forth in Restatement (Second) of Torts § 324A and adopted by the Pennsylvania Supreme Court (regarding liability to third person for negligent performance of undertaking), where: (1) Marsh USA did not specifically undertake a duty to inspect the Smelter plant for safety hazards for the benefit of East Penn employees; *and* (2) where Plaintiff cannot establish as a matter of law either that (a) Defendants' actions increased the risk of harm by creating the alleged fall hazard that supposedly contributed to the Decedent's death, (b) Defendants undertook to perform duties owed

7

by East Penn to its employees, or (c) the alleged harm resulted from detrimental reliance on Defendants' services for East Penn? *Answer: Yes.*

3.      Whether Defendants are entitled to judgment as a matter of law because considerations of public policy and fairness preclude legal findings of duty, foreseeability, or proximate causation between Marsh USA's March 2019 Gap Assessment for East Penn and the March 2021 Smelter Incident? *Answer: Yes.*

## III.    SUMMARY OF ARGUMENT

Plaintiff's claims fail both under the express terms of the Statement of Work and under the law.  Plaintiff cannot establish a legal duty of care because Decedent was not an express intended third-party beneficiary of Marsh USA's Statement of Work with East Penn.  Plaintiff likewise cannot establish any of the essential elements of negligence under the standard set forth in Restatement (Second) of Torts § 324A, which controls in this instance.

East Penn is required to provide its employees with a workplace that is free from "recognized hazards…likely to cause death or serious physical harm." 29 U.S.C. § 654(a)(1).  Yet, the Workers' Compensation Act prohibits Plaintiff from asserting tort claims against East Penn if it fails to do so.  As a result, Plaintiff has asserted negligence-based tort claims against Defendants in connection with the Smelter Incident based solely on Marsh USA's contractual services for East Penn two years prior, pursuant to a written Statement of Work – notwithstanding that Defendants' contractual services for East Penn have absolutely nothing to do with the Smelter Incident.

Pursuant to the express terms of the Statement of Work, and as confirmed by the parties to that contract, Decedent was not an intended third-party beneficiary of the Statement of Work. As such Plaintiff lacks standing to assert claims sounding in breach of contract or professional negligence in connection with Defendants' contractual services for East Penn.  Indeed, Plaintiff does not even plead third party beneficiary status or breach of contract in the complaint.

While persons contracting to provide services are generally not liable to third parties absent third-party beneficiary status, the Pennsylvania Supreme Court has recognized a narrow exception for liability where a party undertaking to perform contractual services for another should reasonably recognize those services as necessary for the protection of a third person, and the negligent performance of those services causes physical harm to the third person. The Pennsylvania Supreme Court has adopted Restatement (Second) of Torts § 324A as the applicable standard in such cases. To establish liability under § 324A, the third person plaintiff must establish (1) that the defendant undertook a specific duty to perform the task that it is alleged to have performed negligently, *and* (2) that one of three subparts in §324A(a)-(c) is satisfied: either (a) the defendant's *affirmative* acts increased the risk of harm to the plaintiff, (b) the defendant undertook to perform a duty owed by the other contracting party to the plaintiff, or (c) the injury was the result of detrimental reliance on the defendant's services. *See Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 263 (3d Cir. 2010). None of the elements of liability under § 324A are present here.

Defendants did not specifically undertake a duty to visit, let alone inspect, the Smelter plant (or any location at East Penn) for physical safety hazards, nor did they undertake a duty to protect East Penn employees from physical safety hazards. Moreover, even if Plaintiff's position on duty were correct (and it is not), Plaintiff can, at most, only argue that Defendants should have identified an existing fall hazard in the Smelter plant (which itself is not established) but failed to do so. This alleged *omission* is insufficient to establish liability under § 324A. Defendants instead must have caused the hazard through affirmative acts of *commission*. Absent that showing, and without any basis to support the other subparts of § 324A, Plaintiff cannot meet her burden of proof.

Finally, Plaintiff's action violates fairness and contravenes public policy by ignoring the benefit of Defendants' gap assessment for East Penn, including improvements in safety culture

and its health and safety management systems, while demanding liability for *any* unforeseeable incident. To hold Defendants liable for the single Smelter Incident, in the Smelter Plant that Defendants never even saw, two years after Defendants completed their gap assessment for East Penn, demands a duty of care that Defendants never contracted, and could not contract, to provide: the *elimination* of *all* workplace incidents at East Penn.  This would, in effect, make Defendants strictly liable, in perpetuity, for all workplace incidents involving any of the 7,500-plus employees at East Penn's 520-acre, three million square foot Lyon's Complex, merely because Marsh USA performed a gap assessment of East Penn's safety culture in early 2019 for East Penn's benefit. Tort law does not permit such boundless limits of duty and causation.  *See Novak v. Jeannette Dist. Mem. Hosp.*, 600 A.2d 616, 618 (Pa. Super. 1993) (proximate cause is not established where "the defendant's negligence, if any, was so remote that as a matter of law, he cannot be held legally responsible for harm which subsequently occurred").  As such, summary judgment is required.

