### IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| VICTORIA EVANOFF, as Administrator of the ESTATE OF JOHN EVANOFF, DECEASED<br><br>　　　　　　　　　Plaintiff,<br><br>　vs.<br><br>MARSH USA, LLC,<br>THERESE PERRETTE, and<br>JOHN DOE DEFENDANTS # 1-2<br><br>　　　　　　　　　Defendants. | CIVIL ACTION<br><br>No. 5:23-cv-03417-JFL |

**BRIEF IN SUPPORT OF
DEFENDANTS' MOTION TO BIFURCATE TRIAL
<u>INTO SEPARATE LIABILITY AND DAMAGES PHASES</u>**

　　　　Defendants Marsh USA, LLC ("Marsh") and Therese Perrette (together, "Defendants"), by and through their undersigned counsel, Goldberg Segalla LLP, respectfully submit the following Brief in Support of Defendants' Motion to Bifurcate Trial into Separate Liability and Damages Phases pursuant to Federal Rule of Civil Procedure 42(b).

Dated: April 2, 2024　　　　　　　　　**GOLDBERG SEGALLA LLP**

　　　　　　　　　　　　　　　　　　　<u>*/s/ Michael P. Luongo*　　　　　　</u>
　　　　　　　　　　　　　　　　　　　Michael P. Luongo, Esq. (PA I.D. No. 311948)
　　　　　　　　　　　　　　　　　　　Robert M. Hanlon, Esq. (PA I.D. No. 207899)
　　　　　　　　　　　　　　　　　　　Joseph Ross, Esq. (PA I.D. No. 318039)
　　　　　　　　　　　　　　　　　　　1700 Market Street, Suite 1418
　　　　　　　　　　　　　　　　　　　Philadelphia, PA 19103
　　　　　　　　　　　　　　　　　　　T: 267.519.6852
　　　　　　　　　　　　　　　　　　　F: 267.519.6801
　　　　　　　　　　　　　　　　　　　mluongo@goldbergsegalla.com
　　　　　　　　　　　　　　　　　　　rhanlonjr@goldbergsegalla.com
　　　　　　　　　　　	　　　　　　　jross@goldbergsegalla.com

　　　　　　　　　　　　　　　　　　　*Attorneys for Defendants*
　　　　　　　　　　　　　　　　　　　*Marsh USA, LLC and Therese Perrette*

**TABLE OF CONTENTS**

I.   STATEMENT OF FACTS ........................................................................................... 1
    A.   Background. ............................................................................................... 1
        1.   Marsh's 2019 Gap Assessment for East Penn. ................................. 1
        2.   The 2021 Smelter Incident. .............................................................. 2
    B.   Procedural History. ..................................................................................... 2
        1.   Plaintiff's Allegations of Liability. ..................................................... 3
        2.   Plaintiff's Allegations of Damages. ................................................... 4
II.  STATEMENT OF THE QUESTION INVOLVED ..................................................... 5
III. SUMMARY OF ARGUMENT ................................................................................... 5
IV.  ARGUMENT .............................................................................................................. 7
    A.   Legal Standard. ........................................................................................... 7
    B.   The Court Should Exercise Its Discretion To Bifurcate Trial Into Separate Liability And Damages Phases To Avoid Unfair Prejudice, Protect Witnesses From Undue Duress, And Economize Judicial Resources. ............................................................................................ 7
        1.   Bifurcation is necessary to avoid unfair prejudice. ............................. 7
        2.   Bifurcation will protect Plaintiff from unnecessary burden and duress. ........................................................................................ 9
        3.   Bifurcation will promote judicial economy and convenience. ........................................................................................ 9
V.   CONCLUSION ......................................................................................................... 10

# **TABLE OF AUTHORITIES**

**CASES**

*Carroll v. Comprehensive Women's Health Servs.*,
2017 U.S. Dist. LEXIS 189345 (M.D. Pa. 2017) ............................................................ 7

