IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| VICTORIA EVANOFF, as Administrator of the ESTATE OF JOHN EVANOFF, DECEASED<br>　　　　　　　　Plaintiff,<br><br>　　vs.<br><br>MARSH USA, LLC,<br>THERESE PERRETTE, and<br>JOHN DOE DEFENDANTS # 1-2<br><br>　　　　　　　　Defendants. | CIVIL ACTION<br><br>No. 5:23-cv-03417-JFL |

**BRIEF IN SUPPORT OF
DEFENDANTS' MOTION *IN LIMINE* TO
EXCLUDE EVIDENCE, TESTIMONY, AND ARGUMENT
REGARDING OSHA'S INVESTIGATION, CITATION OF, AND SETTLEMENT WITH
<u>EAST PENN MANUFACTURING COMPANY</u>**

Defendants Marsh USA, LLC ("Marsh") and Therese Perrette (together, "Defendants"), by and through their undersigned counsel, Goldberg Segalla LLP, respectfully submit the following Brief in Support of Defendants' Motion *in Limine* to Exclude Evidence, Testimony, And Argument Regarding Occupational Safety and Health Administration'S ("OSHA") Investigation, Citation of, and Settlement with East Penn Manufacturing Company ("East Penn").

**TABLE OF CONTENTS**

| | | |
|---|---|---|
| I. | STATEMENT OF FACTS ................................................................................... | 1 |
| | A.   Background. ............................................................................................. | 1 |
| | 1.   Marsh's 2019 Gap Assessment for East Penn. ............................ | 1 |
| | 2.   The March 6, 2021 Smelter Incident. ......................................... | 2 |
| | 3.   OSHA Investigation and Settlement with East Penn. ................. | 2 |
| | B.   Procedural History. .................................................................................. | 3 |
| II. | STATEMENT OF THE QUESTION INVOLVED ...................................................... | 4 |
| III. | SUMMARY OF ARGUMENT ............................................................................... | 4 |
| IV. | ARGUMENT ..................................................................................................... | 5 |
| | A.   Legal Standard. ........................................................................................ | 5 |
| | B.   Evidence Of East Penn's Alleged Violations Of CFR § 1910.22(c) and 1910.28(b)(6)(ii) Must Be Excluded As Irrelevant Under Rule 402. ........................................................................................................... | 5 |
| | C.   Evidence Of OSHA's Investigation And Citations Must Be Excluded Under Rule 403 Because Any Probative Value Is Substantially Outweighed By The Danger Of Unfair Prejudice, Confusing The Issues, And Misleading A Jury. ................................. | 7 |
| | D.   Evidence Of OSHA's Investigation And Citations Must Be Excluded Under Rules 802 and 803 Because It Is Inadmissible Hearsay. ................................................................................................... | 8 |
| | E.   Evidence Of East Penn's Settlement Agreement With OSHA Must Be Excluded Under Rule 408. ................................................................ | 10 |
| V. | CONCLUSION ................................................................................................... | 10 |

# **TABLE OF AUTHORITIES**

**CASES**

*Beverly v. Meva Formwork Sys., Inc.*,
2010 U.S. Dist. LEXIS 45924 (E.D. Ky. May 11, 2010) ............................................... 8

*Brand Mktg. Grp., LLC v. Intertek Testing Servs. NA*,
2014 U.S. Dist. LEXIS 69295 (W.D. Pa. May 20, 2014) ............................................ 10

*Coleman v. Home Depot, Inc.*,
306 F.3d 1333 (3d Cir. 2002) ......................................................................................... 9

*Hines v. Brandon Steel Decks, Inc.*,
754 F. Supp. 199 (M.D. Ga. 1991) ......................................................................... 8, 10

*Lacey v. Arkema Inc.*,
2014 U.S. Dist. LEXIS 44013 (M.D. La. Mar. 31, 2014) ...................................... 9, 10

*Ragsdale v. Holder*,
668 F. Supp. 2d 7 (D.D.C. 2009) ................................................................................... 9

*Vice v. N. Telecom, Inc.*,
1996 U.S. Dist. LEXIS 13150 (E.D. La. Sept. 6, 1996) ............................................... 8

*Zenith Radio Corp. v. Matsushita Elec. Indus. Co.*,
505 F. Supp. 1125 (E.D. Pa. 1980) ............................................................................... 9

**RULES**

Fed. R. Evid. 401 ................................................................................................................ 5

