# Exhibit 1

**MARSH RISK CONSULTING**

RISK. DISPUTES. STRATEGY.

# STATEMENT OF WORK
EAST PENN MANUFACTURING
RISK CONSULTING SERVICES

OCTOBER 30, 2018

EVANOFF V. MARSH
**EXHIBIT**
**095**

MARSH-EVANOFF-0000004

# CONTENTS

This Statement of Work ("SOW") dated October 30, 2018 defines the scope of services to be performed by Marsh Risk Consulting ("Marsh") for East Penn Manufacturing ("Client").

1. Purpose and Scope ........................................................................................... 3

2. Deliverables ..................................................................................................... 6

3. Pricing and Payment Schedule ........................................................................ 8

4. Appendix A- Standard Terms & Conditions .................................................... 9

# 1

## Purpose and Scope

East Penn Manufacturing is committed to providing a work environment that ensures and improves the health and safety of all employees. Leadership is interested in continuous risk management improvement and driving toward a "best-in-class" risk management system that leads to attracting and retaining the right type of workforce. To that end, East Penn Manufacturing seeks an in-depth, outside evaluation of their current loss prevention processes as well as their work culture as it relates to loss prevention and risk management.

The objective of Marsh's engagement is to help address East Penn Manufacturing's desire to identify and systemically address identified gaps in its current loss prevention management system, evaluate the effect of those gaps on the organization's loss prevention and risk management culture, and recommend systems to assure that improvements are sustained.

Marsh understands that East Penn Manufacturing's goal is to determine how well loss management practices are imbedded within the organization's culture. East Penn Manufacturing's loss management culture is the result of the effectiveness of internal systems and processes, the quality and maintenance of equipment, leadership communication effectiveness, and how people in general interact in their work environments. It is likely that East Penn Manufacturing has multiple cultures – some positive and some negative. An optimized loss prevention management system that controls variability in the manner in which front line employees perform work each day provides the best opportunity for a meaningful, positive safety culture.

Marsh is well-qualified to assist East Penn Manufacturing in their efforts to build a sustainable, best-in-class loss management program. Marsh has a full-breadth of professional resources to meet East Penn Manufacturing's needs as we currently understand them and to provide technical support as those needs evolve.

## Approach

The work will be conducted at East Penn Manufacturing's Lyon Station, PA facility.  Our approach is designed to provide a metrics-driven roadmap to continuous improvement and sustained results.  Our scope of work includes the following major objectives:

**Operational Loss Prevention Gap Assessment**

**Assess the state of the current Loss Prevention Management System** – An *Operational Loss Prevention Gap Assessment* will be performed at the Lyon Station, PA facilities which will review and provide an analysis of key loss prevention functions at East Penn Manufacturing, including staffing, training and written programs. Marsh's proprietary audit tool will be used to determine how effectively the program is executed.  Our process supports a systematic, data-oriented approach that helps evaluate programs, benchmarks East Penn Manufacturing against industry best practice, and supports action planning and continuous improvement.

Marsh offers a complete OPS Gap that is designed to analyze underlying culture and performance across the entire safety and loss prevention continuum. The complete OPS Gap contains 40 Key Performance Indicators (KPI) in the following six (6) categories:

- Leadership alignment;
- Safety, ergonomics and prevention;
- Employee onboarding, education and skill building;
- Incident management;
- Inspections and auditing;
- Continuous risk improvement.

Marsh will focus on understanding and quantifying the effectiveness of the loss prevention program and processes at East Penn Manufacturing, evaluating all opportunities for increased safety operational effectiveness and efficiency.

The operational review will allow us to pinpoint accountability issues, work inefficiencies, fragmented processes, duplicative efforts and gaps.  We will attempt to address both the quantitative and qualitative aspects, seeking to identify opportunities to enhance efficiency, quality, and outcomes.  The assessment will be accomplished through site visits, document review and interviews.

The scope of the operational gap assessment includes:

**Site Visits**

Marsh's consultants will conduct site visits to a number of operations at the Lyon Station, PA facilities to review overall safety environment, safety culture and current safety measures being utilized.  We will want to see/review all areas of the operations that are inspected and will need guides with knowledge of the operations to ensure we understand everything at the highest level.

