# Exhibit 1

## Pa. SSJI (Civ) 7.180

**Pennsylvania Suggested Standard Civil Jury Instructions  >  CHAPTER 7 DAMAGES**

# 7.180 * WRONGFUL DEATH AND SURVIVAL ACTIONS  SN

If you find that   *[name(s) of plaintiff(s)]* proved   *[name(s) of defendant(s)]*'s [negligence] [intentional wrongful conduct] factually caused   *[name of decedent]*'s death, you must award   *[name(s) of plaintiff(s)]* [money damages] [compensation].

*[Name(s) of plaintiff(s)]* claim(s) several types of damages.

This instruction explains two of them.

First,   *[name(s) of plaintiff(s)]* seek(s) damages to compensate   *[name of decedent]*'s survivors, [his] [her] [their] [spouse] [child(ren)] [parent(s)], for the losses they sustained as a result of   *[name of decedent]*'s death.

Second,   *[name(s) of plaintiff(s)]* seek(s) compensation for the harm   *[name(s) of defendant(s)]*'s [negligence] [intentional wrongful conduct] caused   *[name of decedent]*.  These damages are for damages to   *[name of decedent]* between the time of the injury and [his] [her] [their] death, as well as for the loss of income from the time of [his] [her] [their] death until [his] [her] [their] natural life expectancy. These damages arise from   *[name of decedent]*'s right under the law to receive money damages as a result of *[name(s) of defendant(s)]*'s [negligence] [intentional wrongful conduct].

A. Under the first claim, concerning the [child(ren)] [spouse] [parent(s)]'[s] losses as a result of [his] [her] [their] [parent] [spouse] [child]'s death:

  1.   *[Name(s) of plaintiff(s)]* [is] [are] entitled to be compensated for all hospital, medical, funeral, burial, and estate administration expenses. [It has been stipulated that these expenses total   *[insert amount]*.]

  2.   *[Name(s) of plaintiff(s)]* [is] [are] entitled to be compensated for the amount of money   *[name of decedent]* would have spent to support [his] [her] [their] [spouse] [child(ren)] [parent(s)] from the date of [his] [her] [their] death until the end of [his] [her] [their] life expectancy.

   "Support" includes the cost of food, clothing, shelter, transportation, medical expenses, gifts, insurance, education, entertainment, and recreation.

   *[If the decedent has a surviving spouse or parents:]*

  3.   *[Name(s) of plaintiff(s)]* [is] [are] entitled to be compensated the amount of money that fairly and adequately compensates the [spouse] [parent(s)] for losing   *[name of decedent]*'s companionship, cooperation, affection, comfort, services, [and] assistance, [and sexual relationship], and for the emotional and psychological loss suffered as a result of the death.

   *[If the decedent has surviving children:]*

---

SN   * Renumbered (former 6.19 and 7.220).

**4.** *[Name(s) of plaintiff(s)]* **[is] [are] entitled to be compensated the amount of money that fairly and adequately compensates the child(ren) for losing [his] [her] [their] deceased parent's guidance, teaching, training, advice, education, care, comfort, services, emotional support, and moral upbringing, and for the emotional and psychological loss suffered as a result of the death.**

**B. Under the second claim, concerning the decedent's damages:**

**1.** *[Name(s) of plaintiff(s)]* **[is] [are] entitled to be compensated the gross income, plus the value of fringe benefits,** *[name of decedent]* **would have earned between the date of injury and the date of [his] [her] [their] death, and**

**2.** *[Name(s) of plaintiff(s)]* **[is] [are] entitled to be compensated** *[name of decedent]***'s gross income, plus the value of benefits, [he] [she] [they] would have earned between the date of [his] [her] [their] death until the end of [his] [her] [their] natural life expectancy.**

**I will explain later how to determine life expectancy.**

**From this amount you must deduct the following:**

**a. the amount** *[name of decedent]* **would have spent on [his] [her] [their] basic living expenses, such as food, clothing, and shelter;**

