## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| VICTORIA EVANOFF, as Administrator of the ESTATE OF JOHN EVANOFF, DECEASED | : CIVIL ACTION<br>:<br>: No. 5:23-cv-03417 |
| Plaintiff, | : |
| | : |
| vs. | : |
| | : |
| MARSH USA, LLC, | : |
| | : |
| | : |
| Defendant. | : |

### PLAINTIFF'S OMNIBUS RESPONSE TO DEFENDANT'S
### MOTIONS *IN LIMINE* (ECF NOS. 36-41)

Plaintiff, Victoria Evanoff, as Administrator of the Estate of John Evanoff, Deceased, by and through her undersigned counsel, hereby submits this Omnibus Response to Defendant, Marsh USA, LLC's ("Defendant" or "Marsh") Motions *in Limine* (ECF Nos. 36-41).

Dated: April 16, 2024

**ANAPOL WEISS**

*/s/ Sol H. Weiss*
Sol H. Weiss, Esquire (PA I.D. No. 15925)
Gabrielle I. Weiss, Esquire (PA I.D. No. 325890)
One Logan Square
130 N. 18th Street – Suite 1600
Philadelphia, PA 19103
T: (215) 735-1130
F: (215) 875-7701

## TABLE OF CONTENTS

I.     STATEMENT OF PERTINENT FACTS ........................................................... 1

   A.   The March 6, 2021 Smelter Incident ................................................ 1

   B.   Occupational Health and Safety Act ("OSHA") Representatives Investigate the Smelter Incident, Finding Serious Violations of OSHA Regulations .................................. 1

   C.   East Penn Hires Marsh to Perform a Safety Assessment ........................... 2

II.    STATEMENT OF QUESTIONS INVOLVED ................................................. 4

III.   SUMMARY OF ARGUMENT ........................................................................ 5

   A.   Legal Standard ....................................................................... 5

   B.   This Court Should Enter Plaintiff's Proposed Order with Respect to Defendant's Motion *in Limine* to Exclude Evidence of OSHA Investigation, Citation, and Settlement with East Penn (ECF No. 36). ........................ 6

      1.   The OSHA Report is Relevant ........................................... 6

      2.   The Probative Value of the OSHA Report is Not Outweighed by Any Danger of Prejudice, Confusion, or Misleading the Jury ........................... 6

      3.   The OSHA Report Should Not Be Excluded Under Rules 802 and 803 and Should be Admissible Under Rule 807 ........................................... 9

      4.   Plaintiff Has No Objection to Excluding the Settlement Agreement Between East Penn and Marsh Regarding the OSHA Violations ........................ 11

   C.   This Court Should Enter Plaintiff's Proposed Order with Respect to Defendant's Motion *in Limine* to Exclude Evidence of Indemnity by East Penn (ECF No. 37). ........... 11

      1.   East Penn's Indemnity of Marsh Is Admissible to Show Bias ...................... 11

      2.   Plaintiff Does Not Object to Excluding Evidence, Argument, or Reference to the Pennsylvania Workers' Compensation Act ....................... 12

   D.   This Court Should Enter Plaintiff's Proposed Order with Respect to Defendant's Motion *in Limine* to Exclude Evidence of Evidence of Solatium Damages (ECF No. 38). 12

i

**E.    This Court Should Enter Plaintiff's Proposed Order with Respect to Defendant's Motion *in Limine* to Testimony at Trial by Plaintiff's Minor Child, G.E. (ECF No. 39).**. 12

**F.    This Court Should Enter Plaintiff's Proposed Order with Respect to Defendant's Motion *in Limine* to Exclude Evidence of Alleged Pain and Suffering (ECF No. 40).**....... 13

**G.    This Court Should Enter Plaintiff's Proposed Order with Respect to Defendant's Motion *in Limine* to Exclude Any Claim, Award, or Evidence of Punitive Damages (ECF No. 41).** ................................................................................................................... 14

**IV.    CONCLUSION** ........................................................................................... 15

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Beach Aircraft Corp. v. Rainey,* 488 U.S. 153 (1988) ........................................................ 9

*Cominsky v. Donovan,* 846 A.2d 1256 (Pa. Super. Ct. 2004) ...................................... 13

*Daley v. John Wanamaker, Inc.,* 464 A.2d 355 (Pa. Super. Ct. 1983) .......................... 14

*Fisher v. Clark Aiken Matik, Inc.,* No. 3:CV-99-1976, 2005 WL 6182823 (M.D. Pa. Sept. 26, 2005) ...................................................................................................................... 9