## IV.   ARGUMENT

### A.     Legal Standard.

Summary judgment is required "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a). An issue is "genuine" if there is sufficient evidence on which a reasonable jury could return a verdict for the non-moving party.  *Kaucher v. Cnty. of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006). A factual dispute is "material" if it might affect the outcome of the case under governing law.  *Id.* "Unsupported assertions, conclusory allegations, or mere suspicions are insufficient to overcome a motion for summary judgment." *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 252 (3d Cir. 2010). Where the non-moving party bears the burden of proof on a particular issue, the moving party's initial burden can be met simply by "pointing out to the district court that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325

(1986).  After the moving party has met its initial burden, the non-moving party must set forth specific facts showing that there is a genuinely disputed factual issue for trial. Fed. R. Civ. P. 56(c). Summary judgment is proper if the non-moving party fails to rebut by making a factual showing "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

>   **B.    Summary Judgment Must Be Entered In Favor Of Defendants Because Marsh USA's Contractual Services For East Penn Pursuant To The January 2019 Statement Of Work Do Not Support The Essential Elements Of Duty, Breach, Or Causation Of Harm To Plaintiff Or Decedent As A Matter Of Law.**

Each of Plaintiff's tort claims arises from Defendants' performance of contractual services for East Penn pursuant to the January 2019 Statement of Work.  Specifically, Plaintiff asserts that Defendants were negligent for failure to identify and remediate a purported existing fall hazard in in the Smelter plant, which allegedly contributed to the Smelter Incident, notwithstanding that Defendants' contractual services for East Penn had nothing to do with the Smelter plant, or inspection of physical safety hazards at the Lyons Complex in general.

Because this Court is exercising diversity jurisdiction, the substantive law of Pennsylvania applies to Plaintiff's state tort claims.  *Chamberlain v. Giampapa*, 210 F.3d 154, 158 (3d Cir. 2000).  In Pennsylvania, a plaintiff alleging negligence "must demonstrate: (1) a duty of care; (2) the breach of the duty; (3) a causal connection between the conduct and the resulting injury; and (4) actual loss or damage resulting to the plaintiff."  *Farabaugh v. Pa. Tpk. Comm'n*, 911 A.2d 1264, 1283 (Pa. 2006).  To establish the element of causation, the "plaintiff must produce sufficient facts to show that the defendant's negligence was both a cause-in-fact and the legal, or proximate, cause of her injuries."  *Straw v. Fair*, 187 A.3d 966, 993 (Pa. Super. 2018).  "[C]onduct is a proximate cause of the plaintiff's harm where the conduct was a substantial factor in bringing about the harm inflicted upon a plaintiff."  *Id.*  The existence of a duty of care and proximate cause

are each questions of law for the court to decide.  *Id.* at 983, 1005.  Whether a legal duty exists, and the subsequent questions of breach and causation, require courts to assess "the nature and scope of the contractual undertaking."  *Farabaugh*, 911 A.2d at 79.

"[T]o recover in an action for wrongful death, the plaintiff must prove that the death was caused by violence or negligence of the defendant."  *Ruehl v. S.N.M. Enters*, 2017 U.S Dist. LEXIS 5399, at *14 (M.D. Pa. Jan. 12, 2017) (citing 42 Pa.C.S. § 8301(a)).  A survival action is not a new cause of action, but instead permits a personal representative to enforce a cause of action that has already accrued to the deceased before his death.  *Pastierik v. Duquesne Light Co.*, 526 A.2d 323, 326 (Pa. 1987).  Because Plaintiff's wrongful death and survival action are each based on alleged negligence (*see* Am. Compl. ¶¶ 65, 70), Plaintiff must establish the elements of negligence to satisfy these counts. *Estate of Zimmerman v. SEPTA*, 168 F.3d 680, 684 (3d Cir. 1999) ("The failure to establish any one of these elements is a ground for summary judgment.")

Plaintiff attempts to hold Defendants liable under a negligence theory for harm to Decedent based solely upon the contractual services that Defendants rendered to East Penn in 2019 pursuant to the Statement of Work between Marsh USA and East Penn.  Under Pennsylvania law, a party to a contract generally does not owe any duty or become liable for breach of the contract to a third person who is not a party to the agreement.  *See Farabaugh*, 911 A.2d at 1283 (Pa. 2006). "However, a party to a contract by the very nature of his contractual undertaking may place himself in such a position that the law will impose upon him a duty to perform his contractual undertaking in such manner that third persons — strangers to the contract — will not be injured thereby."  *Id.*

The Pennsylvania Supreme Court has adopted Restatement (Second) of Torts § 324A as the applicable standard when a party undertaking to render contractual services to another (in this case Marsh USA's undertaking to perform services for East Penn) may be liable for physical harm

to a third person (here, Plaintiff/Decedent) in connection with those services.  *See Cantwell v. Allegheny County*, 483 A.2d 1350 (Pa. 1984).  Restatement § 324A provides:

### § 324A Liability to Third Person for Negligent Performance of Undertaking

One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if

(a) his failure to exercise reasonable care increases the risk of such harm, or

(b) he has undertaken to perform a duty owed by the other to the third person, or

(c) the harm is suffered because of reliance of the other or the third person upon the undertaking.

Restatement (Second) of Torts, § 324A.

According to the Third Circuit, "[f]or liability to be imposed under § 324A, the defendant specifically [must have] undertaken to perform the task that [it] is charged with having performed negligently." *Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 263 (3d Cir. 2010).  "In other words, the defendant must have assumed an affirmative duty to be liable to third parties for negligently performing that duty." *Id.*  "[I]f there was no reason that the defendant should have foreseen that his actions were necessary for the protection of the plaintiff, no cause of action will lie under § 324A." *Cantwell*, 483 A.2d at 1353-54.  Thus, to assess the existence of a duty, courts must look at the specific contractual obligations that the defendant agrees to perform.  *See Casselbury v. Am. Food Serv.*, 30 A.3d 510, 516 (Pa. Super. 2011).