*Carter v. Hewitt*,
617 F.2d 961 (3d Cir. 1980) ........................................................................................ 7, 8

*Cowher v. Kodali*,
283 A.3d 794 (Pa. 2022) ................................................................................................ 5

*Dashner v. Riedy*,
197 Fed. Appx. 127 (3d Cir. 2006) ................................................................................ 8

*Hatwood v. Hosp. of the Univ. of Pa.*,
55 A.3d 1229 (Pa. Super. 2012) .................................................................................... 4

*Idzojtic v. Penn. R.R. Co.*,
456 F.2d 1228 (3d Cir. 1972) ........................................................................................ 7

*Machado v. Kunkel*,
804 A.2d 1238 (Pa. Super. 2002) .................................................................................. 4

*Miller v. Precision Airmotive, LLC*,
2006 Phila. Ct. Com. Pl. LEXIS 532 (Pa. Commw. Ct. 2006) ...................................... 5

*Penn Eng'g & Mfg. Corp. v. Peninsula Components, Inc.*,
2024 U.S. Dist. LEXIS 7920 (E.D. Pa. Jan. 16, 2024) .................................................. 7

*Plaza-Bonilla v. Cortazzo*,
2009 WL 977297 (E.D. Pa. Apr. 9, 2009) ..................................................................... 9

*PR Acquisition LLC v. BMW of N. Am., LLC*,
2004 U.S. Dist. LEXIS 22418 (E.D. Pa. Nov. 3, 2004) ................................................. 8

*Rettger v. UPMC Shadyside*,
991 A.2d 915 (Pa. Super. 2010) .................................................................................... 4

*Vizzini v. Ford Motor Co.*,
569 F.2d 754 (3d Cir. 1977) .......................................................................................... 9

**STATUTES**

42 Pa.C.S. § 8301 ............................................................................................................... 4

42 Pa.C.S. § 8302 ............................................................................................................... 5

**RULES**

Fed. R. Civ. P. 42(b) .......................................................................................................... 7

Fed. R. Evid. 403 ............................................................................................................... 7

## **TABLE OF EXHIBITS**

**Exhibit 1**     Plaintiff's Rule 26 Initial Disclosures

**Exhibit 2**     Plaintiff's Answers to Defendants' Interrogatories

**Exhibit 3**     Plaintiff's Deposition Transcript

**I.     STATEMENT OF FACTS**[1]

    **A.     Background.**

          **1.     Marsh's 2019 Gap Assessment for East Penn.**

East Penn Manufacturing Company ("East Penn") engaged Marsh in January 2019 to perform a voluntary one-time "gap assessment" at East Penn's Lyons Complex pursuant to a written contract: the Statement of Work.  (*See* ECF No. 22-3, Statement of Undisputed Material Facts ("SMF") ¶ 23; ECF No. 22-8, Statement of Work.)  As stated in the Statement of Work, and as understood by Marsh and East Penn, the gap assessment involved (a) review of documents provided by East Penn to Marsh, (b) review of online survey results, (c) onsite interviews of certain employees in certain locations of the Lyons Complex using Marsh's "OPS Gap" questionnaire; and (d) delivery of a written Gap Assessment report to East Penn.  (*See* ECF Nos. 22-4; Aff. of Troy Greiss (East Penn); 22-5, Aff. of Brian Birckbichler (East Penn); and Statement of Work.)

East Penn's Lyons Complex is a sprawling campus spread over 520 acres (0.81 square miles), with approximately 20 separate buildings/plants, totaling 3 million square feet of floor space.  (SMF ¶¶ 2-3.)  Marsh completed the onsite interview component of the gap assessment on February 13, 14, and 27, 2019, which interviews took place in Plants A1, A2, A3, A4, S1, and Industrial – the areas identified for focus by East Penn.  (SMF ¶¶ 33, 35.)  During the course of the gap assessment, Marsh never saw and was never asked to see the Smelter plant, which is located in a physically separate building from the plants that Marsh visited.  (SMF ¶ 37.)  East Penn never requested or expected Marsh to visit all plants or operations at the Lyons Complex, or to visit the Smelter plant in particular, as part of the gap assessment.  (SMF ¶ 36.)