Fed. R. Evid. 402 ................................................................................................................ 5

Fed. R. Evid. 403 ............................................................................................................ 5, 9

Fed. R. Evid. 408(a) ...................................................................................................... 5, 10

Fed. R. Evid. 802 ............................................................................................................ 5, 8

Fed. R. Evid. 803(8) ........................................................................................................ 5, 8

**REGULATIONS**

29 CFR § 1910.22 ........................................................................................................... 5, 6

29 CFR § 1910.28 ........................................................................................................... 5, 6

# **TABLE OF EXHIBITS**

**Exhibit 1**     August 20, 2021 Letter from OSHA to East Penn Enclosing Citations

**Exhibit 2**     September 9, 2021 Settlement Agreement Between OSHA and East Penn

**Exhibit 3**     September 10, 2021 Letter from OSHA enclosing July 30, 2021 Memorandum

I.      STATEMENT OF FACTS[1]

      A.      Background.

           1.      **Marsh's 2019 Gap Assessment for East Penn.**

East Penn engaged Marsh in January 2019 to perform a voluntary one-time "gap assessment" at East Penn's Lyons Complex pursuant to a written contract: the Statement of Work. (*See* ECF No. 22-3, Statement of Undisputed Material Facts ("SMF") ¶ 23; ECF No. 22-8, Statement of Work.) East Penn's Lyons Complex is a "massive" facility spread over 520 acres (0.81 square miles), with approximately 20 separate buildings/plants, totaling 3 million square feet of floor space, and over 7,500 employees. (SMF ¶¶ 2-3.) Marsh's gap assessment involved onsite interviews of certain employees in Plants A1, A2, A3, A4, S1, and Industrial only, which were the areas identified for focus by East Penn. (SMF ¶¶ 33, 35.) As set forth in the Statement of Work, the gap assessment did not involve hazard inspections or OSHA compliance. (SMF ¶ 26.) Further, during the course of the gap assessment, Marsh never saw and was never asked to see the Smelter plant, which is located in a physically separate building from the plants that Marsh visited. (SMF ¶ 37.) East Penn never requested or expected Marsh to visit all plants or operations at the Lyons Complex, or to visit the Smelter plant in particular, as part of the gap assessment. (SMF ¶ 36.) Marsh issued a report with recommendations to East Penn in March 2019. (SMF ¶¶ 45, 48, 51.) Marsh presented the Gap Assessment Report to East Penn in May 2019, and did not provide any consulting services to East Penn after that date. (SMF ¶ 48, 51.) East Penn had the sole discretion whether to implement any of Marsh USA's recommendations, and East Penn at all times remained directly responsible for the safety of its own workplace and that of its employees. (SMF ¶ 49.)

---

[1] The material facts have been fully briefed in Defendants' Motion for Summary Judgment (ECF No. 22) and accompanying Statement of Undisputed Material Facts ("SMF") (ECF No. 22-3). The facts are summarized here.

**2.     The March 6, 2021 Smelter Incident.**

One of the approximately 20 plants at East Penn's massive Lyons Complex is the Smelter plant, which houses smelter kettles that are used in the battery manufacturing process. (SMF ¶ 53.) The kettles are approximately 8' x 8' in diameter, and 6.25' deep. (SMF ¶ 54.) The smelters have a hood/lid with a 4' foot opening in the center where machinery is placed. (SMF ¶ 55.)

On December 7, 2020, East Penn hired decedent John Evanoff ("Decedent") as a refinery attendant in its Smelter Department. (SMF ¶ 56.) On March 6, 2021, Decedent was involved in a fatal workplace incident in the Smelter plant of the Lyons Complex when he stepped onto the lid of smelter kettle while attempting to load lead through an opening in the kettle lid, and then fell into the opening in the lid ("Smelter Incident"). (SMF ¶¶ 57-58.)

According to East Penn, if a piece of lead is too large to fit through the opening of a kettle, employees should either cut it down to size on the floor or use a forklift to elevate the piece of lead and cut the edges off using torches, and then load the lead using a forklift. (ECF No. 22-6, Birckbichler Dep. 99:19-100:10.) East Penn provided training to new employees regarding the procedure for loading lead into kettles at the time of the Smelter Incident, and East Penn trained new employees not to climb on top of kettles hoods when loading lead. (*Id.* at 104:17-105:2.) In other words, "the expectation is that their feet would not leave the floor." (*Id.* at 104:13-16.)