**Document Review**

Marsh will review existing policies, procedures, and protocols to understand the general safety loss prevention, ergonomics program and chemical safety responsibilities for applicable departments. We will also review loss runs, OSHA logs and recent Employee Survey results.  We begin this effort by requesting background information, available data sources and documentation for a desk review prior to the on-site evaluations. This effort allows for preparation of questions for interviews and planning for worksite observations.

**Worksite Observations and Interviews**

Our worksite observations and interviews are conducted on-site and include participants ranging from senior leadership to front-line personal. This spectrum of involvement allows for a snapshot of the organization's loss prevention climate.  Potential interviewees include:

- Managers
- Safety Staff
- Operations
- Medical Staff
- Employees

During worksite observations we focus on the relationship between policies and procedures and actual employee practices in the workplace. We attempt to understand "the why" if deviations exist between prescribed policies and procedures and worksite practices.

Our interviews concentrate on employee knowledge of existing policies and procedures to gain an understanding of organizational resources pertaining to safety, loss prevention and the ergonomics programs.

**Findings and Recommendations**

We provide a systematic, data-oriented approach to initial benchmarking, improvement prioritization and action planning. Marsh employs methodologies that allow for consistent evaluation for comparing historical and future performance.

This Operational Loss Prevention Gap Assessment will highlight several recommendations from the 40 Key Performance Indicators (KPIs). From the assessment, a "Top 5" list will be generated that, if addressed, will yield long-term impact not only on East Penn Manufacturing's loss prevention management system, but its operations as a whole. Examples of areas of focus _may_ be:

- Supervisor Training
- Hazard Recognition and Risk Assessment
- Metris – Objectives, Strategies, Measures
- Ergonomics

# 2

## Deliverables

The deliverables following the Operational Loss Prevention Gap Assessment will include summary and detail reports in electronic and hard-copy formats providing a comparison of current processes, identifying opportunities for improvement; and tactical recommendations categorized based on importance and ease of implementation.  We will also include site specific summaries of findings and recommendations for training, rules and procedures which could be portable to other locations throughout East Penn Manufacturing.

**Project Management**

Marsh will conduct periodic checkpoints with the Client to review progress, clarify expectations, and manage clear communication channels on the documents created and the progress with the rest of the Client resources.

This SOW includes project management for the project described here.

This SOW does not include any documents not specifically listed in the Deliverables section of this document

**Change Management**

Marsh will manage changes to the scope of the project.  All proposed changes must be brought to the attention of the Marsh Project Manager per the Change Control Procedures discussed during the kickoff meeting using the proper documentation.  East Penn must approve of all changes in writing prior to Marsh's beginning of additional or changed work.

## Project Term and Project Timing

Upon signed agreement Marsh Risk Consulting will meet with East Penn Manufacturing to develop an agreed on schedule.

The following table shows approximate dates for deliverables. Note that all are contingent on review of drafts by Client per the approach above in Section 1.  The dates included here are based on the assumption that this Statement of Work is signed and fully executed by both parties by November 15, 2018.

| | |
|---|---|
| Project Kick-off | Week of November 19th |
| Review of Documents/Loss Runs/OSHA Logs | Week of November 26th |
| On-site Inspections and Interviews | Between December 3rd and 19th |
| Final Report Delivery | Week of January 7th |

## Assumptions and Constraints

The following list includes assumptions and constraints on the project that have been taken into consideration when preparing this Statement of Work.  If any prove to be inaccurate or unreliable, the project schedule or cost may require a change per the Change Control Procedure discussed in Section 1.

| Scope Element | Assumptions | Constraints |
|---|---|---|
| Operational Loss Prevention Gap Assessment | <ul><li>Site visits can be accomplished in the course of two to four consecutive business days (multiple visits may be contemplated).</li><li>Site contacts will be available during the scheduled visits.</li><li>Standard reports will be developed.</li><li>No material changes in audit content.</li><li>Marsh does not certify or guarantee compliance with any local, state, or federal regulation and/or permits</li></ul> | <ul><li>Unforeseen meeting disruptions</li><li>Lack of availability of East Penn Manufacturing project participants may cause delays in completing assigned tasks.</li></ul> |

EastPenn                                                                                          October 30, 2018

# 3

## Pricing and Payment Schedule

The fixed price fee for the work is described herein. Marsh will come to an invoice schedule with the Client we recommend half up front and the balance upon project completion at the project or we can invoice quarterly.