**b. the amount you award (pursuant to my previous instruction) to compensate for money** *[name of decedent]* **would have spent to support [his] [her] [their] family from the time when the harm occurred until [his] [her] [their] life expectancy.**

**3.** *[Name(s) of plaintiff(s)]* **[is] [are] entitled to be compensated for all mental and physical pain, suffering, inconvenience, [and] loss of life's pleasures[, and disfigurement] that** *[name of decedent]* **suffered from the date of injury until [his] [her] [their] death.**

**SUBCOMMITTEE NOTE**

The measure of damages to be awarded in death cases has been subject to much inadvertent confusion over the years, in part because the statutes providing for the survival of causes of action after death do not speak directly to the damage issue. For this reason, the courts have been called upon to determine the elements of recovery, with sometimes inconsistent results. The Pennsylvania Supreme Court authored an opinion that did much to eliminate the major inconsistency between actions brought before death actually occurs and those brought after death. *Incollingo v. Ewing*, 282 A.2d 206, 225 (Pa. 1971). But because each death action involves a particular situation (that is, married husband, child, supporting son, wife, and/or mother), the appropriate elements of damages must depend on each case. Indeed, it is safe to say that the only element of damage common to all death cases is the amount of the funeral bill.

Under Pennsylvania law, recoverable damages are measured under two distinct provisions, the Wrongful Death Act and the Survival Act. Generally, the Wrongful Death Act, *42 Pa.C.S. § 8301*, provides for recovery of the administrator's expenses and the losses to the immediate family. The Survival Act, *42 Pa.C.S. § 8302*, provides for the other losses occasioned by the death of the decedent.

Under the Wrongful Death Act, the following elements, depending upon the factual situation, are recoverable:

1. *Administrator's expenses*: The Wrongful Death Act, as amended in 1937, specifically provides that the "personal representative [shall be entitled] to recover damages for reasonable hospital, nursing, medical, funeral expenses and expenses of administration necessitated by reason of injuries causing death." 12 P.S. § 1602 (now

42 Pa.C.S. § 8301). These items would be recoverable even if the decedent left no surviving spouse, children, or parents.

Although recovery for hospital, nursing, and medical expenses are specifically provided for under the Wrongful Death Act, they can also be recovered under the Survival Act, Skoda v. West Penn Power Co., 191 A.2d 822 (Pa. 1963), providing there is no duplication of damages. However, an estate may not recover funeral expenses under a survival action claim since the decedent could not have brought an action for these expenses at the time of their death. McClinton v. White, 427 A.2d 218 (Pa.Super. 1981), vac., 444 A.2d 85 (Pa. 1982). With respect to medical expenses, Moorhead v. Crozer Chester Medical Center, 765 A.2d 786 (Pa. 2001), held that a patient's recovery for past medical services was defined by the amount actually paid and accepted as full payment for services rendered by the hospital, rather than the fair and reasonable value of the medical services. This was in the context of a patient who fell at the hospital and the same hospital supplied the medical services. The court said its decision did not affect the Collateral Source Rule.

2. *Support*: If the decedent had dependent "husband, widow, children, or parents" (no other relatives being included in the Wrongful Death Act), they are entitled to receive compensation for the monetary support that the decedent would have provided during their lifetime. In the case of the death of a minor, ordinarily the minor's net earnings until majority would be considered as "support" recoverable by the parents. See, e.g., Alleva v. Porter, 134 A.2d 501 (Pa.Super. 1957). In certain circumstances, however, the child may continue to support the parents after majority (or be expected to support the parents after their retirement) just as the child may continue to receive support from the parents after they reach majority. See, e.g., Gaydos v. Domabyl, 152 A. 549 (Pa. 1930). Whether such is the case must depend on the evidence, and thus the period of support is properly a jury issue.