*Hilbert v. Roth, 1*49 A.2d 648 (Pa. 1959) .................................................................... 14

*Hines v. Brandon Steel Decks, Inc.,* 754 F.Supp. 199 (M.D. Ga. 2014) ........................ 7

*Keating v. East Whiteland Township*, CIVIL ACTION No. 18-2612, 2019 WL 13280174 (E.D. Pa. Aug. 21, 2019)...................................................................................8, 9, 11

*Masemer v. Delmarva Power & Light Co*., 723 F.Supp. 1019 (D.Del.1989) ................. 9

*Nye v. Com., Dep't of Transp.*, 480 A.2d 318 (Pa. Super. Ct. 1984) ...................... 12, 13

*Ponzini v. Monroe Cnty.,* 3:11-CV-00413, 2016 WL 4494235 (M.D. Pa. Aug. 24, 2016)...……12

*Ross v. Brooks, 1*973 MDA 2015, 2016 WL 7421352 (Pa. Super. Ct. Dec. 22, 2016)…………..14

*Slavin v. Gardner*, 418 A.2d 361 (Pa. Super Ct. 1979) ................................................ 12

*United States v. Smith*, 662 F. App'x 132 (3d Cir. 2016)………………………….9, 11

*United States v. Vega*, 285 F.3d 256 (3d Cir. 2002) .................................................... 9

**Rules**

Federal Rule of Evidence 401 ...............................................................................6, 11

Federal Rule of Evidence 403 ................................................................................... 6

Federal Rule of Evidence 402 ................................................................................... 5

Federal Rule of Evidence 802 ................................................................................... 9

Federal Rule of Evidence 803 ................................................................................... 9

Federal Rule of Evidence 807 ................................................................................. 10

I.   **STATEMENT OF PERTINENT FACTS**

A.   **The March 6, 2021 Smelter Incident**

On December 7, 2020, East Penn Manufacturing Company ("East Penn") hired Decedent, John Evanoff, as a Refinery Attendant in the smelter department at the company's Lyons Station, Pennsylvania facilities ("Lyons Complex"). (Defendants' Statement of Undisputed Material Facts[1] ("Def.'s SMF") ¶ 56). On March 6, 2021, Mr. Evanoff was attempting to load a piece of lead through the lid of a kettle when he stepped onto the lid to manually facilitate the piece of lead through the opening. (Def.'s SMF ¶¶ 57, 58). The kettles, which are used to process and refine lead in the manufacture of batteries, are approximately 8' wide, 6.25 deep, with a 4' opening in the lid for access, and are partially recessed into the floor, such that the lid is approximately 2' above the floor. (Def.'s SMF ¶ 53-54). When facilitating the lead through the opening, Mr. Evanoff fell through the opening of the kettle into molten lead and died inside the smelter (the "Smelter Incident"). (Def.'s SMF ¶ 58).

B.   **Occupational Health and Safety Act ("OSHA") Representatives Investigate the Smelter Incident, Finding Serious Violations of OSHA Regulations**

OSHA dispatched a Certified Safety and Health Officer ("CSHO") the next day, on March 7, 2021. (Plaintiff's Additional Material Facts that Preclude Summary Judgment[2] ("Pl.'s AMF") at ¶ 1). While East Penn claims that there was a policy and procedure in place for loading lead into the smelter and that Mr. Evanoff was trained in these procedures, the CSHO found otherwise. (Pl.'s AMF at ¶ 3).  The CSHO interviewed employees in the smelter department on three separate occasions from all three shifts. (Pl.'s AMF at ¶ 2). The interviews revealed that some employees

---

[1] Plaintiff incorporates by reference the facts in Defendants' Statement of Undisputed Material Facts only with respect to facts that Plaintiff agrees are undisputed in Plaintiff's Responses to Defendants' Undisputed Material Statement of Facts, which was filed with Plaintiff's Opposition to Defendants' Motion for Summary Judgment.
[2] Plaintiff incorporates by reference the Additional Material Facts that Preclude Summary Judgment, which was filed with Plaintiff's Opposition to Defendants' Motion for Summary Judgment.

recalled training on loading lead into the smelter kettles, while other employees did not receive training on this subject. (Pl.'s AMF at ¶ 4). The CHSO also reported an inconsistency in whether employees were specifically instructed not to stand on the kettle hoods, with some employees saying they were given the instructions while others did not receive the instruction. (Pl.'s AMF at ¶ 5). The interviewees also reported that the kettle hoods, which were supposed to be installed over the openings, were often not installed properly. (Pl.'s AMF at ¶ 6).