Further, "[i]n addition to proving the defendant owed a duty to exercise reasonable care, the plaintiff must also show that one of the three causation requirements in [the subparts to] § 324A has been met." *Id.*  The first subpart, § 324A(a), "applies only when the defendant's actions increased the risk of harm to the plaintiff relative to the risk that would have existed had the defendant never provided the services initially;" **an omission in failing to identify an existing**

**harm does not suffice**.  *Turbe v. Government of Virgin Islands*, 938 F.2d 427, 432 (3d Cir. 1991);

*Patentas v. United States*, 687 F.2d 707, 717 (3d Cir. 1982) ("'increased risk' means some physical

change to the environment or some other material alteration of circumstances").  As to the second

subpart, § 324A(b), there must be an express undertaking to assume duties owed by the other

contracting party to the injured third party.  *See Blessing v. United States*, 447 F. Supp. 1160, 1194-

95 (E.D. Pa. 1978).  The third subpart, § 324A(c), involves detrimental reliance, which requires

both knowledge of the defendant's undertaking and reliance by the person in privity upon the

undertaking so as to induce them to forgo other remedies or precautions against the risk.  *See*

*Patentas*, 687 F.2d at 717.

      Pennsylvania appellate courts, the federal district courts in Pennsylvania, and the Third

Circuit Court of Appeals have all held that professionals engaged to provide consulting services

for a company generally do not assume liability to third parties in connection with those consulting

services under § 324A. For instance, in *Sheridan*, *supra*, the Third Circuit considered whether an

engineering firm that was hired by a manufacturing plant to test emission levels had a duty to

inform residents of the community that the levels were high.  The Third Circuit explained that to

sustain liability under § 324A, the engineering firm must have specifically undertaken a duty to

warn the residents of harmful emission levels.  Because the residents failed to allege facts

establishing a breach of the defendant's actual contractual duties to test emission levels, the Third

Circuit affirmed the Eastern District's order and decision granting summary judgment to the

engineering firm.  *Sheridan*, 609 F.3d at 264; *see also Sheridan v. NGK Metals Corp.*, 614 F. Supp.

2d 536 (E.D. Pa. 2008) (Eastern District decision); *Reeser v. NGK N. Am., Inc.*, 14 A.3d 896 (Pa.

Super. 2011) (reaching same holding under similar facts).

Similarly, in *Daraio v. Cary Can., Inc.*, 309 F. Supp. 2d 706 (E.D. Pa. 2004), the Eastern District considered the duty of a an insurance carrier that had conducted dust studies of an employer's workplace to an employee who suffered injury from asbestos exposure.  In assessing liability under § 324A, the Eastern District determined that the carrier never assumed a duty to warn employees about asbestos levels, and that "the overall responsibility for safety at the [employer] remained with the [employer] itself and its own safety team."  *Id.* at 710.  The Eastern District additionally explained that the subparts to § 324A were not applicable.  Section 324A(a) did not apply because the carrier did not increase the risk of harm to the employee.  Section 324A(b) did not apply because the carrier did not assume a duty to be responsible for the overall safety of the plant.  Section 324A(c) did not apply because there was no evidence that the plaintiff relied upon the carrier's dust studies or that the studies themselves were performed negligently – "[t]he responsibility of keeping the employees safe always remained with the [employer]."  *Id.* at 713.  Accordingly, the Eastern District granted summary judgment in favor of the carrier.

Here, like the defendants in *Sheridan* and *Daraio*, Marsh USA and Therese Perrette, did not undertake any duty to perform services for the benefit of East Penn employees, did not undertake a specific duty to inspect for physical safety hazards at the Lyons Complex in general, and did not undertake any duty to even visit the Smelter plant, let alone inspect the Smelter plant for safety hazards.  Defendants thus did not specifically undertake a duty to perform the task that they are charged with having performed negligently: the alleged failure to remediate an existing fall hazard in the Smelter Plant at East Penn.  Moreover, Plaintiff additionally cannot establish any of the three subparts to § 324A because this alleged failure is, at most, an omission, and East Penn remained responsible for the safety of its own workplace and employees.

      1.     **Defendants did not owe a legal duty of care to Plaintiff or Decedent because they were neither parties to, nor intended third-party beneficiaries of, Marsh USA's Statement of Work With East Penn.**

Plaintiff has not pled any breach of contract count against Defendants. (*See* ECF No. 1-5, Am. Compl.)  Plaintiff likewise has not pled any professional negligence count.  (*Id.*)  Nor has Plaintiff pled any allegation that Plaintiff or Decedent are intended third-party beneficiaries of the Statement of Work between Marsh USA and East Penn.  (*Id.*) Plaintiff cannot plead these theories of liability because she lacks privity of contract with Defendants and there is no intention by East Penn or Marsh USA under the Statement of Work to confer third-party beneficiary status.

"Typically, privity of contract is a mandatory prerequisite for a party to bring a breach of contract claim."  *See Unique Techs., Inc. v. Micro-Stamping Corp.*, 2003 U.S. Dist. LEXIS 12060, at *6 (E.D. Pa. Apr. 15, 2003).  Likewise, "[t]he Pennsylvania Supreme Court requires privity between a plaintiff and a defendant [professional] to maintain a professional negligence action." *Steinbrink v. Rothstein, Kass & Co., P.C.*, 2008 U.S. Dist. LEXIS 21527, at *8-9 (W.D. Pa. Mar. 19, 2008).  An exception to the requirement of privity exists for intended third party beneficiaries of a contract.  *N. Am. Elite Ins. Co. v. Victory Fire Prot., Inc.*, 2019 U.S. Dist. LEXIS 13765, *15-16 (E.D. Pa. Jan. 29, 2019)  "For an intended third-party beneficiary to recover on a contract, both contracting parties must have expressed an intention that the third party be a beneficiary, and that intention must have affirmatively appeared in the contract itself."  *Bunis v. Masha Mobile Moving & Storage, LLC*, 2023 U.S. Dist. LEXIS 92401, at *10 (E.D. Pa. May 26, 2023).  Plaintiff has not pled, and cannot plead, any third-party beneficiary status under the Statement of Work.