---

[1] The material facts have been fully briefed in Defendants' Motion for Summary Judgment (ECF No. 22) and accompanying Statement of Undisputed Material Facts ("SMF") (ECF No. 22-3).  The facts are summarized here.

On March 20, 2019, after completing its interviews and document review, Marsh emailed its written "Operational Loss Prevention Gap Assessment" report ("Gap Assessment Report") to East Penn, which identified gaps in East Penn's safety culture and practices and recommended systems to address them. (SMF ¶ 45; ECF No. 22-16, Gap Assessment Report.) Marsh presented the Gap Assessment Report to East Penn in May 2019, and did not provide any consulting services to East Penn after that date. (SMF ¶ 48, 51.) East Penn had the sole discretion whether to implement any of Marsh USA's recommendations, and East Penn at all times remained directly responsible for the safety of its own workplace and that of its employees. (SMF ¶ 49.)

### 2. The 2021 Smelter Incident.

On December 7, 2020 – over a year and a half after Marsh completed the gap assessment for East Penn – East Penn hired decedent John Evanoff ("Decedent") as a refinery attendant in its Smelter Department. (SMF ¶ 56.) On March 6, 2021, Decedent was involved in a fatal workplace incident in the Smelter plant of the Lyons Complex when he stepped onto the lid of smelter kettle while attempting to load lead through an opening in the kettle lid, and then fell into the opening in the lid ("Smelter Incident"). (SMF ¶¶ 57-58.)

### B. Procedural History.

Plaintiff is the widow of Decedent and the administrator of his estate. Plaintiff and Decedent had one child together ("G.E."), who was born in 2015. (Ex. 3, Pl.'s Dep. 13:3-12.) Plaintiff commenced this action by filing a Complaint in the Court of Common Pleas of Philadelphia County on March 3, 2023. (ECF No. 1-7, Compl.) On August 23, 2023, Plaintiff filed her Amended Complaint naming only Marsh and Therese Perrette as defendants. (ECF No. 1-5, Am. Compl.) On August 31, 2023, Marsh removed the action to the United States District Court for the Eastern District of Pennsylvania. (ECF No. 1, Notice of Removal.)

Plaintiff's Amended Complaint asserts claims against Defendants for negligence (Counts I and II), wrongful death (Count IV), and survival action (Count V), as well as vicarious liability against Marsh as the employer of Ms. Perrette (Count III).  Plaintiff's claims present two discrete issues for determination: (1) whether Defendants may be held liable to Plaintiff for the death of Decedent; and (2) if so, the amount of damages to be awarded to Plaintiff for the death of Decedent.  The witnesses who will testify to these two issues are similarly divided into two discrete groups that do not overlap: (1) witnesses who will speak to the issue of liability only, and (2) witnesses who will speak to the amount of damages only.

### 1. Plaintiff's Allegations of Liability.

According to Plaintiff, the opening in the lid of the smelter kettle constituted an existing fall hazard that could have been remediated with the addition of a guardrail or other protective measure.  (ECF 1-5, Am. Compl. ¶¶ 32-33, 49(g), 53(k), 59(h).)  As confirmed by East Penn, "the Marsh gap analysis did not involve the smelter."  (ECF No. 22-6, Birckbichler Dep. 39:19-20 (East Penn).  Indeed, the Statement of Work does not mention the word "smelter."  (*See* Statement of Work.)  Nor did the Statement of Work require Marsh to visit all plants and operations at the sprawling Lyons complex, let alone *inspect any* of its plants or operations for physical safety hazards.  (ECF No. 22-8, Statement of Work.)  Moreover, during the gap assessment, Marsh never saw the Smelter plant, was never asked to see the Smelter plant, and the Smelter plant was never identified as an area of focus. (SMF ¶ 35-37.)  Although there is no allegation, and could be no allegation, that Marsh created the alleged fall hazard in the Smelter plant (which Plaintiff alleges was preexisting), Plaintiff nevertheless contends that Marsh may be held liable for the March 2021 Smelter Incident because Marsh executed the Statement of Work with East Penn in January 2019.