**3.     OSHA Investigation and Settlement with East Penn.**

OSHA investigated the Smelter Incident, during which it interviewed unidentified employees in East Penn's Smelter Department. (*See* Ex. 3, Sept. 10, 2021 Letter and Enclosure, at East Penn 046.) Following the investigation, OSHA issued an internal Memorandum proposing citations to East Penn for alleged violations of three OSHA regulations:

1. 29 CFR § 1910.22(c) – based on a 24-inch step on the side of the kettle;
2. 29 CFR § 1910.28(b)(3)(i) – based on the 4' opening in the kettle hood;

    3. 29 CFR § 1910.28(b)(6)(ii) – based on removal of the kettle hood.

(Ex. 3, at East Penn 051.) OSHA identified only the second regulation, § 1910.28(b)(3)(i), as related to the Smelter Incident; the first and third regulations, §§ 1910.22(c) and 1910.28(b)(6)(ii), are identified as not related to the Smelter Incident given that the Smelter Incident did not result from either the 24-inch step on the side of the kettle or the removal of the kettle hood. (*Id.*)

On August 20, 2021, OSHA issued a letter to East Penn enclosing three citations for the alleged violations of these regulations, which proposed a total penalty of $20,948. (Ex. 3, OSHA Citations, at East Penn 069-072.) East Penn was given notice of the right to contest the citations (*id.* at 065); however, East Penn elected instead to enter into a Settlement Agreement with OHSA on September 9, 2021, in which East Penn agreed to pay an amended penalty of just $15,000. (Ex. 2, Informal Settlement Agreement.) The Settlement Agreement Expressly states that:

> **None of the foregoing agreements, stipulations, or actions taken by [East Penn] shall be deemed an admission by [East Penn] of any of the allegations contained in the citation or otherwise admissible before any administrative, judicial or other authority by any party other than the United States Government. The agreements, statements, stipulations, findings and actions herein are made solely for the purpose of settling this matter economically and amicably without further litigation and shall not be used for any purpose except for proceedings and matters arising under the Act.**

(Ex. 2, Settlement Agreement, at East Penn 055 (emphasis added).)

    **B.    Procedural History.**

Plaintiff is the widow of Decedent and the administrator of his estate. Plaintiff commenced this action by filing a Complaint in the Court of Common Pleas of Philadelphia County on March 3, 2023. (ECF No. 1-7, Compl.) On August 23, 2023, Plaintiff filed her Amended Complaint naming only Marsh and Therese Perrette as defendants. (ECF No. 1-5, Am. Compl.) On August 31, 2023, Marsh removed the action to the United States District Court for the Eastern District of Pennsylvania. (ECF No. 1, Notice of Removal.) Plaintiff's Amended Complaint asserts claims against Defendants

for negligence (Counts I and II), wrongful death (Count IV), and survival action (Count V), as well as vicarious liability against Marsh as the employer of Ms. Perrette (Count III).

According to Plaintiff, the opening in the lid of the smelter kettle constituted an existing fall hazard that could have been remediated with the addition of a guardrail or other protective measure. (ECF 1-5, Am. Compl. ¶¶ 32-33, 49(g), 53(k), 59(h).) Plaintiff bases this allegation on OSHA's investigation and citations, and then assumes that this supposed hazard existed and could have been identified over two years before the Smelter Incident in February 2019, when Marsh conducted its site *visits* (not inspections) to *other areas* of the sprawling Lyons Complex unrelated to the Smelter plant. Plaintiff alleges that Defendants may be held liable for the Smelter Incident solely because Marsh executed the Statement of Work with East Penn in January 2019, notwithstanding that Marsh never saw the Smelter Plant as part of its gap assessment and there is no allegation that Marsh caused the alleged hazard in the Smelter plant through any affirmative act.