Professional Fees

- Operational Loss Prevention Gap Assessment $24,000

Expenses

Direct expenses, such as airfare, mileage, hotel, meals, parcel delivery and similar charges, which originate with outside vendors, are included in the above fees and will be billed at cost upon completion.

As is our standard practice, directly incurred expenses will be billed to you at cost. In addition, our administrative project support services will be invoiced at 7.5% of our professional fees.

Invoices are payable upon receipt.

Upon signed acceptance of this Statement of Work, the Standard Terms and Conditions attached as [Appendix A] to the Statement of Work for East Penn Manufacturing services dated October 30, 2018 by and between the parties will also govern Marsh's provision of Services under this SOW."

**East Penn Manufacturing**                                **Marsh USA Inc.**

By: _[signature]_                                           By: _[signature]_

Name: Troy Greiss                                           Name: Richard Kennedy

Title: VP EHS & Regulatory Affairs                          Title: Managing Director

Date: 1/9/2019                                              Date: 1/12/2019

8

# Appendix A- Standard Terms & Conditions

MARSH USA INC.

RISK CONSULTING PRACTICE

These Standard Terms and Conditions are part of the attached Statement of Work and combined constitute an "Agreement" made as of the _____ day of _____, _____, between East Penn Manufacturing *("Client")* and the Risk Consulting practice of Marsh USA Inc., a Delaware Corporation, ("Marsh") (collectively, the "Parties").   The Parties agree that the effective date of the Agreement shall be the date on which Marsh shall have commenced providing the services described on the Statement of Work at the request of the Client or the execution date of the agreement, whichever is earlier.

**1.        SERVICES**

Marsh shall provide the services as described in the attached Statement of Work (the "Services").  It is understood and agreed that Marsh's services may include advice and recommendations; however all decisions in connection with the implementation of such advice and recommendations shall be the sole responsibility of, and made by, Client.

The Services may include modeling and/or business analytics services, including hazard loss and catastrophe modeling, loss forecasting and triangles, adverse event simulation, scenario and portfolio risk analysis, decision mapping, risk bearing and risk retention tolerance analysis ("Modeling and Analytics").  Modeling and Analytics services will be based upon a number of assumptions, conditions and factors. If any of them or any information provided to Marsh are inaccurate or incomplete or should change, the Modeling and Analytics provided by Marsh could be materially affected.

These services are subject to inherent uncertainty, and actual results may differ materially from that projected by Marsh.  They are provided solely for your benefit, and do not constitute, and are not intended to be a substitute for, actuarial, accounting or legal advice. Marsh shall have no liability to any third party in connection with these services or to you with regard to any services performed or provided by a third party. Marsh's service obligations to Client are solely contractual in nature.  Client acknowledges that, in performing services, Marsh and its affiliates are not acting as a fiduciary for Client, except to the extent required by applicable law, and do not have a fiduciary or other enhanced duty to Client.

**2.        PAYMENT OF INVOICES**

Client agrees to pay properly submitted invoices promptly upon its receipt of any such invoices.  Marsh shall have the right to halt or terminate entirely its Services until payment is received on past due invoices.  Balances unpaid after thirty (30) days of the date of the invoice may bear interest at a rate equal to the lesser of (i) one and a half percent (1.5%) per month, or (ii) the maximum rate of interest permitted by law.  All fees, charges and other amounts payable to Marsh hereunder do not include any sales, use, excise, value added or other applicable taxes, tariffs or duties, payment of which shall be Client's responsibility, including any amounts assessed by government authorities subsequent to Client's payment for Marsh's Services.

Where the Services are provided to the Client in a jurisdiction where a Value Added Tax (VAT) or Goods and Service Tax (GST) are applicable to the Services, such taxes will be charged in addition to the agreed compensation for Services where Marsh is responsible for accounting for such turnover taxes under the relevant local legislation.  Where the Client is responsible for such accounting, the Services will be charged net of such taxes and the Client shall address such taxes appropriately.