3. *Services*: Services performed for the family have pecuniary value, for which the survivors may seek recovery, regardless of the status of the deceased. As a general rule, pecuniary loss embraces the amount of the deceased's probable earnings that would have gone for the benefit of the children, parent, husband, or wife and is broad enough to include the value of probable services that would, in the ordinary course of events, be of benefit to one within this class. Gaydos v. Domabyl, 152 A. at 552; accord, e.g., Haddigan v. Harkins, 441 F.2d 844 (3d Cir. 1970); McKee v. Jamestown Baking Co., 101 F.Supp. 794, 796 (W.D. Pa. 1952), aff'd, 198 F.2d 551 (3d Cir. 1952).

There does not seem to be any question that the plaintiff--as representative of the wrongful death beneficiaries--may recover the value of contributions, that is, monies expended for such items as shelter, food, clothing, medical care, education, entertainment, gifts, and the like that the decedent would have made to the members of their family from the time of death until the time of trial and from the time of trial to the end of their life expectancy. See Rettger v. UPMC Shadyside, 991 A.2d 915, 932 (Pa.Super. 2010).

The services not only include day-to-day activity, but also "companionship, comfort, society, guidance, solace, and protection." Spangler v. Helm's New York-Pittsburgh Motor Express, 153 A.2d 490, 492 (Pa. 1959); accord, Filer v. Filer, 152 A. 567, 568-69 (Pa. 1930) ("frugality, industry, usefulness, attention, and tender solicitude of a wife and the mother of children, surely make[s] her services greater than those of an ordinary servant"); Rittenhouse v. Hanks, 777 A.2d 1113, 1119-20 (Pa.Super. 2001) (finding no error in the trial court's instruction that listed as recoverable damages "services, society and comfort . . . includ[ing] . . . work around the home"); Hatwood v. Hospital of the Univ. of Pennsylvania, 55 A.3d 1229 (Pa.Super. 2012) (upholding jury instruction that family is entitled to be compensated for "the monetary value of the companionship, society, and comfort that [the baby] would have given to his family had he lived; including such elements as work around the home, provision of physical comfort and services, and provision of society and comfort"). See Hatwood v. Hospital of the Univ. of Pennsylvania, 55 A.3d 1229 (Pa.Super. 2012). The trial court properly instructed the jury that in addition to monetary contributions that the decedent would have contributed to his family, the plaintiffs are entitled to be awarded a sum of money for the companionship, society, and comfort that Hyseem Jacobs would have provided to his family had he lived. Those elements include work around the home, provision of physical comfort and services, as well as society and comfort. The Superior Court in *Hatwood* found the instruction proper and cited, among other cases, Spangler v. Helm's New York-Pittsburgh Motor Express, 153 A.2d 490 (Pa. 1959). Hatwood, 55 A.3d at

*1236*. Companionship, noted *Spangler*, includes comfort, society, guidance, solace, and protection. This is part of "family happiness." Id.

In arriving at damages for loss of society and companionship, Pennsylvania does not require proof to a mathematical certainty. Such damages may be provided for a newborn as well as a five-year-old child. It is in this case law, discussing loss of services, that one finds a blurring between the economic and the emotional aspect of damages available in a wrongful death action. In the case of a deceased spouse, the "loss of services" includes damages for the value of the society and comfort the widow or widower would have received, or "loss of consortium," albeit as part of the wrongful death action and not as a separate action for loss of consortium. *Walton v. AVCO Corp., 557 A.2d 372, 388 (Pa.Super. 1989)*, aff'd in part, rev'd in part on other grounds, *610 A.2d 454 (Pa. 1992)*.

The court in *Rettger v. UPMC Shadyside, 991 A.2d 915, 932 (Pa.Super. 2010)*, cited *Machado v. Kunkel, 804 A.2d 1238 (Pa.Super. 2002)*, for the proposition that a family has the right to recover the value of services that include society and comfort. In discussing damages recoverable, the *Rettger* court stated, "Rather, the term clearly extends to the profound emotional and psychological loss suffered upon the death of a parent *or* a child where the evidence established the negligence of another as its cause." *Rettger, 991 A.2d at 933* (emphasis added). *Rettger* involved a parent's claim for loss of their son and demonstrated appreciation for the fact that the "jury recognized the depth of the anguish suffered by Rettger's parents, awarding them a sum which, while substantial, could not compensate them for the loss of a son they had nurtured to adulthood." Id. Specific testimony is recited in the opinion.