On August 20, 2021, OSHA cited East Penn for violations of three serious violations of OSHA's regulations. (Pl.'s AMF" at ¶ 7). OSHA proposed two penalties against East Penn in the amount of $20,948.00. (Pl.'s AMF" at ¶ 8). East Penn settled with OSHA, agreeing to pay $15,000 in penalties for the violations of the OSHA regulations identified after Mr. Evanoff's death. (Pl.'s AMF" at ¶ 9).

### C.  **East Penn Hires Marsh to Perform a Safety Assessment**

On October 17, 2018, Troy Greiss ("Greiss"), Vice President of EHS and Regulatory Affairs at East Penn, emailed Steven Hladczuk ("Hladczuk"), Managing Director at Marsh USA, LLC ("Marsh"), regarding East Penn's interest in engaging Marsh to conduct an "accident prevention assessment" at the Lyons Complex. (Def.'s SMF ¶ 16). East Penn's board of directors was concerned about its workplace incident rate and lack of progress related to its OSHA-recordable incident rate. (Pl.'s AMF" at ¶ 10). Specifically, the board hoped Marsh could "identify some plantwide safety opportunities," with a goal to "to reduce incidents through the organization, whether it be mechanical or physical conditions, and to prevent injuries by unsafe acts of persons and to guard known workplace hazards." (Pl.'s AMF" at ¶ 11). East Penn hoped this assessment would evaluate East Penn's existing health and safety program and the program's strengths and weaknesses. (Def.'s SMF ¶ 19).

2

In January 2019, East Penn and Marsh executed a written contract (the "Statement of Work"), which set forth the terms and scope of East Penn's engagement of Marsh to conduct the Gap Assessment. (Def.'s SMF ¶ 23). The Statement of Work embodies the full agreement between East Penn and Marsh, superseding "all prior negotiations, representations or agreements, either written or oral, relating to the subject matter." (Pl.'s AMF at ¶ 16). Any changes to the Statement of Work had to be made via written instrument signed by each party. (Pl.'s AMF at ¶ 17). Marsh was in charge of managing the scope of the project. (Pl.'s AMF at ¶ 18).

The purpose and scope of the Gap Assessment is set forth in the Statement of Work:

East Penn Manufacturing is committed to providing a work environment that ensure and improves the health and safety of all employees. Leadership is interested in continuous risk management improvement and driving toward a "best-in-class" risk management system that leads to attracting and retaining the right type of workforce. **To that end, East Penn Manufacturing seeks an in-depth, outside evaluation of their current loss prevention processes as well as their work culture as it relates to loss prevention and risk management.**

**The objective of Marsh's engagement is to help address East Penn Manufacturing's desire to identify and systemically address identified gaps in its current loss prevention management system, evaluate the effect of those gaps on the organization's loss prevention and risk management culture, and recommend systems to assure that improvements are sustained.**

Marsh understands that East Penn Manufacturing's goal is to determine how well loss management practices are imbedded within the organization's culture. East Penn Manufacturing's loss management culture is the result of the effectiveness of internal systems, and processes, the quality and maintenance of equipment, leadership communication effectiveness, and how people in general interact in their work environments. It is likely that East Penn Manufacturing has multiple cultures – some positive and some negative. **An optimized loss prevention management system that controls variability in the manner in which front line employees perform work each day provides the best opportunity for a meaningful, positive safety culture.**

**Marsh is well-qualified to assist East Penn Manufacturing in their efforts to build a sustainable, best-in-class loss management program.** Marsh has a full-breadth of professional resources to meet East Penn Manufacturing's needs as we currently understand them and to provide technical support as those needs evolve.

(Pl.'s AMF at ¶ 19) (emphasis added). To achieve this purpose and scope, Marsh proposed an approach that centered around assessing the "state of the current Loss Prevention Management System.[3]" (Pl.'s AMF at ¶ 20). Marsh said it would review and analyze key loss prevention functions at East Penn, including "staffing, training and written programs" at the Lyons Complex. (Pl.'s AMF at ¶ 21). Marsh's "proprietary audit tool," the OPS Gap, promised to determine how effectively the program is executed. (Pl.'s AMF at ¶ 28). Marsh said it would "focus on understanding and quantifying the effectiveness of the loss prevention program and processes at East Penn Manufacturing, **evaluating all opportunities for increased safety operational effectiveness and efficiency**." (Pl.'s AMF at ¶ 29) (emphasis added). The Gap Assessment was to be accomplished through three main techniques: 1) site visits; 2) document review; and 3) employee interviews. (Pl.'s AMF at ¶ 30).