The Statement of Work is a contract between Marsh USA and East Penn only.  (**Ex. 5**, Statement of Work.)  It was executed for the benefit of East Penn, and expressly excludes any third-party beneficiaries.  That the Statement of Work is solely for the benefit of East Penn is apparent from its plain terms, including the "Purpose and Scope" section, which states:

East Penn Manufacturing seeks an in-depth, outside evaluation of their current loss prevention processes as well as their work culture as it relates to loss prevention and risk management.

The objective of Marsh's engagement is to help address East Penn Manufacturing's desire to identify and systematically address identified gaps in its current loss prevention management system, evaluate the effect of those gaps on the organization's loss prevention and risk management culture, and recommend systems to assure that improvements are sustained.

(*Id.* at p. 3.) The absence of any third-party beneficiaries is stated expressly and repeatedly in the

Standard Terms & Conditions. Section 1, "Services," provides:

[A]ll decisions in connection with the implementation of such advice and recommendations shall be the sole responsibility of, and made by, [East Penn].... Marsh shall have no liability to any third party in connection with these services….

(*Id.* at p. 9.) Section 6, "Consultant Work Product," provides:

Work product and Marsh [USA]'s analysis, advice, findings, opinions and recommendations are solely for the information of [East Penn] and may not be... disclosed or delivered by [East Penn] to any other person or entity….

(*Id.* at pp. 6-7.) Section 11, "No Third Party Benefits," provides:

The Parties hereto mutually agree that this Agreement is intended by them to be solely for the benefit of the Parties hereto and that no third parties may rely on any reports, analysis or other material provided by Marsh or shall obtain any direct or indirect benefits from the Agreement, have any claim or be entitled to any remedy under this Agreement or otherwise in any way be regarded as third party beneficiaries under this Agreement.

(*Id.* at p. 11.) The absence of any intended third-party beneficiaries is also confirmed by the

testimony of the parties to the agreement: Marsh USA and East Penn. (*See, e.g.*, **Ex. 1**, Greiss Aff.

¶ 13 ("the services that Marsh USA performed were solely for the benefit of East Penn"); **Ex. 4**,

Perrette Dep. 128:21-23 ("Marsh had no responsibility or understanding to perform responsibility

to East Penn employees.").) Thus, the Statement of Work expressly excludes third party

beneficiary status to East Penn employees, including Decedent.

Although Plaintiff has not pled any third-party beneficiary status, and cannot plead any third-party beneficiary status under the Statement of Work, the gist of Plaintiff's action against Defendants is that they supposedly breached contractual duties arising from the Statement Work by failing to undertake *additional* services for East Penn as part of the gap assessment; not that they caused harm that did not previously exist so as to violate a broader social duty imposed by the law of torts.  Plaintiff's counsel offers a list of hindsight critiques, asserting that Defendants: should have visited more plants at the Lyons Complex or visited the Smelter plant (even though they were not asked to, were not required to, and had no particular reason to) (**Ex. 2**, Birckbichler Aff. ¶¶ 20,[6] 25[7]); should have conducted hazard *inspections* in addition to conducting employee interviews on site (even though the purpose of the site visits was a safety culture survey) (*id.* at ¶ 21[8]); should have reviewed additional East Penn policies and procedures (although Plaintiff has not offered any explanation how doing so relates to the Smelter Incident); should have done so for the benefit of East Penn employees (even though Defendants' services were solely for the benefit of East Penn) (Greiss Aff. at ¶ 13[9]); all in support of the erroneous conclusion that Defendants should have discovered an alleged fall hazard in one part of the Smelter plant (assuming it even existed at the time of the gap assessment), which was just one plant among dozens of plants in East Penn's sprawling 520-acre, three million square foot, Lyons Complex.  (Am. Compl.)

Noticeably lacking in these hindsight critiques is any actual harm *caused* by Defendants at the Lyons Complex.  Plaintiff does not allege any affirmative acts, such as removing a cover to a

---

[6] "East Penn did not request, expect, or intend that Marsh USA would visit or inspect all plants or operations at the Lyons Complex pursuant to the Statement of Work."

[7] "East Penn did not request Marsh USA to visit or inspect the Smelter plant."

[8]  "Marsh USA conducted site visits to certain locations . . . for the purpose of interviewing certain employees regarding East Penn's safety culture, policies, and procedures…"

[9] "[T]he services that Marsh USA performed were solely for the benefit of East Penn."

platform causing an employee to fall, or installing equipment in a defective manner so as to cause injury, or anything remotely close.  As Therese Perrette succinctly put it: "It was a safety culture assessment."  (**Ex. 4**, Perrette Dep. 68:1.)  In other words, Plaintiff has not alleged, and cannot allege, that risk of harm to East Penn's employees *increased* from the gap assessment, versus if Marsh USA had never appeared on site.  As such, Plaintiff cannot establish breach of any duty imposed by the law of torts apart from the contract. *See Bruno v. Erie Ins. Co.*, 106 A.3d 48, 68 (Pa. 2014) ("If the facts of a particular claim establish that the duty breached is one created by the parties by the terms of their contract – i.e., a specific promise to do something that a party would not ordinarily have been obligated to do but for the existence of the contract – then the claim is to be viewed as one for breach of contract[,]" and not a tort.)  In the absence of privity or third-party beneficiary status, Plaintiff lacks standing to assert these types of breach of contract or professional negligence claims. *See Burks v. Fed. Ins. Co.*, 883 A.2d 1086 (Pa. Super. 2005) (third party to contract who is not intended third party beneficiary lacks standing to sue for breach of contract).