Marsh witness Therese Perrette, and any other Marsh witness who may be called at trial, as well as East Penn's witnesses Troy Greiss and Brian Birckbichler, and any other East Penn witness

3

who may be called at trial, have knowledge solely regarding Marsh's gap assessment and/or the Smelter Incident. The testimony of these witnesses thus pertains to issues of liability only. The Parties also have each identified a standard of care expert witness: BobbiJo Curley for Plaintiff and Paul Esposito for Defendants. If these witnesses testify at trial,[2] their testimony will likewise pertain to issues of liability only, and not damages.

### 2. Plaintiff's Allegations of Damages.

Plaintiff Victoria Evanoff is *not* a witness regarding liability; Plaintiff is a fact witness regarding the amount of damages only. Plaintiff has no personal knowledge of either Marsh's 2019 gap assessment for East Penn or the circumstances of the 2021 Smelter Incident. Indeed, in Plaintiff's Rule 26 Initial Disclosures and Interrogatory Responses, Plaintiff was identified as a witness for damages issues only. (*See* Ex. 1, Pl.'s Initial Disclosures, at I.1. and Ex. 2, Pl.'s Ans. to Interrogs. at No. 1 ("Plaintiff has knowledge and information regarding the damages in this case.").)

Damages in a Wrongful Death Act claim are governed by statute. *See* 42 Pa.C.S. § 8301. The purpose of the Wrongful Death Act is to compensate the decedent's family "for the pecuniary losses they have sustained as a result of the decedent's death." *Machado v. Kunkel*, 804 A.2d 1238, 1245 (Pa. Super. 2002). This includes compensation "for the loss of the contributions decedent would have made for such items as shelter, food, clothing, medical care, education, entertainment, gifts and recreation." *Hatwood v. Hosp. of the Univ. of Pa.*, 55 A.3d 1229, 1236 (Pa. Super. 2012). The Wrongful Death Act also permits compensation for the value of services the decedent would have provided to his/her family, which may include "emotional and psychological loss suffered upon the death of a parent or child where the evidence establishes the negligence of another as its cause." *Rettger v. UPMC Shadyside*, 991 A.2d 915, 933 (Pa. Super. 2010). A Survival Action is

---

[2] Defendants have filed a *Daubert* Motion to preclude the testimony of BobbiJo Curley at trial. (ECF No. 23, Defendants' *Daubert* Motion.)

4

brought under 42 Pa.C.S. § 8302 by the administrator or executor of a decedent's estate to recover damages for the decedent's loss of gross earning power for the estimated working life span of the decedent. *Cowher v. Kodali*, 283 A.3d 794, 796 n*1, 807 (Pa. 2022).[3]

Plaintiff has knowledge regarding the services that Decedent provided in the home and any non-economic damages arising from the loss of Decedent.[4] Additionally, the Parties have each identified economic damages expert witnesses: Andrew C. Verzilli for Plaintiff and Chad L. Staller and Stephen Dripps for Defendants. These witnesses will testify only with respect to the measure of economic loss resulting from the death of Decedent and have no knowledge of liability issues.