## II.   STATEMENT OF THE QUESTION INVOLVED

1. Should the Court exclude evidence, argument, and reference to OSHA's investigation, citations, and Settlement Agreement with East Penn because this evidence is irrelevant, prejudicial, hearsay, and/or otherwise not admissible in evidence? *Answer: Yes.*

## III.   SUMMARY OF ARGUMENT

The Parties' Joint Trial Exhibit set does not include OSHA's investigative file, citations, or Settlement Agreement with East Penn. Nevertheless, the Court must still exclude any testimony, argument, or reference to OSHA's investigation, citations, or Settlement Agreement because they are inadmissible under the Federal Rules of Evidence on several grounds. *First*, two of the alleged violations are admittedly unrelated to the Smelter Incident and are thus not relevant. Reference to these irrelevant standards would only serve to confuse the issues and mislead a jury. *Second*, evidence of OSHA's investigation and citations are not authoritative but are likely to

confuse or mislead a jury, so as to be inadmissible under Rule 403. *Third*, OSHA's investigation and citations are inadmissible hearsay under Rules 802 and 803. *Fourth*, the Settlement Agreement between OSHA and East Penn is an inadmissible completed compromise under Rule 408.

IV.   **ARGUMENT**

    A.   **Legal Standard.**

"Irrelevant evidence is not admissible." Fed. R. Evid. 402. "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. Further, "[t]he Court may exclude relevant evidence if its probative value is substantially outweighed by the danger of . . . unfair prejudice, confusing the issues, [or] misleading the jury . . . ." Fed. R. Evid. 403.

Hearsay is not admissible unless permitted by statute or court rules. Fed. R. Evid. 802. Rule 803 provides an exception to the rule against hearsay where the evidence contains "factual findings from a legally authorized investigation," Fed. R. Evid. 803(8)(A)(iii), but this exception does not apply if the "source of information or other circumstances indicate a lack of trustworthiness." Fed. R. Evid. 803(8)(B).

Rule 408 provides that offers to compromise and settlement agreements are not admissible "to prove or disprove the validity or amount of a disputed claim." Fed. R. Evid. 408(a).

    B.   **Evidence Of East Penn's Alleged Violations Of 29 CFR §§ 1910.22(c) and 1910.28(b)(6)(ii) Must Be Excluded As Irrelevant Under Rule 402.**

OSHA's investigative file, citations, and Settlement Agreement are not a part of the Parties' Joint Trial Exhibits, and thus will not be offered into evidence. Nevertheless, Plaintiff's counsel has included copies of 29 CFR §§ 1910.22 and 1910.28 in the Parties' Joint Trial Exhibits (Ex. Nos. 088 and 089). Plaintiff's counsel intends to question witnesses regarding these regulations because OSHA alleged violations by East Penn of §§ 1910.22(c), 1910.28(b)(3)(i), and 1910.28(b)(6)(ii).

5

However, as noted in OSHA's own Memorandum, §§ 1910.22(c) and 1910.28(b)(6)(ii) are not related to the Smelter Incident, and are thus not relevant to the issues before the Court. (*See* Ex. 3, at East Penn 051 (noting two of three standards unrelated to incident).)

OSHA issued its citation to East Penn under of 29 CFR § 1910.22(c) on the basis that a step on the side of the smelter kettle allegedly did not constitute safe access and egress.[2] OSHA issued its citation to East Penn under 29 CFR § 1910.28(b)(6)(ii) on the basis that a fall hazard allegedly existed when the entire smelter kettle hood is removed from the kettle.[3] (*Id.*) The Smelter Incident was not caused by either alleged violation. The kettle hood was on the kettle at the time of the Smelter Incident and Decedent had already climbed onto the kettle hood and was standing on the kettle hood for several seconds before he fell through the 4' opening in the hood itself. Thus, the existence or non-existence of these alleged hazards would not have prevented the Smelter Incident. As such, they are not relevant.

That these standards are not relevant is additionally confirmed by the fact that Marsh never contracted to inspect East Penn's premises for safety hazards or for OSHA compliance, or even to visit, let alone inspect, all plants or operations of the Lyons Complex as part of its onsite survey. Marsh never saw the Smelter plant, was never asked to see the Smelter plant, and the Smelter plant was never identified as an area of focus. (SMF ¶ 35-37.) Thus, reference to alleged regulatory violations that did not contribute to the Smelter Incident, in a plant that Marsh never saw, has no probative value. Use of these standards would instead only serve to confuse the issues and mislead a jury through the presentation of standards that have no bearing on the actual incident or Marsh's

---

[2] Section 1910.22(c) provides: "Access and egress. The employer must provide, and ensure each employee uses, a safe means of access and egress to and from walking-working surfaces."
[3] Section 1910.28(b)(6)(ii) provides: "Each employee 4 feet (1.2 m) or more above dangerous equipment must be protected from falling by: (A) Guardrail systems; (B) Safety net systems; (C) Travel restraint systems; or (D) Personal fall arrest systems."

contractual undertaking. Accordingly, any reference to these standards must be excluded from evidence under Rules 402 and 403.