**3.        CONFIDENTIALITY**

Client anticipates that it will disclose certain technical, financial, strategic and other proprietary and confidential information relating to its business operations and properties ("Confidential Information") to Marsh for the purposes of Marsh providing the Services specified in this Agreement.  Marsh agrees to keep this information confidential.  Neither Marsh nor any of its employees or agents directly or indirectly shall use any Confidential Information furnished by or on behalf of Client for any purpose except in furtherance of Services to be rendered by Marsh pursuant to the Agreement.  Marsh may include, on an anonymous basis,

information relating to your insurance program in benchmarking, modeling, analytic and insurance offerings. Marsh will not disclose any Confidential Information to any third party, without Client's consent.  Marsh shall take all steps reasonably required to maintain the confidentiality of Confidential Information in its possession. The transmission of Confidential Information via electronic data transmission networks which provide for the security of users' data shall be deemed consistent with Marsh's obligations hereunder unless such use is contrary to Client's express instructions.

As between Client and Marsh, Confidential Information shall be the sole and exclusive property of Client, and, if requested by client, all documents and records in Marsh's possession containing Confidential Information shall be returned to Client; provided, however, that Marsh may retain copies of documents that may contain Confidential Information which are necessary for the conduct and proper record keeping of Marsh's business in accordance with standard operating procedures or applicable law.

The restrictions and agreements set forth herein shall not apply to any Confidential Information:

(a) which at the time disclosed to or obtained by Marsh is in the public domain;
(b) which becomes part of the public domain through no act, omission or fault of Marsh;
(c) which Marsh's records demonstrate was developed independently by Marsh or was received by Marsh from a third party which Marsh had no reason to believe had any confidentiality or fiduciary obligation to Client with respect to such information;
(d) which is required to be disclosed by law, including, without limitation, pursuant to the terms of a subpoena or other similar document; provided, however, Marsh shall give prior timely notice of such disclosure to Client to permit Client to seek a protective order, and, absent the entry of such protective order, Marsh shall disclose only Confidential Information that Marsh is advised by its counsel must be disclosed by law; or
(e) Following the lapse of two years after disclosure of such information to Marsh.

It is understood and agreed that money damages would not be a sufficient remedy for any breach of this section 3 and Client shall be entitled to injunctive relief as a remedy for such breach, without prejudice to any other rights or remedies available to Client under applicable law.

**4.     VARIATION**

Marsh's service obligations to Client are limited to those set forth in the attached Statement of Work.  Where Client seeks any variation in the Services, whether by way of addition, deletion substitution or otherwise, the Client shall submit its proposal for such variation in such Services in writing as soon as practicable to Marsh. Marsh shall not be obligated to accept any such variation in such Services unless the Client agrees to pay any additional sum or sums reasonably specified by Marsh and to extend any period agreed for provision of such Services by any additional period reasonably specified by Marsh.

**5.     INDEPENDENT CONTRACTOR**

At all times during the term of this Agreement, Marsh shall be an independent contractor and shall not be an employee of Client.  Neither party shall have the authority to bind or commit the other party to any contract or obligation.

**6.     CONSULTANT WORK PRODUCT**

All works of authorship, including but not limited to, designs, plans, specifications, programs, computer output, valuations, estimates, report, data, memoranda, findings, recommendations of every description and every innovation, conception, improvement, discovery or invention and any intellectual property rights associated therewith which are created, utilized or developed by  Marsh or its representatives in conjunction with this Agreement ("Work Product") is and remains the property of Marsh; provided, however, that the Client shall have and is hereby granted the non-transferable right to use Work Product delivered to the Client by Marsh solely for the Client's internal risk management purposes (the "Intended Purpose").  Notwithstanding the foregoing, Marsh shall acquire no rights of ownership in intellectual property rights subsisting in any material provided by Client to Marsh in connection with this Agreement.

Client shall not use the Work Product provided by Marsh to Client for any purpose other than the Intended Purpose.  Work Product and Marsh's analysis, advice, findings, opinions and recommendations are solely for

the information of the Client and may not be quoted in whole or in part or otherwise referred to, disclosed or delivered by the Client to any other person or entity without the prior written consent of Marsh.

Where Client makes any alteration or modification to any of the Work Product, all references to Marsh shall be removed therefrom.

### 7. TERMINATION

Client or Marsh may terminate this Agreement, with or without cause, effective immediately upon notice to the Client or to Marsh unless otherwise provided in said notice.  Marsh's obligation to render Services shall terminate immediately upon termination of this Agreement for any reason.  Rights and obligations accrued prior to termination shall survive termination.  Without limiting the generality of the foregoing, upon termination, Marsh shall be entitled to receive a portion of the fee set out in the Statement of Work based upon the prorated portion of time that has elapsed from the project's commencement date through the termination date relative to the original estimated project duration, as well as any expenses accrued through the date of cancellation. Notwithstanding the above, Marsh's shall be entitled to an amount no less than 10% of total estimated project fees.