4. *Guidance and tutelage to children*: A child is entitled to compensation "for the value of the parent's services in the superintendence, attention to, and care of his family, and the education of his children of which they have been deprived by his death." *Gaydos v. Domabyl, 152 A. at 552*. The death of either parent deprives the child of guidance and tutelage. *Thomas v. Conemaugh Black Lick R.R., 133 F.Supp. 533, 543 (W.D. Pa. 1955)*, aff'd, *234 F.2d 429 (3d Cir. 1956)* (loss to children from death of father "must include compensation for the care, training, advice, guidance, education").

Under the Survival Act, the following elements, depending upon the factual situation, are recoverable by the decedent's estate:

1. *Loss of earnings until death*: Because the decedent continues to incur "cost of maintenance" until the actual time of their demise, the decedent's estate is entitled to recover the *gross* amount of their lost prospective earnings between injury and death, without deduction for cost of maintenance. E.g., *Incollingo v. Ewing, 282 A.2d 206, 229 (Pa. 1971)*.

2. *Loss of net earnings*: The concept of "net earnings" has often been confused with loss of "savings" or loss of "accumulations." Net earnings, quite simply, are gross earnings (including fringe benefits) less the cost of maintenance. Savings, on the other hand, represent what is left of an individual's pecuniary worth at the time of their death. The two are not the same, since many expenditures made during a lifetime are not for the purpose of personal maintenance (for example, taxes, gifts, contributions, or extravagant expenditures such as gambling, expensive cars, or extensive travel).

The test of the loss to the estate is "net earnings" lost. *Murray v. Philadelphia Transp. Co., 58 A.2d 323 (Pa. 1948)*. The test of "future accumulations" was, in *Murray*, specifically rejected, *58 A.2d at 324*. In holding that the *Murray* rule applied to all survival actions, the Pennsylvania Supreme Court stated in *Incollingo*, above, at 229, that: "as applied to survival actions the economic loss to a decedent's estate should be measured by decedent's total estimated future earning power less his estimated cost of personal maintenance."

3. *Loss of retirement and Social Security income*: (This item is also to be considered in wrongful death damages.) Income from Social Security should be considered in the same manner as actual earnings for the purpose of providing some measure of a loss under either wrongful death or survival. Since retirement benefits represent past earnings put aside for the future and from which past cost of maintenance has already been deducted, it would be

improper to allow a "double" deduction by again deducting costs of maintenance during the retirement period. This would also include other forms of retirement benefits, that is, health insurance, death benefits, and other items known as fringe benefits. *Thompson v. City of Philadelphia, 294 A.2d 826 (Pa.Super. 1972)*, allocatur refused.

Under the rationale of *Murray* and *Incollingo*, above, an appropriate deduction must be made for the "probable cost of maintenance" that the decedent would have been required to spend on themself had they not been killed. The *Murray* court speaks of maintenance costs in terms of "living expenses," *58 A.2d at 325*, and cites with approval an out-of-state case defining maintenance as "the necessary and economical living expenses of the deceased had he not been killed." Id. While no Pennsylvania death case gives precise delimitation of the expenses includable within this definition, it would seem clear that the expenses include only the modest and reasonable costs of living. In *McClinton v. White, 444 A.2d 85 (Pa. 1982)*, the court admonished the trial court's use of "subsistence" and "to sustain . . . life" qualifying language for "personal maintenance" as "conveying the impression that the deduction encompasses only those expenditures essential to the barest survival. . . . [A] deduction limited to expenditures for the barest survival would, in reality, approach no deduction at all." The court wrote, "We do not disagree with the Superior Court's . . . analysis of 'cost maintenance.' . . . Under the . . . analysis, cost of maintenance is: 'that *necessary* and *economical* sum which a decedent would be expected to spend, based upon his station in life, for food, clothing, shelter, medical attention and some recreation.' " (quoting Robert Bernstein, *Damages in Personal Injury and Death Cases in Pennsylvania (A Supplement)*, 26 Pa. Bar. Ass'n Q. 26 (1954)). See *Winthrop Co. v. Clinton, 46 A. 435, 436-37 (Pa. 1900)* ("maintenance" means "supply of the necessaries of life; sustenance; subsistence; livelihood; support," the "things which are essential to his personal, physical subsistence"); compare *Reardon v. California Tanker Co., 260 F.2d 369, 371 (2d Cir. 1958)* ("[m]aintenance means keep, that is food and lodging"); *Morris v. American Liab. & Sur. Co., 185 A. 201, 202 (Pa. 1936)* ("to preserve or keep in an existing state or condition").