## II.   STATEMENT OF QUESTIONS INVOLVED

1. Should this Court enter Plaintiff's proposed order with respect to Defendant's Motion *in Limine* to Exclude Evidence, Testimony, and Argument Regarding the Occupational Health and Safety Administration's ("OSHA") Investigation, Citation of, and

---

[3] A "loss prevention management system" is a term of art. According to ISO 45001 a worldwide federation of national standards bodies, an occupational health and safety management system, otherwise referred to as a loss prevention management system, is a "management system or part of a management system used to achieve the OH&S policy." (Pl.'s AMF at ¶ 22). An OH&S policy is a "policy related to work-related injury and ill health to workers and to provide safe and healthy workplaces." (Pl.'s AMF at ¶ 23). Injury and ill health is defined as "adverse effect on the physical, mental or cognitive condition of a person." (Pl.'s AMF at ¶ 24). A hazard is a "source with the potential to cause injury and ill health." (Pl.'s AMF at ¶ 25). According to ISO 45001, an OH&S policy should include the following:

    a) **a commitment to provide safe and healthy working conditions for the prevention of work-related injury and ill health** and is appropriate to the purpose, size and context of the organization and to the specific nature of its OH&S risks and OH&S opportunities;
    b) provides a framework for setting the OH&S objectives;
    c) a commitment to fulfill legal requirements and other requirements;
    d) a commitment to eliminate hazards and reduce OH&S risks;
    e) a commitment to continual improvement of the OH&S management system; and
    f) a commitment to consultation and participation of works, and where they exist, workers' representatives.

(Pl.'s AMF at ¶ 26) (emphasis added).

Settlement with East Penn Manufacturing Company ("East Penn") (ECF No. 36), or in the alternative, reserve ruling on this motion until the time of trial?

**Suggested Answer: Yes.**

2. Should this Court enter Plaintiff's proposed order with respect to Defendant's Motion *in Limine* to Exclude Evidence of Indemnity by East Penn (ECF No. 37)?

**Suggested Answer: Yes.**

3. Should this Court enter Plaintiff's proposed order with respect to Defendant's Motion *in Limine* to Exclude Evidence of Evidence of Solatium Damages (ECF No. 38)?

**Suggested Answer: Yes.**

4. Should this Court enter Plaintiff's proposed order with respect to Defendant's Motion *in Limine* to Exclude Testimony at Trial by Plaintiff's Minor Child, G.E. (ECF No. 39)?

**Suggested Answer: Yes.**

5. Should this Court enter Plaintiff's proposed order with respect to Defendant's Motion *in Limine* to Exclude Evidence of Alleged Pain and Suffering (ECF No. 40)?

**Suggested Answer: Yes.**

6. Should this Court enter Plaintiff's proposed order with respect to Defendant's Motion *in Limine* to Exclude Any Claim, Award, or Evidence of Punitive Damages (ECF No. 41)?

**Suggested Answer: Yes.**

## III.  <u>SUMMARY OF ARGUMENT</u>

### A.  <u>Legal Standard</u>

Under Federal Rule of Evidence 402, "[a]ll relevant evidence is admissible unless prohibited by the Constitution, an Act of Congress, or some other provision of the Federal Rules.

Evidence is "relevant" when it has "any tendency to make the existence of any fact that is of consequence to the termination of the action more probable or less probable than it would be without evidence." Fed. R. Evid. 401. This Court has the authority to "exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

**B. This Court Should Enter Plaintiff's Proposed Order with Respect to Defendant's Motion *in Limine* to Exclude Evidence of OSHA Investigation, Citation, and Settlement with East Penn (ECF No. 36).**

1. The OSHA Report is Relevant

Defendant does not argue that the OSHA Report is irrelevant because it cannot do so credibly. The OSHA Report is the heart of this case. It explains the incident that underlies this entire lawsuit. It contains the following critical information in this case:

- The details of the fatality;
- An overview of Decedent's training with respect to the smelter at issue;
- An account of other employees' training, or lack thereof, with respect to the smelter at issue;
- An account of other employees' standard operating procedures with respect to the smelter at issue;
- Citations issued to East Penn for violations of OSHA's regulations following the fatality; and
- Pictures of the smelter kettle at issue.

All of this information is unquestionably relevant in this case.