The requirement of privity is not only the law; it is sound policy.  Notably, it was East Penn's choice to engage Marsh USA to perform the gap assessment; it was not required.  (**Ex. 17**, Greiss Dep. 66:11-13.)  East Penn requested the gap assessment to "*help reduce* the incident rate;" not eliminate it. (*Id.* at 60:2-8.) Like any service contract, the Scope of Work defines the general terms of the anticipated services to be performed, but it was ultimately East Penn's prerogative, as the client, to determine what level of service it required.  In this case, East Penn knew and understood that Marsh USA's site visits were for the purpose of conducting a survey of select employees, in select plants, regarding safety culture.  (SMF ¶ 32, 33.)  Indeed, East Penn drafted the onsite visit schedules to be sent to East Penn escorts in advance of the site visits discussing this purpose.  (**Exs. 8**, **10**.)  East Penn's representatives accompanied Defendants during these site

visits, and thus knew what work was performed, or not.  (SMF ¶ 34.)  East Penn knew what plants and facilities were visited, or not.  (SMF ¶ 35.)  East Penn knew what documents it provided to Defendants, or not.  (**Ex.** 17, Greiss Dep. 70:14-18.) East Penn communicated with Defendants regarding the gap assessment to communicate areas of focus, such as culture.  (*Id.* at 67:7-12.) And Defendants delivered a written Gap Assessment to East Penn that identified the services that were performed, the plants that were visited, and the recommendations that were made.  (**Ex. 13**.) *East Penn* was Marsh USA's client. (**Ex. 17**, Greiss Dep. 66:14-16.) If East Penn wanted additional services or had a question about the work that was done, it could discuss that with Marsh USA. (*Id.* at 76:8-13.)  East Penn has not raised any issue with the service.  To the contrary, East Penn used the Gap Assessment, and the recommendations therein, to implement *improvements* to its safety culture and risk management system, which were to East Penn's *benefit*.  (*Id.* 71:8-72:19.[10])

It is not for Plaintiff, as a non-party to the Statement of Work, with no privity or third-party beneficiary status, to file a lawsuit over four years after Marsh USA completed its site visits, and make hindsight critiques of what other services Defendants may or could have provided under the Statement of Work with East Penn.  Because Defendants did not assume an affirmative duty to be liable to third parties in connection with their contractual services to East Penn, and given that Plaintiff has not alleged any affirmative acts by Defendants to increase the level of harm to Decedent, Plaintiff cannot establish the essential element of duty to support her negligence claims.

---

[10] Mr. Greiss testified on behalf of East Penn as follows:
> Q   Did East Penn implement improvements at the Lyons [Complex] as a result of Marsh USA's Gap Assessment?
> A   Yes.
> Q   And did that improve the overall workplace safety culture?
> A   Yes.
>                              * * *
> Q   Was that to East Penn's benefit?
> A   Yes.

*See Sheridan*, 609 F.3d at 263 ("[T]he defendant must have assumed an affirmative duty to be liable to third parties for negligently performing that duty.").

      2.    **Plaintiff cannot establish liability under Restatement § 324A because Marsh USA did not undertake any duty to visit the Smelter plant, let alone inspect Smelter plant for physical safety hazards.**

      a.    **Defendants did not specifically undertake a duty to inspect or identify physical safety hazards at the Lyons Complex.**

The scope and terms of Defendants' contractual services for East Penn were set forth in the Statement Work, and guided by subsequent discussions with East Penn, as the client.  (*See, e.g.*, **Ex. 1**, Greiss Aff. ¶¶ 11,[11] 15;[12] **Ex. 17**, Greiss Dep. 24:16-21.[13]) "Under Pennsylvania law, contract interpretation is a question of law that requires the court to ascertain and give effect to the intent of the contracting parties as embodied in the written agreement."  *Wilson v. Hartford Cas. Co.*, 492 F. Supp. 3d 417, 426 (E.D. Pa. 2020).  The Statement of Work between Marsh USA and East Penn confirms that Defendants' contractual services at the Lyons Complex were performed solely for the benefit of East Penn, and not for any third party, including East Penn Employees.

The purpose of the Statement of Work was to provide an outside evaluation of East Penn's existing loss prevention processes, systems, and culture, and to make recommendations on areas of improvement for consideration by East Penn; inspection or remediation of physical safety hazards is not expressly provided for in the Statement of Work.  (**Ex. 1**, Greiss Aff. ¶ 12 ("East Penn engaged Marsh USA to provide an outside evaluation of East Penn's existing loss prevention

---

[11] "The [Statement of Work] set forth the terms and scope of East Penn's engagement of Marsh USA to conduct an accident prevention gap analysis at the Lyons Complex."

[12] "East Penn did not request, expect, or intend that Marsh USA would visit or inspect all plants or operations at the Lyons Complex pursuant to the Statement of Work."