## II.     STATEMENT OF THE QUESTION INVOLVED

1.      Should the Court exercise its discretion and authority to bifurcate trial into separate and sequential liability and damages phases to avoid the potential for unfair prejudice to Defendants, protect Plaintiff witnesses from undue duress, promote the clear and orderly presentation of evidence, and economize judicial resources? *Answer: Yes.*

## III.    SUMMARY OF ARGUMENT

The Court should exercise its discretion and authority under Federal Rule of Civil Procedure 42(b) to bifurcate issues of liability and damages at trial into two separate and sequential phases: (1) an initial phase in which the jury determines liability, if any; and (2) a second phase in

---

[3] A Survival Action claim may also permit recovery for pain and suffering by the decedent prior to death; however, it is well settled law that there is no recovery for pain and suffering when a decedent is killed instantaneously. *Miller v. Precision Airmotive,* LLC, 2006 Phila. Ct. Com. Pl. LEXIS 532, at *18 (Pa. Commw. Ct. 2006). Plaintiff has not served an expert report on pain and suffering and has not identified any demand for pain and suffering damages in this case. Should Plaintiff attempt to offer any witnesses on this subject, those witnesses would have knowledge regarding damages only, though Defendants do not concede the admissibility of such testimony.

[4] Any knowledge G.E. may have is likewise limited to damages. G.E. was not disclosed as a witness in either Plaintiff's Initial Disclosures or Interrogatory Responses. Defendants relied upon these representations by Plaintiff that G.E. would not be called as a witness, and therefore did not seek to depose G.E. in discovery. Defendants thus object to G.E. being called to testify at trial.

which the jury determines the amount of damages to be awarded to Plaintiff – only if liability is first established.  The two phases would be decided by the same jury in immediate succession.

Bifurcation of trial into separate liability and damages phases is warranted under the particular facts of this case because it will protect against the significant risk of unfair prejudice to Defendants, avoid undue duress to Plaintiff, promote the orderly and streamlined presentation of evidence, and economize judicial resources.  Notably, the witnesses who will testify at trial are divided into two distinct groups: (1) witnesses who will testify as to issues of liability only; and (2) witnesses who will testify as to the amount of damages only.  Plaintiff is witness as to damages only; Plaintiff has no knowledge of liability issues in this case, as she has no personal knowledge of Marsh's gap assessment or the circumstances of the Smelter Incident.  Plaintiff's testimony, however, as the widow of Decedent and mother of Plaintiff and Decedent's minor child G.E., will undoubtedly unfairly prejudice a jury's assessment of liability by improperly appealing to emotion and sympathy.  Because Plaintiff's testimony, has no actual probative value with respect to issues of liability, but would improperly impact a jury's assessment of liability, bifurcation is necessary to avoid unfair prejudice.

Bifurcation will additionally expedite and economize judicial resources.  Because the witnesses who will testify at trial have knowledge either of issues of liability or issues of damages (but not both), there is no need to call any witness in both a liability and damages phase. At the same time, bifurcation may avoid the need to call damages witnesses altogether if liability is not established in the initial phase, thereby protecting Plaintiff from undue distress and reducing the overall length of trial.  Bifurcation may also further the opportunity for settlement.

IV.   **ARGUMENT**

   A.   **Legal Standard.**

"Federal Rule of Civil Procedure 42(b) permits the trial court to 'order a separate trial of one or more separate issues' '[f]or convenience, to avoid prejudice, or to expedite and economize.'" *Penn Eng'g & Mfg. Corp. v. Peninsula Components, Inc.*, 2024 U.S. Dist. LEXIS 7920, at *3 (E.D. Pa. Jan. 16, 2024) (quoting Fed. R. Civ. P. 42(b)).  "The district court is given broad discretion in reaching its decision whether to separate the issues of liability and damages." *Id.* (citing *Idzojtic v. Penn. R.R. Co.*, 456 F.2d 1228, 1230 (3d Cir. 1972)).  "[T]he decision whether to bifurcate the trial must be based on the particular facts of the case." *Carroll v. Comprehensive Women's Health Servs.*, 2017 U.S. Dist. LEXIS 189345, at *3 (M.D. Pa. 2017).  "In exercising such discretion, the court must weigh the various considerations of convenience, prejudice to the parties, expedition and economy of resources." *Id.*  "The moving party bears the burden of establishing that bifurcation is appropriate." *Id.*