### C. Evidence Of OSHA's Investigation And Citations Must Be Excluded Under Rule 403 Because Any Probative Value Is Substantially Outweighed By The Danger Of Unfair Prejudice, Confusing The Issues, And Misleading A Jury.

Plaintiff contends that the 4' opening in the smelter kettle hood violated OSHA's regulations because OSHA said so. However, OSHA's position that the smelter kettle hood violated OSHA's regulations is not dispositive. Further, even if the kettle hood was in violation of OSHA's regulation in August 2021 when OSHA issued its citations, there is no evidence that any such hazard existed or could have been discovered over two years prior to the Smelter Incident in February 2019, when Marsh conducted its on-site *visits* to interview employees in *other areas* of the Lyons Complex that are physically separate from the Smelter plant.

The only regulation that OSHA asserted was relevant to the Smelter Incident is 29 CFR § 1910.28(b)(3)(i). Section 1910.28 addresses hazards due to *height*, not heat (as would be applicable to smelters), and generally "requires employers to provide protection for each employee *exposed to fall and falling object hazards*," 29 CFR § 1910.28(a) (emphasis added). If an employee is *exposed* to a fall hazard, subsection 1910.28(b)(3)(i) provides that "[t]he employer must ensure: (i) Each employee is protected from falling through any hole (including skylights) that is 4 feet (1.2 m) or more above a lower level by one or more of the following: (A) Covers; (B) Guardrail systems; (C) Travel restraint systems; or (D) Personal fall arrest systems."

OSHA alleged that the opening in the kettle lid constituted a fall hazard because it determined from interviews of unidentified East Penn employees that employees "sometimes step up onto the lid of the smelter to load the lead through the opening." (Ex. 3, at East Penn 049.) But according to East Penn, employees were never supposed to climb on top of the kettle lids when loading lead. (Birckbichler Dep. at 99:19-105:2.) If East Penn employees had followed East

7

Penn's procedures and instruction, and not stepped on the kettle lid, they would not have been "exposed to fall . . . hazards" when loading lead in the kettles.

OSHA's position in the proposed citations is not controlling, but it would nevertheless have a significant propensity to suggest to a jury that it is given that OSHA is a federal agency.  *See Vice v. N. Telecom, Inc.*, 1996 U.S. Dist. LEXIS 13150, at *4-6 (E.D. La. Sept. 6, 1996) (excluding OSHA citation because "probative value . . . is scant and is substantially outweighed by the danger that the jury would ascribe unfair weight to the citation because of its 'governmental' source"); *Hines v. Brandon Steel Decks, Inc.*, 754 F. Supp. 199, 201 (M.D. Ga. 1991) (excluding OSHA report under Rule 403 because jury was likely to place too much weight on OSHA investigator's determination on issues that jury must decide for itself); *see also Beverly v. Meva Formwork Sys., Inc.*, 2010 U.S. Dist. LEXIS 45924, at *6-7 (E.D. Ky. May 11, 2010) (excluding OSHA report under Rule 403 as unfairly prejudicial and likely to confuse a jury as a result of the different standards that apply in OSHA investigations versus civil lawsuits).  Because there is a substantial risk that a jury would conclude that the Smelter kettle lid was unsafe based solely upon OSHA's say so, evidence of OSHA's citations is unfairly prejudicial and must be excluded under Rule 403.

**D.    Evidence Of OSHA's Investigation And Citations Must Be Excluded Under Rules 802 and 803 Because It Is Inadmissible Hearsay.**

OSHA's citations and OSHA's investigative file are hearsay.  Thus, even if relevant, the Court must exclude them unless they fall within an exception to the rule against hearsay.  *See* Fed. R. Evid. 802.  They do not satisfy any exception.