### 8. ENTRY AND COOPERATION

Client shall arrange for access to and make all provisions for Marsh to enter Client's property as required by Marsh to perform the Services.  Client shall arrange for and make provisions for entry to work space for Marsh in order for Marsh to perform such Services in a timely manner.  Client shall make available in a timely manner, the documents and information deemed necessary by Marsh to complete such Services.  Client shall inform Marsh promptly upon Client discovering that any such information or document is, or becomes, untrue, incomplete or inaccurate.  In performing the Services, Marsh shall, and shall be entitled to, rely upon all information and documents provided to it by or on behalf of the Client.  Marsh shall not be responsible for the accuracy or verification of any such information or document.

### 9. INDEMNITY

Marsh's scope of work and fees do not contemplate Marsh's being involved as a party, non-party witness or otherwise in any legal proceedings or subject to third-party claims.  Accordingly, Client agrees to indemnify, defend and hold harmless Marsh, its directors, officers, shareholders and employees (collectively "Indemnified Persons") from and against any and all claims, liabilities, losses, damages, costs, discovery requests, demands, judgments, actions, causes of action, disbursements and expenses in connection therewith (including, without limitation, the reimbursement of all such costs, fees, expenses and disbursements, including reasonable attorneys' fees, as and when incurred, of investigating, preparing for, responding to or defending against any action, suit, proceeding, investigation, subpoena or other inquiry (whether or not Marsh is a party to the proceedings or litigation at issue) in connection with actual or threatened actions ("Losses") relating to or arising out of the Services or any matter relating to the Services; provided, however that Client will not be liable under this indemnity to the extent any of the foregoing Losses are determined, in a final judgment by a court of competent jurisdiction, not subject to further appeal, to have resulted primarily from the gross negligence, willful misconduct or bad faith of any Indemnified Person in connection with the performance of Services.

### 10. LIMIT OF LIABILITY

In no event shall either party to this agreement be liable for any indirect, special, incidental, consequential or punitive damages or for any lost profits arising out of or relating to any services provided by Marsh or its affiliates.  The aggregate liability of Marsh, its affiliates and its and their employees to Client or its affiliates arising out of or relating to the provision of services by Marsh or its affiliates shall not exceed the total compensation paid to Marsh for the Services hereunder.   This provision applies to the fullest extent permitted by applicable law.

### 11. NO THIRD PARTY BENEFITS

The Parties hereto mutually agree that this Agreement is intended by them to be solely for the benefit of the Parties hereto and that no third parties may rely on any reports, analysis or other material provided by Marsh or shall obtain any direct or indirect benefits from the Agreement, have any claim or be entitled to any remedy under this Agreement or otherwise in any way be regarded as third party beneficiaries under this Agreement.

12. **LIMITATION ON WARRANTIES**

**THIS IS A SERVICES ENGAGEMENT.  MARSH WARRANTS THAT IT WILL PERFORM SERVICES HEREUNDER IN GOOD FAITH CONSISTENT WITH THE STANDARD OF CARE OF SIMILAR CONSULTANTS PERFORMING SIMILAR SERVICES.  MARSH DISCLAIMS ALL OTHER WARRANTIES, EITHER EXPRESS OR IMPLIED.**

**ALL CONSULTING ACTIVITIES PERFORMED BY MARSH ARE ADVISORY IN NATURE.  ALL REPORTS WILL BE BASED UPON CONDITIONS OBSERVED AND INFORMATION SUPPLIED BY CLIENT. MARSH DOES NOT GUARANTEE OR WARRANT THE SAFETY OF ANY CLIENT'S PROPERTIES OR OPERATIONS OR THAT CLIENT OR ANY SUCH PROPERTIES OR OPERATIONS ARE IN COMPLIANCE WITH FEDERAL, STATE OR LOCAL LAWS, CODES, STATUTES, ORDINANCES, STANDARDS OR RECOMMENDATIONS.**

13. **FORCE MAJEURE**

Neither party shall be in breach of the Agreement if there is a total or partial failure by it in its duties and obligations occasioned by any act of God, fire, act of foreign, federal, state or local government, war, civil commotion, insurrection, embargo, prevention from or hindrance in obtaining any raw materials, energy or other supplies, labor disputes of whatever nature, or any other reason beyond its reasonable control.  In the event of delay in performance due to any such cause, the date of the delivery or time for completion will be extended by a period of time reasonably necessary to overcome the effect of such delay.