A jury's award of zero damages in a survival action bears no reasonable relationship to loss actually sustained under the facts in *Rettger v. UPMC Shadyside, 991 A.2d 915, 934 (Pa.Super. 2010)*. In *Rettger*, the court recited the testimony with respect to the plaintiff's successful career and that UPMC failed to controvert that, had Michael Rettger been properly treated, he would have survived and been able to continue in his profession. UPMC failed to undermine the estate's documented proof of the decedent's ongoing compensation. The hospital did not challenge the decedent's worklife expectancy. The evidence, coupled with extensive testimony concerning Mr. Rettger's prospects for advancement in his profession, enabled the appellate court to concur in the trial court's assessment that the jury's award of zero damages bore no reasonable relationship to the loss actually sustained. *Id. at 935*.

While the actual cost of maintenance is necessarily a jury question depending on the evidence and their collective common sense, certain costs a decedent would have borne are clearly not deductible from net earnings. "[I]ncome tax consequences should not be considered by the jury" and "should be mentioned neither in argument nor in jury instructions." *Gradel v. Inouye M.D., 421 A.2d 674, 680 (Pa. 1980)*; affirming *Girard Trust Corn Exch. Bank v. Philadelphia Transp. Co., 190 A.2d 293, 298 (Pa. 1963)*. Monies given to others, such as friends, family, or church are not within a decedent's cost of maintenance, since it is only their "own living expenses" that are deductible. E.g., *Incollingo v. Ewing*, above; *Murray v. Philadelphia Transportation Co.*, above, at 325. Retirement and Social Security income is admissible to establish loss in a wrongful death or survival action. *Thompson v. Philadelphia, 294 A.2d 826 (Pa.Super. 1972)*.

To avoid double recovery, that portion of the earnings that would have been contributed to the family, and thus recoverable under the Wrongful Death Act, must also be deducted from gross earnings in arriving at "net earnings." However, if the decedent was a minor or an adult without dependent spouse, children, or parents, there would be no recovery for loss of contributions (beyond those given by a minor to their parents and family) and, therefore, no deduction from net earnings should be made. Although it may well be that an unmarried decedent may have married had they lived, without any dependent survivors, the decedent's estate is entitled to the full amount of their prospective net earnings.

4.  *Pain and suffering*: If the decedent was not killed instantly and remained conscious, recovery for the decedent's pain, suffering, and inconvenience endured prior to their death is allowed.

Michael Luongo

The court in *Nye v. Commonwealth, Department of Transportation, 480 A.2d 318 (Pa.Super. 1984)*, has indicated that pain and suffering does not include pre-impact fright. The *Nye* court stated:

> Appellant argues, however, that the jury could properly award damages for pain and suffering if it believed Karen Nye was aware of her impending death as she struggled to bring her car under control. Thus, appellant contends that he may recover for Karen's "pre-impact fright." There is no precedent in Pennsylvania for such an award. "The rule in Pennsylvania is that in survival actions the measure of damages is the decedent's pain and suffering and loss of gross earning power *from the date of injury* until death . . ." *Slaseman v. Myers, supra, 309 Pa. Super. at 544-45, 455 A.2d at 1217* (emphasis added). Thus, we have always limited recovery to damages for pain and suffering and emotional distress occurring after the time of injury.