Defendant shirks the obvious relevant nature of this Report by focusing on what specific OSHA regulation is relevant for the jury to consider. Plaintiff has no objection to limiting the scope of the OSHA report to 1910.28(b)(3)(i), which Defendant concedes is relevant to this case.

2. The Probative Value of the OSHA Report is Not Outweighed by Any Danger of Prejudice, Confusion, or Misleading the Jury

Defendant cites non-precedential cases to suggest that OSHA's position within the Report would have a prejudicial, confusing, and misleading effect on the jury. These are distinct from the case at bar. In *Hines v. Brandon Steel Decks, Inc.*, the defendant wanted to introduce portions of an OSHA report because the court found it had limited relevance because both parties introduced evidence of agency, what the OSHA report was to be used to prove, through other methods of evidence. 754 F.Supp. 199, 200-201 (M.D. Ga. 2014). Essentially, such evidence was cumulative. *Id.* The court also noted the possible prejudice that *could* impact a jury from placing too much weight on an OSHA investigator's "questionable determinations regarding ultimate issues." *Id.*

Here, the OSHA Report is extremely relevant and not cumulative. Defendant has raised several affirmative defenses in its Answer to Plaintiff Amended Complaint that insinuate Decedent acted negligently in the incident that caused his death:

### Eleventh Affirmative Defense

The Decedent may have been negligent in his use or failure to use appropriate safety equipment or to follow appropriate procedures in connection with the incident described in the Amended Complaint, including the failure to use an available safety harness, to use a forklift to load lead into the smelter kettle, or to break down the lead he was facilitating into the smelter kettle away from the lid of the smelter kettle so as to avoid the risk of injury.

### Twelfth Affirmative Defense

Plaintiff's claims are or may be barred by the contributory negligence or comparative fault of Decedent.

### Thirteenth Affirmative Defense

Plaintiff's claims are or may be barred to the extent that the Decedent caused or contributed to the happenings in the Amended Complaint through his own acts or omissions.

*See* Defendant's Affirmative Defenses to Plaintiff's Amended Complaint at p 12. The OSHA Report includes critical information that rebuts these defenses, including evidence that employees

in the smelter had varying degrees of training and that often, employees deviated from protocol when loading led into the smelter kettle. Plaintiff attempted to subpoena a coworker of Decedent who witnessed the incident and who worked alongside him in the smelter kettle who may have been able to testify about this information. However, that individual did not accept service of the subpoena. Defendant was aware of Plaintiff's intention to serve the subpoena on the coworker, so it can hardly feign surprise or prejudice. Plaintiff respectfully requests that this Court reserve ruling on the OSHA Report until Plaintiff can ascertain whether the coworker will testify at trial on this issue. If not, the need for the admissibility of the OSHA Report becomes all the more important to Plaintiff's case. There would be no other evidence in the record to rebut Defendant's defenses. Additionally, Plaintiff does not intend to rely on the OSHA Report to prove any legal determination or conclusion of OSHA.

Additionally, Defendant alleged as an affirmative defenses that the responsibility for the fatality was due to another entity other than Marsh:

### Twenty-First Affirmative Defense

If the allegations of Plaintiff with respect to the injury, loss, or damage are true, said allegations being specifically denied by the Marsh Defendants, then the Marsh Defendants aver that the injury, loss, or damage was not the result of liability producing conduct on the part of the Marsh Defendants, but rather the result of liability producing conduct of other entities and/or individuals who may or may not be parties to this lawsuit and over whom the Marsh Defendants had no control or right or duty to control.

### Twenty-Second Affirmative Defense

The acts and/or omissions of other individuals or entities constitute intervening and/or superseding causes of the injuries and/or losses alleged in the Amended Complaint.

*See* Defendant's Affirmative Defenses to Plaintiff's Amended Complaint at pp 13-14. To the extent Defendant seeks to push fault onto East Penn, the OSHA Report again becomes critical. Not only

could it directly rebut a defense in this case, but it could further be used as evidence as bias against East Penn witnesses. *See e.g. Keating v. East Whiteland Township*, CIVIL ACTION No. 18-2612, 2019 WL 13280174, at *2 (E.D. Pa. Aug. 21, 2019) (citing *United States v. Smith*, 662 F. App'x 132, 137 (3d Cir. 2016)). As set forth in *Keating*,

> "Proof of bias is almost always relevant." If used for impeachment purposes, the evidence's probative value is not substantially outweighed by the danger of jury confusion or unfair prejudice. Any arguable Rule 403 concerns can be addressed by a limiting instruction, if requested.