[13] "[W]e had ongoing discussions about what would occur at the site. . . . [T]hroughout the process, there may have been a different emphasis on one versus the other."

processes and work culture"); **Ex. 4**, Perrette Dep. 13:11-17 ("We did a safety culture assessment at East Penn in February of 2019...[u]nder an approved scope of work signed by East Penn").)

The intended purpose is stated throughout the Statement of Work.  The "Purpose and Scope" Section provides for an assessment of East Penn's "current loss prevention management system" and "risk management culture," with the objective of recommending systems for improvement.  (**Ex. 5**, Statement of Work, at p. 3.) The "Approach" Section discusses objectives for achieving the stated purpose via employee interviews using a 40-question survey (the OPS Gap) relating to six categories of safety culture. (**Ex. 5**, Statement of Work, at pp. 4-5; **Ex. 4**, Perrette Dep. 55:10-13 ("The 40 questions [in the OPS Gap] relate to those six bullets [on page 4 of the Statement of Work]").)   East Penn and Marsh USA's witnesses have confirmed that Marsh USA's site visits to the Lyons Complex were focused on conducting employee interviews and taking a survey on different categories of safety culture. (**Ex. 2**, Birckbichler Aff. ¶ 21;[14] **Ex. 4**, Perrette Dep. 128:24-129:4;[15] **Ex. 17**, Greiss Dep. 18:3-4, 67:10-12[16])

This purpose is also confirmed in Marsh USA's March 20, 2019 written Gap Assessment report to East Penn.  The Gap Assessment explains in the "Executive Summary" section that a loss

---

[14] Mr. Birckbichler (East Penn) stated:
>    Marsh USA conducted site visits to certain locations at East Penn's Lyons Complex in February 2019 for the purpose of interviewing certain employees regarding East Penn's safety culture, policies, and procedures and conducting a survey for select management personnel created in consultation with East Penn.

[15] Ms. Perrette (Marsh USA) testified:
>    Q.  What was the purpose of Marsh USA's site visits to East Penn in connection with the statement of work?
>    A.  To interview various levels of employees in order to determine its safety culture.

[16] Mr. Greiss (East Penn) testified:
>    A.  …[T]hrough the exercise of activity on-site, the emphasis was more on the culture, the work culture.
>    A. …[A]s we were having our discussions, [they] did focus more on the culture aspect and the interactions between the management, supervisors and employees.

prevention gap assessment was conducted in February 2019 at East Penn's Lyons Complex that was "designed to analyze underlying culture and performance."  (**Ex. 13**, Gap Assessment, at p. 1.)  The Gap Assessment explains in the "Design Approach" that Marsh USA achieved this purpose through two methods: "an on line survey for select management personnel and a hands on interview with employees while they performed their routine jobs."  (*Id.* at p. 6.)  The Design Approach section further explains that the "[o]n site activities consisted of face to face employee and supervisor interviews, which took place over all three shifts."  (Gap Assessment, p. 6.)  East Penn therefore knew and understood that hazard inspection was not part of the scope of services. (Birckbichler Aff. ¶ 17.)  Accordingly, Defendants did not specifically undertake a duty to inspect for potential physical safety hazards at the Lyons Complex.

> **b.    Defendants did not undertake any duty to visit or inspect all operations at the Lyons Complex or to the Smelter plant in particular, where the Smelter Incident occurred.**

Marsh's gap assessment was not for the purpose of identifying or remediating potential physical safety hazards at East Penn's Lyon's Complex.  But even if it were, the Statement of Work did not impose any duty or obligation on Marsh USA to visit or inspect all facilities and operations at the Lyons Complex, or to visit or inspect the Smelter plant in particular.  Indeed, the Statement of Work does even mention the word "smelter" or discuss any operations related to the Smelter plant.  (*See generally id.*).  While the Statement of Work applied generally to the Lyons Complex, which has approximately 20 different plants/buildings, spread over 520 acres (**Ex. 17**, Greiss Dep. 51:2-7), the Statement of Work provides for site visits only to "a number of operations" at the Lyons Complex (i.e., not all), and additionally states in its "assumptions" that "site visits can be accomplished in the course of two to four" days, which "allows for a snapshot of [East Penn]'s loss prevention climate."  (**Ex. 5**, Statement of Work, at pp. 4, 5, 7.)  East Penn did not request Marsh USA to visit all operations at the Lyons Complex or to the Smelter Plant

during Marsh USA's site visits.  (**Ex. 2**, Birckbichler Aff. ¶¶ 20,[17] 25.[18])  Marsh USA never did

visit or see the Smelter plant at any time.  (**Ex. 2**, Birckbichler Aff. ¶ 24 ("Marsh USA did not

access the Smelter Plant"); **Ex. 4**, Perrette Dep. 127:14-18.[19])  Marsh USA's site visits to the Lyons

Complex were limited to facilities that are physically separate from, and unrelated to, the Smelter

plant.  That fact is made clear in the Gap Assessment, which identifies the plants and departments

that were visited.  East Penn knew and understood what plants were visited (or not), and knew that

the Smelter plant was not visited.  (**Ex. 17**, Greiss Dep. 74:15-75:25.)  Further, East Penn did not

provide any specific direction that the Smelter plant should be visited. (**Ex. 2**, Birckbichler Aff. ¶

25.)  As stated by East Penn's safety director: "**the Marsh gap analysis did not involve the**