   B.   **The Court Should Exercise Its Discretion To Bifurcate Trial Into Separate Liability And Damages Phases To Avoid Unfair Prejudice, Protect Witnesses From Undue Duress, And Economize Judicial Resources.**

      1.   **Bifurcation is necessary to avoid unfair prejudice.**

Bifurcation of trial is appropriate under the particular facts of this case because Plaintiff's testimony is not relevant to a jury's assessment of liability but would unfairly prejudice the jury's assessment of liability. Federal Rule of Evidence 403 provides in relevant part that "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of...unfair prejudice...." Fed. R. Evid. 403.  Evidence is unfairly prejudicial if it has "an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." *Carter v. Hewitt*, 617 F.2d 961, 972 (3d Cir. 1980) (quoting Fed. R. Evid. 403, Committee Note). Evidence may be unfairly prejudicial "if it appeals to the jury's sympathies, arouses its sense of

7

horror, provokes its instinct to punish, or otherwise may causes a jury to base its decision on something other than the established propositions in the case." *Id.*

Plaintiff has no personal knowledge of the gap assessment or the Smelter Incident; her knowledge is limited to damages issues. Plaintiff's testimony on issues of damages is not probative of whether Marsh's Statement of Work with East Penn established a duty of care to Decedent, whether Marsh breached that duty, or whether Marsh's gap assessment in early 2019 proximately caused the Smelter Incident that occurred two years later in March 2021. Nevertheless, Plaintiff's testimony on damages presents a significant danger of unfair prejudice on these issues of liability because a jury will undoubtedly be influenced by sympathy and emotion when hearing testimony from Plaintiff as the widow of Decedent and mother of Plaintiff and Decedent's minor child G.E. The danger of improperly appealing to the sympathy of a jury was apparent during the deposition of Plaintiff, who required several breaks in the deposition because she became visibly emotional when discussing Decedent. (*See, e.g.* Pl.'s Dep. 49:2-9, 53:12-19.)

Because Plaintiff's damages testimony is not probative of liability, a jury should be permitted to assess issues of liability without the emotional prejudice of Plaintiff's separate and unrelated testimony on issues of damages. Instead, Plaintiff's testimony, and the testimony of the Parties' damages experts, should properly be confined to a separate damages phase of trial, that will take place *after* a jury has first determined if Marsh is liable to Plaintiff and only *if* a jury has first determined that Marsh is liable. *See PR Acquisition LLC v. BMW of N. Am., LLC*, 2004 U.S. Dist. LEXIS 22418, at *14 (E.D. Pa. Nov. 3, 2004) (bifurcating "liability and damages" with proof on the amount of damages reserved until after plaintiff established liability); *see also Dashner v. Riedy*, 197 Fed. Appx. 127, 129 (3d Cir. 2006) (discussing district court's bifurcation of wrongful death trial into separate liability and damages phases). Doing so will streamline and focus the evidence

8

presented in the liability phase of trial and avoid the introduction of irrelevant damages evidence that is likely to distract and confuse a jury in its assessment of liability. At the same time, bifurcation will not prejudice Plaintiff, who will have the same opportunity to testify and present damages evidence if liability is first established.