Rule 803(8) provides that public records may be admissible as an exception to the rule against hearsay if they set forth "factual findings from a legally authorized investigation," provided that "the opponent does not show that the source of information or other circumstances indicate a lack of trustworthiness."  Fed. R. Evid. 803(8).  OSHA's investigation file and citations are not

8

sufficiently trustworthy to be admissible under this exception.  OSHA's citations were issued against East Penn without the benefit of a hearing and were expressly made subject to "the right to contest this Citation and Notification of Penalty."  (Ex. 1, at East Penn 065.)  East Penn then entered into a Settlement Agreement that superseded the citations, in which East Penn expressly did not admit any of the allegations in the citations.  (Ex. 2, Settlement Agreement, at East Penn 055.)  OSHA's preliminary citations against East Penn are thus not adequately trustworthy.  *See Coleman v. Home Depot, Inc.*, 306 F.3d 1333, 1342 (3d Cir. 2002) (noting that lack of a hearing affects a statement's trustworthiness under Rule 803(8)); *Zenith Radio Corp. v. Matsushita Elec. Indus. Co.*, 505 F. Supp. 1125, 1147 (E.D. Pa. 1980) (in assessing trustworthiness, the court should consider "the stage of the proceedings at which the findings were made"), *rev'd on other grounds*, 475 U.S. 574 (1986).

Moreover, OSHA's investigation and citations are themselves based on the hearsay statements of unidentified East Penn employees whose position in the company and involvement with the smelters are unknown, and who thus cannot be called to testify. (*See* Ex. 3, at Memorandum.)  "Statements made by third persons that are recorded in an investigative report are hearsay within hearsay.  As such, they are inadmissible unless they qualify for their own exclusion from the hearsay rule." *Ragsdale v. Holder*, 668 F. Supp. 2d 7, 24 (D.D.C. 2009).  Because the OSHA reports are themselves based on hearsay of third parties, they cannot be deemed trustworthy for purposes of the hearsay rule.  *See Zenith*, 505 F. Supp. at 1147 (agency's reliance on hearsay weighs against trustworthiness); Fed. R. Evid. 805 (hearsay within hearsay admissible only "if each part of the combined statements conforms with an exception to the rule [against hearsay]").  Consequently, courts have held that OSHA citations are not sufficiently trustworthy to be admitted under the public records exception to the rule against hearsay.  *See, e.g.*, *Lacey v.*

*Arkema Inc.*, 2014 U.S. Dist. LEXIS 44013, at *15-16 (M.D. La. Mar. 31, 2014) (holding OSHA citation did not satisfy public records exception); *Hines*, 754 F. Supp. at 200-01 (holding OSHA report was not sufficiently trustworthy because information was gathered without a hearing and there was no opportunity to cross-examine the OSHA investigator). Because the hearsay statements in OSHA's investigative filed should not come into evidence.

    **E.    Evidence Of East Penn's Settlement Agreement With OSHA Must Be Excluded Under Rule 408.**

In addition to the foregoing reasons, testimony, arguments, or evidence regarding the Settlement Agreement between East Penn and OSHA should be excluded under Rule 408 because it reflects a completed compromise that is inadmissible to establish fault, any by its own express terms, is not admissible in court to prove fault. *See* Fed. R. Evid. 408 Adv. Comm. Note (completed compromises must be treated the same as offers of compromise); *Brand Mktg. Grp., LLC v. Intertek Testing Servs. NA*, 2014 U.S. Dist. LEXIS 69295, at *73 (W.D. Pa. May 20, 2014) (applying Rule 408 to settlement agreement); *see Lacey*, 2014 U.S. Dist. LEXIS 44013, at *13 (excluding OSHA settlement agreement).

**V.    CONCLUSION**

For the reasons stated above, the Court should enter an order, substantially in the form appended hereto, excluding all reference to, or offering or presenting any statements, testimony, arguments, or evidence concerning to OSHA's investigation of the Smelter Incident, including the Citations, the Settlement Agreement, and OSHA's investigative file.

|  |  |
|---|---|
|  | Respectfully submitted, |
| Dated: April 9, 2024 | **GOLDBERG SEGALLA LLP** |
|  | <u>/s/ Michael P. Luongo</u><br>Michael P. Luongo, Esq. (PA I.D. No. 311948)<br>Robert M. Hanlon, Esq. (PA I.D. No. 207899)<br>Joseph Ross, Esq. (PA I.D. No. 318039)<br>1700 Market Street, Suite 1418<br>Philadelphia, PA 19103<br>T: 267.519.6852<br>F: 267.519.6801<br>mluongo@goldbergsegalla.com<br>rhanlonjr@goldbergsegalla.com<br>jross@goldbergsegalla.com<br><br>*Attorneys for Defendants*<br>*Marsh USA, LLC and Therese Perrette* |