14. **BINDING EFFECT**

This Agreement shall be binding upon and shall inure to the benefit of the Parties hereto, their respective successors by merger, sales or consolidation and their permitted assigns.

15. **ASSIGNMENTS**

No party hereto shall assign or transfer this Agreement or any interest in this Agreement without the prior written consent of the other party.  Notwithstanding the foregoing, Marsh may delegate all or a portion of its duties hereunder to affiliates or subcontractors of Marsh, such delegation not to relieve Marsh of its obligations hereunder.

16. **SEVERABILITY**

It is the intent of the Parties that the provisions of this Agreement shall be enforced to the fullest extent permitted by applicable law.   To the extent that the terms set forth in this Agreement or any word, phrase, clause or sentence is found to be illegal or unenforceable for any reason, such word, phrase, clause or sentence shall be modified or deleted in such manner so as to afford the party for whose benefit it was intended the fullest benefit commensurate with making this Agreement, as modified, enforceable, and the balance of this Agreement shall not be affected thereby, the balance being construed as severable and independent.

17. **GOVERNING LAW**

This Agreement shall be governed by the laws of the State of New York, without giving effect to its conflicts of law rules.

18. **VENUE/JURY WAIVER**

The state and federal courts in and for New York shall be the exclusive forum for any litigation arising out of or relating to this Agreement or any alleged breach hereof, and each of the Parties hereby irrevocably consents to the jurisdiction of such courts in connection with any such litigation.   Each party, on behalf of itself and its affiliates, to the fullest extent permitted by law, knowingly, voluntarily, and intentionally waives its right to a trial by jury in any action or other legal proceeding arising out of or relating to this Agreement or any services provided by Marsh or its affiliates.  The waiver applies to any action or legal proceeding, whether sounding in contract, tort or otherwise.  Each party, on behalf of itself and its affiliates, also agrees not to include any employee, officer or director of the other party or its affiliates as a party in any such action or proceeding.

18. **ARBITRATION**

Each of the Parties, on behalf of itself and its affiliates, agrees that any dispute, claim or controversy arising out of or relating to this Agreement or the provision of services by Marsh or its affiliates shall be resolved by

binding arbitration pursuant to the Commercial Arbitration Rules of the American Arbitration Association then in effect.  The arbitration shall be conducted by a panel of three arbitrators, with each party selecting one arbitrator and the two arbitrators selecting the third arbitrator.  If the two arbitrators are unable to agree upon the third arbitrator, the third arbitrator shall be selected by the American Arbitration Association.  Each of the arbitrators shall have at least fifteen years of risk consulting experience.  Judgment upon any award rendered by the arbitrators may be entered in any court having jurisdiction.

### 19.    NOTICES

Notices required or permitted by this Agreement shall be served by certified mail, return receipt requested, or reputable overnight courier services to a party at the following address:

**For Marsh:**

**Richard Kennedy**
Managing Director – Marsh Risk Consulting
MARSH USA, Inc.
445 South Street
Morristown, NJ  07962

**For Client:**

<<Name of Client>>
East Penn Manufacturing
Deka Road
Lyon Station, PA  19536

Such addresses may be changed by notice given in accordance with this Agreement.  Notices given hereunder shall be effective upon receipt.

### 20.    MISCELLANEOUS

This Agreement represents the entire and integrated agreement between Client and Marsh and supersedes all prior negotiations, representations or agreements, either written or oral, relating to the subject matter hereof.  This Agreement may be amended only by written instrument signed by each of the Parties hereto.  All waivers must be in writing.  No waiver by any party hereto, whether express or implied, of its rights under any provisions of this Agreement shall constitute a waiver of such party's rights under such provision at any other time or a waiver of such party's rights under any other provision of this Agreement.  No failure by any party hereto to take action with respect to any breach of this Agreement or default by another party hereto shall constitute a waiver of the first party's right to enforce any provision of this Agreement or to take action with respect to such breach or default or any subsequent breach or default by such other party.  The parties are of equal commercial sophistication and have negotiated this Agreement at arms' length.  Each party is entering into this Agreement voluntarily, has read and understands all its provisions and has had the opportunity to seek and to obtain the advice of counsel on its rights and responsibilities under, and the terms and conditions of, this Agreement.