*Nye, 480 A.2d at 321* (emphasis in original).

This assertion runs counter to the "bystander" cases handed down by the Pennsylvania Supreme Court. Prior to 1970, Pennsylvania followed the "impact" rule, which precluded a plaintiff's recovery for emotional distress unless some physical impact, however trivial, had resulted from the defendant's negligence. If there were even the slightest impact, the plaintiff could recover both for the mental distress caused by the impact and for their fright:

> [W]here, as here, a plaintiff sustains bodily injuries, even though trivial or minor in character, which are accompanied by *fright* or mental suffering directly traceable to *the peril in which the defendant's negligence placed the plaintiff*, then mental suffering is a legitimate element of damages.

*Potere v. Philadelphia, 112 A.2d 100, 104 (Pa. 1955)* (emphasis added). The "fright" stemming from "the peril in which the defendant's negligence placed the plaintiff " obviously refers to the pre-impact fear of bodily harm. Certainly, the court did not limit recovery for mental suffering to the post-impact period.

When, in 1970, the court abandoned the "impact" rule, it expressly recognized a plaintiff's right to recover for pre-impact fright:

> We today choose to abandon the requirement of a physical impact as a precondition to recovery for damages proximately caused by the tort in only those cases like the one before us where the plaintiff was in personal danger of physical impact because of *the direction of a negligent force against him and where plaintiff actually did fear the physical impact*.

*Niederman v. Brodsky, 261 A.2d 84, 90 (Pa. 1970)* (emphasis added).

See, e.g., *Incollingo v. Ewing*, above. These damages include not only physical pain, but also the fright and mental suffering attributable to the peril leading to the decedent's death. *In re Consolidated Coal Co., 296 F.Supp. 837 (W.D. Pa. 1968)*.

Loss of life's pleasures is compensable prior to death and therefore has been added to paragraph 4 under survival actions. *Willinger v. Mercy Catholic Med. Ctr., 393 A.2d 1188, 1191 (Pa. 1978)*. In *Wagner v. York Hospital, 608 A.2d 496 (Pa.Super. 1992)*, an instruction regarding the loss of life's pleasures was ruled to be proper even though the medical malpractice victim was in a persistent vegetative state, because no one could definitively say what he was able to perceive.

In *Williams v. Southeastern Pennsylvania Transportation Authority, 741 A.2d 848 (Pa.Cmwlth. 1999)*, the court found that in determining whether a jury could award compensation for pain and suffering, the correct focus was not whether the decedent was conscious before he died. Instead, the question for the jury was whether the decedent

was conscious of pain, even though his condition rendered him incapable of communicating that pain to others. *Id. at 859*.

**Wrongful Death and Survival under the MCARE Act**:

Damages for future lost earnings should not be reduced by the cost of maintenance in an action governed by the MCARE Act, which specifies damages for future lost earnings as follows:

> Future damages for loss of earnings or earning capacity in a medical professional liability action shall be reduced to present value based upon the return that the claimant can earn on a reasonably secure fixed income investment. These damages shall be presented with competent evidence of the effect of productivity and inflation over time. The trier of fact shall determine the applicable discount rate based upon competent evidence.

*40 P.S. § 1303.510*.

Case law supports the proposition that the specific statutory remedy in the MCARE Act, *40 P.S. § 1303.510*, prevails to the exclusion of the general common-law remedy for damages brought under the Wrongful Death and Survival Acts, *42 Pa.C.S. §§ 8301 and 8302*, respectively. Where the legislature expressly provides a comprehensive legislative scheme, these provisions supersede the prior common-law principles. *Sternlicht v. Sternlicht, 876 A.2d 904, 912 (Pa. 2005)*. In *Sternlicht*, the Supreme Court held that the Pennsylvania Uniform Transfers to Minors Act (PUTMA), *20 Pa.C.S. § 5301-5321*, "superseded the common law requirement that donative intent must exist in order to have a valid *inter vivos* gift under PUTMA, therefore rendering the intent of the donor irrelevant to the validity of a gift made pursuant thereto." *Sternlicht, 876 A.2d at 905*. "Specifically, the court found that, contrary to the common law, PUTMA does not contain a requirement of donative intent before a gift made pursuant to PUTMA becomes the irrevocable property of the donee-minor, in accordance with the specific language of the statute." *Sternlicht, 876 A.2d at 907*. The Pennsylvania Supreme Court considered "whether the common law can trump statutory law" and decided that under the circumstances of that case, "clearly, it cannot." *Sternlicht, 876 A.2d at 912*.