*Id.* at *1 (citing *Smith*, 662 F.App'x at 137; *United States v. Vega*, 285 F.3d 256, 264 (3d Cir. 2002)). As such, Plaintiff requests that this permit Plaintiff to use the OSHA report to prove bias if a foundation is properly laid.

### 3. The OSHA Report Should Not Be Excluded Under Rules 802 and 803 and Should be Admissible Under Rule 807

As set forth in the case of *Fisher v. Clark Aiken Matik, Inc.*,

> Rule 803(8) (C) of the Federal Rules of Evidence excludes from the bar of the general hearsay rule reports of public agencies setting forth "factual findings resulting from an investigation made pursuant to authority granted by law, unless the sources of information or other circumstances indicate lack of trustworthiness." Four non-exhaustive factors inform the trustworthiness analysis: "(1) the timeliness of the investigation; (2) the investigator's skill and experience; (3) whether a hearing was held; and (4) possible bias when reports are prepared with a view to possible litigation."

No. 3:CV-99-1976, 2005 WL 6182823, at* 1-2 (M.D. Pa. Sept. 26, 2005) (quoting *Beach Aircraft Corp. v. Rainey*, 488 U.S. 153, 168 n. 11, (1988); *Masemer v. Delmarva Power & Light Co*., 723 F.Supp. 1019, 1021 (D.Del.1989)). Under these factors, the OSHA Report is admissible.

First, the OSHA Report timely followed the investigation of the fatality. The incident took place on March 6, 2021. The OHSA investigator was on the scene the next day, and interviews and file review took place shortly thereafter. By June 22, 2021, the entire investigation file was ready

for review and recommendations were to be made. Thus, this Report was made timely in close proximity to the accident, eliminating concerns of mistaken recollections.

Second, Plaintiff is not relying on the OSHA Report investigator's "skill and experience." Plaintiff is relying on the information within the report that rebuts Defendant's contention that Decedent was responsible for or contributed to his own fatality. This includes information about what other employees understood about the training on how to properly lead led into the smelter.

Third, OSHA made recommendations and cited East Penn for violations to the OSHA regulations.

Lastly, there is very little possible bias in this instance where the OSHA Report was drafted following an incident that occurred in the course and scope of the investigator's work duties. Marsh's safety audit of East Penn was not mentioned in the OSHA Report and was in all likelihood completely unknown to the investigator.   Thus, the OSHA Report should be viewed as a trustworthy source of information made in the normal course of work. The *Fisher* case referenced *Hines* for its finding that the OSHA report in that case was inadmissible, which largely turned on the fact that the parties could retrieve the relevant information from other sources. That is not the case here. Plaintiff will be extremely prejudiced if the OSHA Report is excluded from evidence altogether.

Lastly, under Rule 807, the OSHA Report, and any alleged hearsay within it, "is more probative on the point for which it is offer than any other evidence that the proponent can obtain through reasonable efforts." Fed. R. Evid. 807(a)(2). Because it has a sufficient guarantee of trustworthiness, this Court should deem the OSHA Report admissible. Defendant has had reasonable notice of Plaintiff's intent to offer the OSHA Report and has a full and fair opportunity to meet it. *See* Fed. R. Evid. 807(b).

10

####     4.   Plaintiff Has No Objection to Excluding the Settlement Agreement Between East Penn and Marsh Regarding the OSHA Violations

Plaintiff has no objection to the exclusion of the settlement agreement between East Penn and Marsh regarding the OSHA violations.

### C.   **This Court Should Enter Plaintiff's Proposed Order with Respect to Defendant's Motion *in Limine* to Exclude Evidence of Indemnity by East Penn (ECF No. 37).**

####     1.   East Penn's Indemnity of Marsh Is Admissible to Show Bias

Plaintiff admits that the indemnity of Marsh by East Penn is not a relevant fact in Plaintiff's case in chief under Rule 401. Plaintiff submits that this information should be admissible to show bias against Plaintiff based on the contractual term between East Penn and Marsh. If the foundation is properly laid, Plaintiff should be able to produce evidence of the indemnity provision to show any East Penn fact witnesses' biases and credibility as neutral witnesses. *See e.g. Keating*, CIVIL ACTION No. 18-2612, at *2. Again, "[p]roof of bias in almost always relevant." *Id.* at *1 (citing *Smith*, 662 F.App'x at 137). Defendant baldly, and without any legal support, claims that Plaintiff is not justified to use the indemnity provision to establish bias of the East Penn witnesses. The law says differently. Whether the indemnity provision is enforceable is immaterial to this inquiry. There is substantial probative value in demonstrating the motive of East Penn witnesses, whose testimony Defendant has heavily coordinated in the work up this litigation. Accordingly, Plaintiff respectfully requests that this Court adopt the proposed ordered filed contemporaneously with this memorandum, precluding the Plaintiff from introducing this information in her case-in-chief but permitting it to be used for impeachment purposes as necessary once a proper foundation is laid.