**smelter.**"  (**Ex. 3**, Birckbichler Dep. 39:19-22.)  Thus, in performing the gap assessment, Marsh

USA did not specifically assume any duty for the safety of all operations, or to the Smelter plant

in particular. To remove any doubt, both the Statement of Work and the Gap Assessment include

an express and conspicuous disclaimer:

> **ALL CONSULTING ACTIVITIES PERFORMED BY MARSH ARE ADVISORY IN NATURE.  ALL REPORTS WILL BE BASED UPON CONDITIONS OBSERVED AND INFORMATION SUPPLIED BY [EAST PENN]. MARSH DOES NOT GUARANTEE OR WARRANT THE SAFETY OF ANY [OF EAST PENN]'S PROPERTIES OR OPERATIONS OR THAT [EAST PENN] OR ANY SUCH PROPERTIES OR OPERATIONS ARE IN COMPLIANCE WITH FEDERAL, STATE, OR LOCAL LAWS, CODES, STATUTES, ORDINANCES, STANDARDS OR RECOMMENDATIONS.**

(Statement of Work, p. 12 (emphasis in original).)

---

[17] "East Penn did not request, expect, or intend that Marsh USA would visit or inspect all plants or operations at the Lyons Complex pursuant to the Statemen of Work."

[18] "East Penn did not request Marsh USA to visit or inspect the Smelter Plant pursuant to the Statement of Work or as part of its gap analysis."

[19] Ms. Perrette testified as follows:
> Q.  Did East Penn request that Marsh USA visit or inspect the smelter plant at its Lyons, PA facilities in connection with the statement of work?
> A.  No, they did not.

> All Marsh Risk Consulting reports and recommendations are purely advisory and for the purpose of assisting clients in risk control and safety procedures. Observations and recommendations are the result of practices and conditions observed and information made available to us at the time of our visit. They do not purport to refer to, or guarantee, compliance with all local, state, federal, country, or international regulations that may be applicable to such practices or conditions. This report should not be considered a definitive listing of all existing hazards or an absolute solution to all indicated hazards. Marsh assumes no responsibility for the implementation, management, and operation of risk control and/or safety procedures.

(Gap Assessment, Final Page.) Because Marsh USA did not specifically undertake a duty to inspect the Smelter plant for physical safety hazards, Plaintiff cannot establish any legal duty of care or liability under Restatement § 324A. *See Daraio*, *supra* (holding defendant who conducted test of asbestos levels in workplace had no duty to employees under § 324A because it never assumed a duty to warn employees about asbestos levels). As such, summary judgment is required.

### 3.    Summary judgment is additionally required because Plaintiff cannot satisfy any of the three subparts to § 324A.

Importantly, even assuming for the purpose of argument that Plaintiff could establish that Defendants undertook a specific duty to inspect the Smelter plant for physical safety hazards (which she cannot), Plaintiff still cannot establish liability under any of the three subparts to § 324A, which is an essential element of her causes of action.

Plaintiff cannot establish a basis for recovery under § 324A(a) as a matter of law because the alleged failure to identify or remediate an existing fall hazard in the Smelter plant is not an affirmative act that increases the existing level of harm. At most, such failure is an *omission*, which is not actionable under § 324A(a). *See Air Prods. & Chems. v. Eaton Metal Prods. Co.*, 2003 U.S. Dist. LEXIS 28267, at *72 (E.D. Pa. Aug. 22, 2003) ("omissions are not actionable under [§ 324A(a)]"); *Patentas*, 687 F.2d at 717 (holding defendant's failure to discover fire and resulting discharge were insufficient to establish increased risk of harm under § 324A(a)).

Plaintiff cannot establish liability under § 324A(b) as a matter of law because Marsh USA did not expressly assume any duties owed by East Penn to its employees. Marsh USA was engaged pursuant to the Statement of Work to provide an assessment of East Penn's existing safety program for the benefit of East Penn, and to make recommendations of potential areas of improvement for East Penn's consideration. East Penn maintained the sole discretion whether to implement any recommended changes to its program, or not. (SMF ¶ 49.) Marsh USA's services under the Statement of Work were, at most, advisory, and did not supplant East Penn's legal duty to provide its employees with a safe work environment. As such, § 324A(b) is not satisfied. *See Daraio*, 309 F. Supp. 2d at 710 (holding § 324A(b) does not apply to outside consultant where employer had its own safety team that had the ultimate authority regarding the safety of the plant); *Blessing*, 447 F. Supp. at 1194-95 (holding outside consultant not liable to employee for inspection of employer's workplace under § 324A(b) where the inspections are supplemental and do not supplant the employer's legal obligation to provide the employees with a safe work environment).

Finally, Plaintiff cannot establish liability under subsection § 324A(c) because the incident involving Decedent was not the result of detrimental reliance by either Decedent or East Penn on Marsh USA's Gap Assessment. Marsh USA's gap assessment was for the purpose of assessing existing safety culture and policies and making recommendations to East Penn for areas of improvement. Marsh USA's Gap Assessment was not for the express purpose of remediating physical safety hazards in general, or inspecting the Smelter plant for safety hazards in particular, and East Penn at all times remained responsible for the safety of its employees. (SMF ¶¶ 25-26.) Thus, neither East Penn nor its employees were induced to forgo remedies or precautions on account of Defendants. Further, Decedent could not have relied on the Gap Assessment given that he did not even start his employment at East Penn until December 2020 – over a year and half after

Marsh USA completed its Gap Assessment, and there is no evidence that Decedent was even aware of the Gap Assessment.  *See Patentas*, 687 F.2d at 717 (holding plaintiffs failed to establish liability under § 324A(c) absent evidence of inducement to forgo other remedies or precautions against the risk).  Because Plaintiff cannot establish any of the essential elements for liability under Restatement § 324A, summary judgment must be entered in favor of Defendants.