### 2. Bifurcation will protect Plaintiff from unnecessary burden and duress.

In addition to causing unfair prejudice to Defendants by improperly appealing to the emotions of a jury, Plaintiff's damages testimony is likely to be emotionally challenging to Plaintiff in her own right. Plaintiff should not be required to recount traumatic experiences or be subjected to cross examination on damages issues when such testimony is only necessary if liability is first established. If a jury determines that Marsh was not liable in an initial liability phase of trial, then a separate damages phase would not be required, and Plaintiff would not need to testify. *See Plaza-Bonilla v. Cortazzo*, 2009 WL 977297, at *2 (E.D. Pa. Apr. 9, 2009) (granting bifurcation of damages and liability and explaining that "[b]ifurcation may . . . be appropriate . . . where litigation of one issue may obviate the need to try another."). The same is true if the jury were to find in favor of Plaintiff on liability and the matter were settled prior to the commencement of the damages phase. *See Vizzini v. Ford Motor Co.*, 569 F.2d 754, 760 (3d Cir. 1977) (discussing bifurcation of liability and damages phases and noting rationale that bifurcation may further settlement opportunities). This result would avoid the potential outcome in the absence of bifurcation that Plaintiff may be called to testify at trial, only to have a jury enter a verdict against Plaintiff, thereby resulting in needless emotional strain.

### 3. Bifurcation will promote judicial economy and convenience.

Bifurcation of trial into separate and sequential liability and damages phases will promote judicial economy and convenience by potentially reducing the number of witnesses testifying at trial and the overall length of trial. The testimony from liability witnesses alone is anticipated to

9

take several days and involve many exhibits. The testimony from the damages witnesses will require several additional days of testimony and many more exhibits on estimated economic loss. The Parties' economic damages expert reports involve financial calculations of Decedent's estimated lifetime earnings capacity and the value of household services that are not relevant to liability. Bifurcating trial into separate and sequential liability and damages phases will streamline issues at trial by focusing the issues in the initial liability phase solely on issues relevant to a jury's assessment of liability. If a jury finds in favor of Marsh on liability, then there would be no need for a second damages phase of trial, which would avoid the need to call damages expert witnesses and present exhibits relevant only to damages. This result would expedite the overall length of trial, economize resources, and promote convenience to the Court, the Parties, and the jury.

Further, because the witnesses who will testify at trial each have knowledge either of liability issues or damages issues (but not both), each witness need only be called in one phase of trial. Marsh witnesses, East Penn witnesses, and the Parties' standard of care experts (to the extent Plaintiff's standard of care expert is permitted to testify under *Daubert* and Rule 702), will be called only in the liability phase. Plaintiff and the Parties' respective economic damages experts will only be called only in the damages phase, which need only occur if liability is first established. Thus, under the particular facts of this case, bifurcation will not result in the need to call any witness in multiple phases or result in cumulative presentation of evidence.

## V. CONCLUSION

For the reasons stated above, the Court should enter an order, substantially in the form appended hereto, granting Defendants' Motion to Bifurcate liability and damages issues at trial into separate and sequential phases. The Phase One trial would focus solely on liability issues. At the end of Phase One, the jury would deliberate and deliver its verdict on liability. If the jury enters a verdict in favor of Defendants on liability, then the trial would be over and the jury would

be dismissed. If, however, the jury finds that Marsh is liable for the Smelter Incident, the Phase Two trial would begin shortly after the verdict is announced, which phase would focus solely on evidence of the amount of economic and non-economic damage from the Parties' damages experts and Plaintiff. At the end of Phase Two, the jury would deliberate and deliver its verdict on the amount of damages to be awarded, at which time the jury would be dismissed.

Respectfully submitted,

Dated: April 2, 2024  **GOLDBERG SEGALLA LLP**

*/s/ Michael P. Luongo*
Michael P. Luongo, Esq. (PA I.D. No. 311948)
Robert M. Hanlon, Esq. (PA I.D. No. 207899)
Joseph Ross, Esq. (PA I.D. No. 318039)
1700 Market Street, Suite 1418
Philadelphia, PA 19103
T: 267.519.6852
F: 267.519.6801
mluongo@goldbergsegalla.com
rhanlonjr@goldbergsegalla.com
jross@goldbergsegalla.com

*Attorneys for Defendants*
*Marsh USA, LLC and Therese Perrette*