MARSH-EVANOFF-0000016

| | |
|---|---|
| **From:** | Perrette, Therese |
| **To:** | Ruiz, Stephanie |
| **Subject:** | FW: Update to our SOW Client Service Agreement |
| **Date:** | Wednesday, January 23, 2019 10:42:57 AM |

SOW add on for East Penn!!!

Therese Perrette CIH, CSP

Senior Vice President

MARSH RISK CONSULTING

Workforce Strategies Group

445 South St. Morristown, NJ 07960

o. 973.401.5218 | c. 973.723.4328

Therese.Perrette@marsh.com www.marsh.com

*This document and any recommendations, analysis, or advice provided by Marsh (collectively, the "Marsh Analysis") are intended solely for the entity identified as the recipient herein ("you"). This document contains proprietary, confidential information of Marsh and may not be shared with any third party, including other insurance producers, without Marsh's prior written consent. Any statements concerning actuarial, tax, accounting, or legal matters are based solely on our experience as insurance brokers and risk consultants and are not to be relied upon as actuarial, accounting, tax, or legal advice, for which you should consult your own professional advisors. Any modeling, analytics, or projections are subject to inherent uncertainty, and the Marsh Analysis could be materially affected if any underlying assumptions, conditions, information, or factors are inaccurate or incomplete or should change. The information contained herein is based on sources we believe reliable, but we make no representation or warranty as to its accuracy. Except as may be set forth in an agreement between you and Marsh, Marsh shall have no obligation to update the Marsh Analysis and shall have no liability to you or any other party with regard to the Marsh Analysis or to any services provided by a third party to you or Marsh. Marsh makes no representation or warranty concerning the application of policy wordings or the financial condition or solvency of insurers or reinsurers. Marsh makes no assurances regarding the availability, cost, or terms of insurance coverage.*

**From:** Troy Greiss [mailto:trgreiss@dekabatteries.com]
**Sent:** Wednesday, January 23, 2019 11:40 AM
**To:** Perrette, Therese
**Subject:** RE: Update to our SOW Client Service Agreement

confirmed

Troy A. Greiss MS, CIH, CSP

Vice President

EHS & Regulatory Affairs

East Penn Manufacturing Company, Inc.

Deka Road

Lyon Station, PA 19536

Phone: (610) 683-6361, ext. 2387

Fax: (610) 6820233

**From:** Perrette, Therese [mailto:Therese.Perrette@marsh.com]
**Sent:** Wednesday, January 23, 2019 10:44 AM
**To:** trgreiss@dekabatteries.com
**Cc:** Kennedy, Richard F
**Subject:** RE: Update to our SOW Client Service Agreement

MARSH-EVANOFF-0000017

***WARNING: This email originated from outside East Penn. DO NOT click links or open attachments unless you recognize the sender and know the content is safe.***

Hi Troy
Just following up – we need your confirmation on the email below to add to our SOW.
Please let me know if you have any questions.
Thank you
Therese

Therese Perrette CIH, CSP
Senior Vice President
MARSH RISK CONSULTING
Workforce Strategies Group

445 South St. Morristown, NJ 07960
o. 973.401.5218 | c. 973.723.4328
Therese.Perrette@marsh.com www.marsh.com

*This document and any recommendations, analysis, or advice provided by Marsh (collectively, the "Marsh Analysis") are intended solely for the entity identified as the recipient herein ("you"). This document contains proprietary, confidential information of Marsh and may not be shared with any third party, including other insurance producers, without Marsh's prior written consent. Any statements concerning actuarial, tax, accounting, or legal matters are based solely on our experience as insurance brokers and risk consultants and are not to be relied upon as actuarial, accounting, tax, or legal advice, for which you should consult your own professional advisors. Any modeling, analytics, or projections are subject to inherent uncertainty, and the Marsh Analysis could be materially affected if any underlying assumptions, conditions, information, or factors are inaccurate or incomplete or should change. The information contained herein is based on sources we believe reliable, but we make no representation or warranty as to its accuracy. Except as may be set forth in an agreement between you and Marsh, Marsh shall have no obligation to update the Marsh Analysis and shall have no liability to you or any other party with regard to the Marsh Analysis or to any services provided by a third party to you or Marsh. Marsh makes no representation or warranty concerning the application of policy wordings or the financial condition or solvency of insurers or reinsurers. Marsh makes no assurances regarding the availability, cost, or terms of insurance coverage.*