The MCARE Act may conflict with the Wrongful Death and Survival Acts, as interpreted by common law, because the MCARE Act requires a reduction to present value and the common law clearly rejects this method of calculating lost future earnings and instead adopts the total offset method. *Kaczkowski v. Bolubasz, 421 A.2d 1027, 1039-40 (Pa. 1980)* (establishing the common-law calculation of future lost earnings in wrongful death and survival claims, rejecting a reduction to present value but not disturbing the practice of deducting personal maintenance expenses not incurred as a result of the death). Thus, the MCARE Act clearly trumps the Wrongful Death and Survival Acts on the issue of reducing lost future earnings to present value. The court should not both reduce the earnings to present value and deduct for personal maintenance expenses.

**The Effect of the Motor Vehicle Financial Responsibility Law (MVFRL), as Amended, on Damages in Death Cases**

Under the MVFRL, the personal representative of a deceased, eligible claimant is entitled to receive first-party benefits. These include medical expenses up to at least $ 5,000, income loss following the accident and prior to death up to at least $ 5,000 (unless waived), and funeral expenses up to at least $ 1,500. Where additional insurance coverage has been secured, the personal representative is entitled to receive available first-party benefits, which may include medical expenses up to at least $ 100,000, income lost following the accident and prior to death up to at least $ 50,000, funeral expenses up to at least $ 2,500, and accidental death benefits up to at least $ 25,000.

For claims arising under policies issued on or after July 1, 1990, the personal representative of a deceased, eligible claimant is entitled to medical expenses up to at least $ 5,000. Where additional coverage has been secured, the personal representative is entitled to receive available first-party benefits, which may include medical

expenses up to at least $ 1,100,000, lost income up to at least $ 2,500 per month and a maximum of at least $ 50,000, a funeral benefit of at least $ 2,500, and accidental death benefits up to at least $ 25,000.

Income losses after the death of a claimant are not insurable. *Persik v. Nationwide Mutual Ins. Co., 554 A.2d 930, 932 (Pa.Super. 1989)*. Section 1712(2) of the MVFRL states:

> Income loss does not include loss of expected income for any period following the death of an individual or expenses incurred for services performed following the death of an individual.

*75 Pa.C.S. § 1712(2)(ii)*.

An operator or occupant of a recreational vehicle not intended for highway use, motorcycle, motor-driven cycle, motorized pedacycle, or like type vehicle is not an eligible claimant. Any owner of a currently registered motor vehicle who does not have financial responsibility is also ineligible. This includes a claimant who is a named insured on a policy covering another vehicle and whose own uninsured vehicle was not involved in the accident. *DeMichele v. Erie Ins. Exch., 561 A.2d 1271 (Pa.Super. 1989)*. A claimant whose uninsured vehicle was inoperable is also ineligible. *Kresge v. Keystone Ins. Co., 567 A.2d 739 (Pa.Super. 1989)*.

Both the limited and full options provided by Act 1990-6 allow tort recovery where there is a death. For personal representatives claiming under policies issued between October 1, 1984, and June 30, 1990, losses in excess of the minimum required coverage are recoverable in a tort action. Recoverable losses include those compensated by additional insurance or workers' compensation. Where the personal representative is claiming under a policy issued on or after July 1, 1990, tort recovery is abolished to the extent the claimant was covered by any policy of insurance or workers' compensation.