2.  <u>Plaintiff Does Not Object to Excluding Evidence, Argument, or Reference to the Pennsylvania Workers' Compensation Act</u>

Plaintiff has no objection to Defendant's Motion *in Limine* to Exclude Evidence of Indemnity by East Penn (ECF No. 37) to the extent it seeks to exclude evidence, argument, or reference to the Pennsylvania Workers' Compensation Act.

**D.  <u>This Court Should Enter Plaintiff's Proposed Order with Respect to Defendant's Motion *in Limine* to Exclude Evidence of Evidence of Solatium Damages (ECF No. 38).</u>**

Plaintiff has no object to Defendant's Motion *in Limine* to Exclude Evidence of Evidence of Solatium Damages (ECF No. 38) to the extent it seeks to exclude evidence of solatium damages. However, Plaintiff should be permitted to testify about her "grief as it relates to the loss of decedent's services, society, and comfort." *Ponzini v. Monroe Cnty.*, 3:11-CV-00413, 2016 WL 4494235, at *2 (M.D. Pa. Aug. 24, 2016). This is because "Pennsylvania's Wrongful Death Act provides that losses of society and comfort are compensable and encompassed within the term 'services,'" which "are independent of any solatium damages for her grief and bereavement. *Id.* Accordingly, Plaintiff respectfully requests this Court carve out this exception as set forth in Plaintiff's proposed order accompanying this Opposition.

**E.  <u>This Court Should Enter Plaintiff's Proposed Order with Respect to Defendant's Motion *in Limine* to Testimony at Trial by Plaintiff's Minor Child, G.E. (ECF No. 39).</u>**

Pursuant to the Parties' Stipulation submitted to the Court on April 16, 2024, this Court should deny Defendant's Motion *in Limine* to Exclude Evidence of Testimony by Plaintiff's Minor Child, G.E. (ECF Doc. 39) as moot.

**F.  This Court Should Enter Plaintiff's Proposed Order with Respect to Defendant's Motion *in Limine* to Exclude Evidence of Alleged Pain and Suffering (ECF No. 40).**

Plaintiff does not dispute that "law in Pennsylvania is clear that where a decedent is killed instantaneously, there can be no recovery for pain and suffering in a survival action." *Nye v. Com., Dep't of Transp.*, 480 A.2d 318, 321 (Pa. Super. Ct. 1984) (citing *Slavin v. Gardner*, 418 A.2d 361 (Pa. Super Ct. 1979)). However, Plaintiff does dispute Defendant's contention that she was required to provide expert testimony on the issue of pain and suffering. Defendant cites *Cominsky v. Donovan* to stand for this proposition.  846 A.2d 1256, 1259 (Pa. Super. Ct. 2004). Yet a reading of *Cominsky* reaches the exact opposition conclusion in this case. In *Cominsky*, the issue was whether the decedent, who was in a vegetive state, could testify about their mother's pain and suffering before her death. *Id.* Under Pennsylvania law,

> A "lay witness may testify as to certain matters involving health, the apparent physical condition of a person, and as to obvious symptoms, but his testimony must be confined to facts within his knowledge, and may not be extended to matters involving the existence or non-existence of a disease, which is only discoverable through the training and experience of a medical expert." Thus, a layperson may not testify to the presence of an underlying disease such as a heart condition or osteomyelitis. This is because such conditions are "not readily observable by the naked eye or even by a physical examination unless symptoms are ascertained and appropriate tests made."

*Id.* at 1259 (internal citations omitted). The Court unequivocally distinguished the facts in *Cominksy* from "others where a lay witness was permitted to testify about the pain of a conscious person, or one who is not in a persistent vegetative state." *Id.* at 1260.

Here, Decedent was conscious prior to the incident, capable of audibly expressing distress. The video footage notably lacks audio. Prior to the conclusion of the discovery deadline, Plaintiff properly subpoenaed the deposition of Decedent's coworker at the time of the incident. The

13

coworker refused the subpoena. Defendant was aware of Plaintiff's intention to serve the subpoena

on the coworker, so it can hardly feign surprise or prejudice. Plaintiff respectfully requests that this

Court reserve ruling on this issue until Plaintiff can inform the Court if the coworker can be located

and subpoenaed to testify at trial to discuss any pain and suffering he witnessed. To the extent

Plaintiff cannot locate and properly subpoena the coworker, Plaintiff will agree to withdraw any

claim for pain and suffering damages.