> **C.**   **Summary Judgment Must Be Entered In Favor Of Defendants Because Fairness And Public Policy Preclude Any Findings Of Duty, Foreseeability, Or Proximate Causation As A Matter Of Law Between Marsh USA's Gap Assessment For East Penn And The Smelter Incident.**

Pursuant to the Statement of Work, Marsh USA did not undertake a duty to inspect or identify potential physical safety hazards at East Penn's Lyons Complex in general, or at the Smelter plant in particular.  However, even if Marsh USA's Statement of Work with East Penn had included inspection of physical safety hazards as a component of the services to be performed, Defendants' site visits to East Penn's Lyons Complex still would not support the essential elements of duty, foreseeability, or proximate causation with respect to the Smelter Incident.

"The duty element [in a negligence action] requires [the court] to make a policy judgment whether it is in the public interest to impose damages on those who have failed to conform their behavior to a particular standard."  *Pyeritz v. Commw.*, 32 A.3d 687, 692 (Pa. 2011).  "[T]he legal bounds of duty and of proximate cause are aspects of tort law in which issues of fairness and public policy are particularly relevant."  *Port Auth. v. Arcadian Corp.*, 189 F.3d 305, 312 (3d Cir. 1999).  Thus, a District Court may properly consider questions of fairness and policy and make rulings of law on issues of reasonable foreseeability and proximate causation.  *Id.*  Where these elements are not satisfied, the claims must be dismissed.  *Id.*

Pursuant to the Statement of Work, Marsh USA's gap assessment was based on certain express "Assumptions," including that "[s]ite visits can be accomplished in the course of two to

27

four consecutive business days" and that "Marsh does not certify or guarantee compliance with any local, state, or federal regulation and/or permits."  (**Ex. 5**, Statement of Work, at p. 6.) The latter assumption is reiterated in the "Limitation on Warranties" Section of the Standard Terms & Conditions, which confirms that "**MARSH DOES NOT GUARANTEE OR WARRANT THE SAFETY OF ANY [OF EAST PENN]'S PROPERTIES OR OPERATIONS**." (*Id.* at p. 12.)

This case does not present a situation where a plaintiff was injured because a defendant created a dangerous condition that did not previously exist.  Rather, Plaintiff asserts that Decedent suffered harm from the failure to discover a supposed existing fall hazard in the Smelter plant that allegedly predated the Statement of Work. However, asserting that a particular hazard existed after an incident occurs does not mean that it was foreseeable before it occurred.  Indeed, Defendants never saw the Smelter plant in their site visits to East Penn, did not have a duty to see it, were not asked to see it, and thus could not have known if any hazard even existed.  (SMF ¶¶ 36-37.)

To impose liability in this instance would require a finding that Defendants had a duty to identify and remediate each and every potential physical safety hazard across all operations and facilities at East Penn's Lyons Complex merely because they appeared on site at certain locations on four occasions, through one consultant, Therese Perrette, in February 2019 to interview select employees and conduct a safety culture survey.  Such a duty would exceed the bounds of fairness and contravene public policy.  By East Penn's own account, the Lyons Complex is "massive" – a single-site battery manufacturing complex, spread over 520 acres, with 20 separate buildings/plants, comprising over three million square feet of floor space, in which over 7,500 employees report to work each day.  (SMF ¶¶ 1-4.)  To impose liability on an outside consultant for failure to identify and redress every single potential existing physical safety hazard at the Lyons Complex when it did not contract to do so would contravene the fundamental purpose of tort law,

which is "essentially concerned with the 'allocation of losses' arising out of 'socially unreasonable conduct.'" *Port Auth.*, 189 F.3d at 312.   This public policy concern is heightened by the fact that over two years passed between Marsh USA's February 2019 site visits and the March 2021 Smelter Incident.  If there were an existing fall hazard in the Smelter plant, the responsibility to remedy it lay with East Penn, which has a legal duty to maintain a safe workspace for its own employees and implements its own safety program, processes, and procedures to do so.  An outside consultant cannot be held indefinitely liability for an employer's failure to maintain the safety of its workplace when that is the employer's responsibility.

Plaintiff's action, in effect, seeks to hold Defendants strictly liable as a third-party insurer for any workplace incident in East Penn's Lyons Complex, to any of its thousands of employees, at any time, merely because Defendants appeared on site on several days in February 2019. Plaintiff demands this result without any regard to the actual benefits that Defendants delivered to East Penn.  (SMF ¶ 50.)  Imposing such limitless liability on outside safety consultants for a single incident, while disregarding the value of their services, would run contrary to sound public policy by discouraging consultants from assisting companies improve safety culture and practices, thereby making the workplace *less* safe for employees.  The Court should decline Plaintiff's invitation to do so.

## V.    CONCLUSION

For the reasons stated above, the Court should enter an order, substantially in the form appended hereto, granting Defendants' Motion for Summary Judgment.

Respectfully submitted,

Dated: February 5, 2024                   **GOLDBERG SEGALLA LLP**


_s/ Michael P. Luongo_
Michael P. Luongo, Esq. (PA I.D. No. 311948)
1700 Market Street, Suite 1418
Philadelphia, PA 19103
T: 267.519.6852
F: 267.519.6801
mluongo@goldbergsegalla.com

_Attorneys for Defendants_
_Marsh USA, LLC and Therese Perrette_

30