---

**From:** Perrette, Therese
**Sent:** Friday, January 11, 2019 10:33 AM
**To:** 'trgreiss@dekabatteries.com'
**Cc:** Kennedy, Richard F
**Subject:** Update to our SOW Client Service Agreement

Hi Troy
When we wrote the SOW for East Penn we used the 2018 template. We have an updated version now for 2019 which adds some additional language. As such I am required to provide this information in an email for your reply. I apologize for the extra email, please review and let me now if there are any questions. Here is the addition:

*In order to keep pace with an ever-changing business, tax, and regulatory environment, many firms, including Marsh & McLennan Companies (MMC), are updating their service agreements with clients. Marsh's updates are intended to formalize the role that Marsh's non-US affiliates perform on many client accounts today. The language explains that Marsh non-US affiliates may provide services on US-based client accounts.*
*While this doesn't impact the way we service your business, we believe it's important to formally document this.*

*Since our agreement is already active, I am writing to confirm our mutual understanding (i) that Marsh USA Inc. entered into the following agreement[s]: beginning January 9, 2019, with East Penn Manufacturing on behalf of itself and as agent for each of its non-US affiliates that provides services under such agreement[s]; and (ii) that Marsh USA Inc. will bill and collect on behalf of its non-US affiliates amounts payable to them pursuant to such agreement[s] and remit to them any amounts collected on their behalf. For a list of Marsh's non-US affiliates, please visit [https://www.marsh.com/us/about-marsh/leading-the-way-in-transparency.html](https://www.marsh.com/us/about-marsh/leading-the-way-in-transparency.html).*

Please confirm by reply email that the above reflects our understanding.

Thank you
Therese


Therese Perrette CIH, CSP
Senior Vice President
MARSH RISK CONSULTING
Workforce Strategies Group

445 South St. Morristown, NJ 07960
o. 973.401.5218 | c. 973.723.4328
[Therese.Perrette@marsh.com](mailto:Therese.Perrette@marsh.com) [www.marsh.com](http://www.marsh.com)

*This document and any recommendations, analysis, or advice provided by Marsh (collectively, the "Marsh Analysis") are intended solely for the entity identified as the recipient herein ("you"). This document contains proprietary, confidential information of Marsh and may not be shared with any third party, including other insurance producers, without Marsh's prior written consent. Any statements concerning actuarial, tax, accounting, or legal matters are based solely on our experience as insurance brokers and risk consultants and are not to be relied upon as actuarial, accounting, tax, or legal advice, for which you should consult your own professional advisors. Any modeling, analytics, or projections are subject to inherent uncertainty, and the Marsh Analysis could be materially affected if any underlying assumptions, conditions, information, or factors are inaccurate or incomplete or should change. The information contained herein is based on sources we believe reliable, but we make no representation or warranty as to its accuracy. Except as may be set forth in an agreement between you and Marsh, Marsh shall have no obligation to update the Marsh Analysis and shall have no liability to you or any other party with regard to the Marsh Analysis or to any services provided by a third party to you or Marsh. Marsh makes no representation or warranty concerning the application of policy wordings or the financial condition or solvency of insurers or reinsurers. Marsh makes no assurances regarding the availability, cost, or terms of insurance coverage.*

---

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

This e-mail, including any attachments that accompany it, may contain
information that is confidential or privileged. This e-mail is
intended solely for the use of the individual(s) to whom it was intended to be
addressed. If you have received this e-mail and are not an intended recipient,
any disclosure, distribution, copying or other use or
retention of this email or information contained within it are prohibited.
If you have received this email in error, please immediately
reply to the sender via e-mail and also permanently
delete all copies of the original message together with any of its attachments

MARSH-EVANOFF-0000019

from your computer or device.
*********************************************************************

This e-mail and any attachments may contain privileged and confidential information and are solely for the use of the sender's intended recipient(s). If you received this e-mail in error, you should not disseminate, distribute or copy this e-mail. Please notify the sender by reply e-mail and delete all copies and attachments. Thank you.

MARSH-EVANOFF-0000020