**Statute of Limitations**

The applicable statute of limitations in a wrongful death and survival action is two years, but, with respect to a survival action, the discovery rule does apply. *Holmes v. Lado, 602 A.2d 1389 (Pa.Super. 1992)*.

It has been held that the legislature intended to bar wrongful death claims where the decedent filed a lifetime action, but did not intend such a bar to operate against survival actions. Wrongful death claims deal with damages for the death of an individual caused by another through a wrongful act, neglect, unlawful violence, or negligence. Survival actions entail a different measure of damages. *Walker v. Roney, 595 A.2d 1318 (Pa.Super. 1991)*. Fortunately, this absurd result was remedied by *42 Pa.C.S. § 8301* in 1995, which allows for wrongful death actions to be commenced even if the claim was commenced during the lifetime of the person where no recovery had yet been made.

In *Osborne v. Lewis, 59 A.3d 1109 (Pa.Super. 2012)*, the Superior Court reversed the trial court denial of motion for summary judgment filed by the doctor. The claims against the doctor were barred by the seven-year statute of repose set forth in the MCARE Act, *40 P.S. § 1303.513*. A footnote states that with respect to a survival action, the action must be commenced within two years in the absence of affirmative misrepresentation or fraudulent concealment of the cause of death. *Osborne, 59 A.3d at 1117, n.8*. This raises the question as to whether the statute of limitations for survival actions has been extended to two years after death only in fraudulent concealment situations. Prior case law is clear that the statute of limitations in a survival action could run before the death.

In *Bell v. Willis, 80 A.3d 476 (Pa.Super. 2013)*, the understood rule was recited that in a survival action, the statute of limitations begins to run on the date of the injury, as though the decedent were bringing their own lawsuit. "For survival actions, the cause of action accrues and the two-year statute of limitations begins to run, *at the latest*, at death." *Bell, 80 A.3d at 480* (emphasis added). Therefore, the appellant patient had the right to amend her complaint to include a cause of action under the Survival Act.

Michael Luongo

*Matharu v. Muir*, 86 A.3d 250 (Pa.Super. 2014), was a remand to the Superior Court from the Supreme Court for reconsideration in light of the decision in *Seebold v. Prison Health Services*, 57 A.3d 1232 (Pa. 2012). In *Seebold*, the Supreme Court found that prison workers could not bring a claim against the prison for failure to warn concerning infectious diseases carried by inmates. *Matharu* interpreted 42 Pa.C.S. §§ 8301 and 8302 to require that wrongful death and survival claims be commenced within two years after death unless there is fraudulent misrepresentation or concealment as to the cause of death. The court believed that section 1303.513(d) provided the same statute of limitations that was already applicable to wrongful death and survival claims. Finally, the general statute of repose found in the MCARE Act does not apply to wrongful death and survival actions, under the court's reasoning.

**Effect of a Pre-injury Exculpatory Release/Assumption of the Risk Agreement**

A pre-injury exculpatory release/assumption of the risk agreement is unenforceable as to gross negligence or recklessness. Our Supreme Court so held with respect to recklessness in *Tayar v. Camelback Ski Corp.*, 47 A.3d 1190 (Pa. 2012), and extended that to gross negligence in *Feleccia v. Lackawanna College*, 215 A.3d 3 (Pa. 2019). The court divided evenly on whether such an agreement is enforceable as to simple negligence against non-signatory wrongful death heirs. *Valentino v. Philadelphia Triathlon, LLC*, 209 A.3d 941 (Pa. 2019). Those in support of affirmance would have held that while a spouse has "an independent cause of action" for loss of consortium that the other spouse "could not bargain away," a valid assumption of the risk agreement signed by a decedent during his lifetime "can support a defense asserting that the alleged tortfeasor owed no duty to the decedent" and extinguish the duty of care to the surviving spouse. Those in support of reversal would have held that the waiver was "invalid and unenforceable" as to the heir's wrongful death claim, because a contrary holding would "essentially make the right the General Assembly created for certain heirs through the [Wrongful Death] Act an illusory one."

---

**End of Document**

Michael Luongo