### G. __This Court Should Enter Plaintiff's Proposed Order with Respect to Defendant's Motion *in Limine* to Exclude Any Claim, Award, or Evidence of Punitive Damages (ECF No. 41).__

Defendant contends this Court should exclude any claim, award, or evidence of punitive

damages in this case. They claim:

> There is no allegation, theory, or evidence to support an award of punitive damages
> in this case. Because Plaintiff cannot meet the high burden of establishing punitive
> damages as a matter of law, Plaintiff must be precluded from offering any evidence
> of punitive damages at trial, including evidence of Defendants' wealth, size, or
> financial condition.

Defendant's Memorandum of Law in Support of its Motion *in Limine* to Exclude Any Claim,

Award, or Evidence of Punitive Damages (ECF No. 41) at p. 11. However, whether there are facts

that support an award of punitive damages is generally a question of fact for the jury, not a question

of law. *Ross v. Brooks,* 1973 MDA 2015, 2016 WL 7421352, at *4 (Pa. Super. Ct. Dec. 22, 2016)

(citing *Daley v. John Wanamaker, Inc.,* 464 A.2d 355, 358 (Pa. Super. Ct. 1983) ("The decision of

whether to award punitive damages and the amount to be awarded are within the discretion of the

fact finder.") Thus, Plaintiff contends that granting Defendant's motion on this point is premature.

Further, Plaintiff was not required to plead punitive damages in the complaint. *Daley,* 464 A.2d at

360 (quoting *Hilbert v. Roth*, 149 A.2d 648, 652 (Pa. 1959) ("The right to punitive damages is a

mere incident to a cause of action an element which the jury may consider in making its determination and not the subject of an action in itself.").

In an effort to compromise with Defendant on this issue, Plaintiff suggests, as forth in the accompanying proposed order, that this Court sets forth following terms as it relates to punitive damages:

- Neither Party will introduce evidence of punitive damages, including reckless or willful misconduct, unless the jury reaches a verdict against Defendant in favor of Plaintiff.
- If the jury reaches a verdict against Defendant in favor of Plaintiff, the Parties will submit the question of whether there is evidence of reckless or willful misconduct to this Court.
- Only upon a finding from this Court that there is sufficient evidence of reckless or willful conduct will the jury be permitted to consider whether punitive damages are appropriate in this matter.

Accordingly, Plaintiff respectfully requests that this Court reserve ruling on Defendant's motion until the time of trial and after the jury reaches a verdict against Defendant and in favor of Plaintiff.

## IV.   <u>CONCLUSION</u>

WHEREFORE, Plaintiff respectfully requests that this Court enter the proposed order addressing Defendant's Motions *in Limine* (ECF Nos. 36-41).

Respectfully submitted,

Dated: April 16, 2024                    **ANAPOL WEISS**

<u>*/s/ Sol H. Weiss*</u>
Sol H. Weiss, Esquire
Gabrielle I. Weiss, Esquire
PA I.D. Nos. 15925 & 325890
Anapol Weiss
One Logan Square
130 N. 18th Street – Suite 1600
Philadelphia, PA 19103
(215) 735-1130

15

sweiss@anapolweiss.com
gweiss@anapolweiss.com

*Attorney for Plaintiff, Victoria Evanoff, as
Administrator of the Estate of John Evanoff,
Deceased*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 16th day of April 2024, the foregoing Omnibus Response to

Defendant's Motions *in Limine* (ECF Nos. 36-41) was filed and made available via ECF to all

counsel of record.


Dated: April 16, 2024                                            **ANAPOL WEISS**


                                                                  */s/ Sol H. Weiss*
                                                                  Sol H. Weiss, Esquire
                                                                  Gabrielle I. Weiss, Esquire
                                                                  PA I.D. Nos. 15925 & 325890
                                                                  One Logan Square
                                                                  130 N. 18th Street – Suite 1600
                                                                  Philadelphia, PA 19103
                                                                  (215) 735-1130
                                                                  sweiss@anapolweiss.com
                                                                  gweiss@anapolweiss.com

                                                                  *Attorney for Plaintiff, Victoria Evanoff, as*
                                                                  *Administrator of the Estate of John Evanoff,*
                                                                  *Deceased*