# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| VICTORIA EVANOFF, as Administrator of the ESTATE OF JOHN EVANOFF, DECEASED | : CIVIL ACTION :  : No. 5:23-cv-03417 |
| Plaintiff, | : |
| vs. | : |
| MARSH USA, LLC, | : |
| Defendant. | : |

## PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO BIFURCATE TRIAL INTO SEPARATE LIABILITY AND DAMAGES PHASES

Plaintiff, Victoria Evanoff, as Administrator of the Estate of John Evanoff, Deceased, by and through her undersigned counsel, hereby submits this Opposition to Defendant, Marsh USA, LLC's ("Defendant" or "Marsh") Motion to Bifurcate Trial in Separate Liability and Damages Phases.

Dated: April 22, 2024                    **ANAPOL WEISS**

                                                 */s/ Sol H. Weiss*
Sol H. Weiss, Esquire (PA I.D. No. 15925)
Gabrielle I. Weiss, Esquire (PA I.D. No. 325890)
One Logan Square
130 N. 18th Street – Suite 1600
Philadelphia, PA 19103
T: (215) 735-1130
F: (215) 875-7701

**TABLE OF CONTENTS**

I. STATEMENT OF PERTINENT FACTS .................................................................................. 1

    A. The March 6, 2021 Smelter Incident ................................................................................. 1

    B. Occupational Health and Safety Act ("OSHA") Representatives Investigate the Smelter Incident, Finding Serious Violations of OSHA Regulations ................................... 1

    C. East Penn Hires Marsh to Perform a Safety Assessment ............................................... 2

II. STATEMENT OF QUESTIONS INVOLVED ............................................................... 4

III. LEGAL ARGUMENT .................................................................................................. 5

    A. Legal Standard .................................................................................................................. 5

    B. Any Alleged Prejudice from Plaintiff's Testimony is Outweighed by the Probative Value of the Testimony in Response to Defendant's Defense. .............................................. 5

    C. Defendant Cannot Prevent Plaintiff from Testifying Based on its Subjective Understanding of Her Trauma. ............................................................................................. 7

    D. There is No Evidence that Bifurcating Liability and Damages in this Case Will Economize Judicial Resources. ............................................................................................ 8

IV. CONCLUSION ........................................................................................................... 8

# **TABLE OF AUTHORITIES**

**Cases**

*Branch v. Tempel University*, No. 21-3099, 2023 WL 3993016 (3d Cir. June 14, 2023) ............... 5

*Idzojtic v. Pa. R.R. Co.*, 456 F.2d 1228 (3d Cir. 1972)) .................................................................. 5

*Thabault v. Chait*, 541 F.3d 512 (3d Cir. 2008) .............................................................................. 5

*U.S. v. Heatherly*, 985 F.3d 254 (3d Cir. 2021) ............................................................................... 7

*U.S. v. Long*, 92 F. F.4th 481 (3d Cir. 2024) ................................................................................... 7

*U.S. v. Womack*, 55 F.4th 219 (3d Cir. 2022) .................................................................................. 7

**Rules**

Fed. R. Civ. P. 42(b) ......................................................................................................................... 5

Fed. R. Evid. 401 .............................................................................................................................. 6

Fd. R. Evid. 402 ................................................................................................................................ 6

Fed. R. Evid. 403 ........................................................................................................................ 5, 6

**Treatises**

Arthur R. Miller, 9A Federal Practice & Procedure § 2388 (3d ed. 2023) ..................................... 5

I.      **STATEMENT OF PERTINENT FACTS**

      A.   **The March 6, 2021 Smelter Incident**

On December 7, 2020, East Penn Manufacturing Company ("East Penn") hired Decedent, John Evanoff, as a Refinery Attendant in the smelter department at the company's Lyons Station, Pennsylvania facilities ("Lyons Complex"). (Defendants' Statement of Undisputed Material Facts[1] ("Def.'s SMF") ¶ 56). On March 6, 2021, Mr. Evanoff was attempting to load a piece of lead through the lid of a kettle when he stepped onto the lid to manually facilitate the piece of lead through the opening. (Def.'s SMF ¶¶ 57, 58). The kettles, which are used to process and refine lead in the manufacture of batteries, are approximately 8' wide, 6.25 deep, with a 4' opening in the lid for access, and are partially recessed into the floor, such that the lid is approximately 2' above the floor. (Def.'s SMF ¶ 53-54). When facilitating the lead through the opening, Mr. Evanoff fell through the opening of the kettle into molten lead and died inside the smelter (the "Smelter Incident"). (Def.'s SMF ¶ 58).

      B.   **Occupational Health and Safety Act ("OSHA") Representatives Investigate the Smelter Incident, Finding Serious Violations of OSHA Regulations**

OSHA dispatched a Certified Safety and Health Officer ("CSHO") the next day, on March 7, 2021. (Plaintiff's Additional Material Facts that Preclude Summary Judgment[2] ("Pl.'s AMF") at ¶ 1). While East Penn claims that there was a policy and procedure in place for loading lead into the smelter and that Mr. Evanoff was trained in these procedures, the CSHO found otherwise. (Pl.'s AMF at ¶ 3). The CSHO interviewed employees in the smelter department on three separate occasions from all three shifts. (Pl.'s AMF at ¶ 2). The interviews revealed that some employees

---

[1] Plaintiff incorporates by reference the facts in Defendants' Statement of Undisputed Material Facts only with respect to facts that Plaintiff agrees are undisputed in Plaintiff's Responses to Defendants' Undisputed Material Statement of Facts, which was filed with Plaintiff's Opposition to Defendants' Motion for Summary Judgment.
[2] Plaintiff incorporates by reference the Additional Material Facts that Preclude Summary Judgment, which was filed with Plaintiff's Opposition to Defendants' Motion for Summary Judgment.

1

recalled training on loading lead into the smelter kettles, while other employees did not receive training on this subject. (Pl.'s AMF at ¶ 4). The CHSO also reported an inconsistency in whether employees were specifically instructed not to stand on the kettle hoods, with some employees saying they were given the instructions while others did not receive the instruction. (Pl.'s AMF at ¶ 5). The interviewees also reported that the kettle hoods, which were supposed to be installed over the openings, were often not installed properly. (Pl.'s AMF at ¶ 6).

On August 20, 2021, OSHA cited East Penn for violations of three serious violations of OSHA's regulations. (Pl.'s AMF" at ¶ 7). OSHA proposed two penalties against East Penn in the amount of $20,948.00. (Pl.'s AMF" at ¶ 8). East Penn settled with OSHA, agreeing to pay $15,000 in penalties for the violations of the OSHA regulations identified after Mr. Evanoff's death. (Pl.'s AMF" at ¶ 9).

### C. East Penn Hires Marsh to Perform a Safety Assessment

On October 17, 2018, Troy Greiss ("Greiss"), Vice President of EHS and Regulatory Affairs at East Penn, emailed Steven Hladczuk ("Hladczuk"), Managing Director at Marsh USA, LLC ("Marsh"), regarding East Penn's interest in engaging Marsh to conduct an "accident prevention assessment" at the Lyons Complex. (Def.'s SMF ¶ 16). East Penn's board of directors was concerned about its workplace incident rate and lack of progress related to its OSHA-recordable incident rate. (Pl.'s AMF" at ¶ 10). Specifically, the board hoped Marsh could "identify some plantwide safety opportunities," with a goal to "to reduce incidents through the organization, whether it be mechanical or physical conditions, and to prevent injuries by unsafe acts of persons and to guard known workplace hazards." (Pl.'s AMF" at ¶ 11). East Penn hoped this assessment would evaluate East Penn's existing health and safety program and the program's strengths and weaknesses. (Def.'s SMF ¶ 19).

In January 2019, East Penn and Marsh executed a written contract (the "Statement of Work"), which set forth the terms and scope of East Penn's engagement of Marsh to conduct the Gap Assessment. (Def.'s SMF ¶ 23). The Statement of Work embodies the full agreement between East Penn and Marsh, superseding "all prior negotiations, representations or agreements, either written or oral, relating to the subject matter." (Pl.'s AMF at ¶ 16). Any changes to the Statement of Work had to be made via written instrument signed by each party. (Pl.'s AMF at ¶ 17). Marsh was in charge of managing the scope of the project. (Pl.'s AMF at ¶ 18).

The purpose and scope of the Gap Assessment is set forth in the Statement of Work:

> East Penn Manufacturing is committed to providing a work environment that ensure and improves the health and safety of all employees. Leadership is interested in continuous risk management improvement and driving toward a "best-in-class" risk management system that leads to attracting and retaining the right type of workforce. **To that end, East Penn Manufacturing seeks an in-depth, outside evaluation of their current loss prevention processes as well as their work culture as it relates to loss prevention and risk management.**
>
> **The objective of Marsh's engagement is to help address East Penn Manufacturing's desire to identify and systemically address identified gaps in its current loss prevention management system, evaluate the effect of those gaps on the organization's loss prevention and risk management culture, and recommend systems to assure that improvements are sustained.**
>
> Marsh understands that East Penn Manufacturing's goal is to determine how well loss management practices are imbedded within the organization's culture. East Penn Manufacturing's loss management culture is the result of the effectiveness of internal systems, and processes, the quality and maintenance of equipment, leadership communication effectiveness, and how people in general interact in their work environments. It is likely that East Penn Manufacturing has multiple cultures – some positive and some negative. **An optimized loss prevention management system that controls variability in the manner in which front line employees perform work each day provides the best opportunity for a meaningful, positive safety culture.**
>
> **Marsh is well-qualified to assist East Penn Manufacturing in their efforts to build a sustainable, best-in-class loss management program.** Marsh has a full-breadth of professional resources to meet East Penn Manufacturing's needs as we currently understand them and to provide technical support as those needs evolve.

3

(Pl.'s AMF at ¶ 19) (emphasis added). To achieve this purpose and scope, Marsh proposed an approach that centered around assessing the "state of the current Loss Prevention Management System.[3]" (Pl.'s AMF at ¶ 20). Marsh said it would review and analyze key loss prevention functions at East Penn, including "staffing, training and written programs" at the Lyons Complex. (Pl.'s AMF at ¶ 21). Marsh's "proprietary audit tool," the OPS Gap, promised to determine how effectively the program is executed. (Pl.'s AMF at ¶ 28). Marsh said it would "focus on understanding and quantifying the effectiveness of the loss prevention program and processes at East Penn Manufacturing, **evaluating all opportunities for increased safety operational effectiveness and efficiency**." (Pl.'s AMF at ¶ 29) (emphasis added). The Gap Assessment was to be accomplished through three main techniques: 1) site visits; 2) document review; and 3) employee interviews. (Pl.'s AMF at ¶ 30).

## II. STATEMENT OF QUESTIONS INVOLVED

1. Should this Court deny Defendant's Motion to Bifurcate Trial into Separate Liability and Damages Phases?

   **Suggested Answer: Yes.**

---

[3] A "loss prevention management system" is a term of art. According to ISO 45001 a worldwide federation of national standards bodies, an occupational health and safety management system, otherwise referred to as a loss prevention management system, is a "management system or part of a management system used to achieve the OH&S policy." (Pl.'s AMF at ¶ 22). An OH&S policy is a "policy related to work-related injury and ill health to workers and to provide safe and healthy workplaces." (Pl.'s AMF at ¶ 23). Injury and ill health is defined as "adverse effect on the physical, mental or cognitive condition of a person." (Pl.'s AMF at ¶ 24). A hazard is a "source with the potential to cause injury and ill health." (Pl.'s AMF at ¶ 25). According to ISO 45001, an OH&S policy should include the following:

   a) **a commitment to provide safe and healthy working conditions for the prevention of work-related injury and ill health** and is appropriate to the purpose, size and context of the organization and to the specific nature of its OH&S risks and OH&S opportunities;
   b) provides a framework for setting the OH&S objectives;
   c) a commitment to fulfill legal requirements and other requirements;
   d) a commitment to eliminate hazards and reduce OH&S risks;
   e) a commitment to continual improvement of the OH&S management system; and
   f) a commitment to consultation and participation of works, and where they exist, workers' representatives.

(Pl.'s AMF at ¶ 26) (emphasis added).

4

### III. LEGAL ARGUMENT

#### A. Legal Standard

While district courts have broad discretion in deciding whether to separate the issues of liability and damages, "[s]eparating trials 'is not to be the usual course.'" *Thabault v. Chait*, 541 F.3d 512, 529-30 (3d Cir. 2008) (quoting *Idzojtic v. Pa. R.R. Co.*, 456 F.2d 1228, 1230 (3d Cir. 1972); *Branch v. Tempel University*, No. 21-3099, 2023 WL 3993016, at *3 (3d Cir. June 14, 2023) (quoting Arthur R. Miller, 9A Federal Practice & Procedure § 2388 (3d ed. 2023)). Bifurcation may be appropriate "[f]or convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues [or] claims...." *Id.* (quoting Fed. R. Civ. P. 42(b). Defendants only argue that this Court should bifurcate liability and damages to avoid unfair prejudice, protect witnesses from undue duress, and economize judicial resources. For the following reasons, those arguments are unavailing.

#### B. Any Alleged Prejudice from Plaintiff's Testimony is Outweighed by the Probative Value of the Testimony in Response to Defendant's Defense.

On one hand, Defendant argues that bifurcation will avoid alleged prejudice because Plaintiff's testimony is not relevant to a jury assessment of liability. Def.'s Motion at p. 7 ("Bifurcation of trial is appropriate under the particular facts of this case because Plaintiff's testimony is **not relevant** to a jury's assessment of liability…") (emphasis added). Yet, in the next sentence, Defendant claims that Plaintiff's testimony should be excluded because Federal Rule of Evidence 403 permits a court to exclude **relevant evidence** if it is unfairly prejudicial. Def.'s Motion at p. 7 ("Federal Rule of Evidence 403 provides in relevant part that '[t]he court may exclude **relevant evidence** if…") (emphasis added). Accordingly, Defendant simultaneously proffers contradictory arguments as to the relevance of Plaintiff's testimony in this case.

5

Under Federal Rule of Evidence 402, "[a]ll relevant evidence is admissible unless prohibited by the Constitution, an Act of Congress, or some other provision of the Federal Rules. Evidence is "relevant" when it has "any tendency to make the existence of any fact that is of consequence to the termination of the action more probable or less probable than it would be without evidence." Fed. R. Evid. 401. Clearly, as the widow of Decedent, Plaintiff's testimony is relevant to this case. She can speak about her experience with her husband with respect to his work habits and following directions. This information is directly relevant to defenses that Defendant has raised, namely that Decedent was responsible for his own death:

### Eleventh Affirmative Defense

> The Decedent may have been negligent in his use or failure to use appropriate safety equipment or to follow appropriate procedures in connection with the incident described in the Amended Complaint, including the failure to use an available safety harness, to use a forklift to load lead into the smelter kettle, or to break down the lead he was facilitating into the smelter kettle away from the lid of the smelter kettle so as to avoid the risk of injury.

### Twelfth Affirmative Defense

> Plaintiff's claims are or may be barred by the contributory negligence or comparative fault of Decedent.

### Thirteenth Affirmative Defense

> Plaintiff's claims are or may be barred to the extent that the Decedent caused or contributed to the happenings in the Amended Complaint through his own acts or omissions.

*See* Defendant's Affirmative Defenses to Plaintiff's Amended Complaint at p 12.

This Court has the authority to "exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. Again, Defendant's contention that Plaintiff can provide no relevant

testimony to the liability aspect of this case is untrue. Plaintiff can speak about her experience with her husband with respect to his work habits and following directions, which responds to Defendant's defense. Handicapping Plaintiff's ability to testify about this topic would be unfairly prejudicial to Plaintiff, as this information would not be presented through any other means of evidence.

Additionally, to the extent this Court agrees that Plaintiff's testimony would be prejudicial, "the possibility that evidence will cause unfair prejudice does not automatically justify exclusion: rather, that risk must substantially outweigh the probative value of the evidence." *U.S. v. Long*, 92 F. F.4th 481, 488 (3d Cir. 2024) (quoting *U.S. v. Womack*, 55 F.4th 219, 234 (3d Cir. 2022)). Alas, "when evidence is highly probative, even a large risk of unfair prejudice may be tolerable." *Id.* (quoting *Womack*, 55 F.4th at 234). Sometimes, evidence is "disturbing because the alleged crimes themselves [a]re extraordinarily disturbing." *Id.* (quoting *U.S. v. Heatherly*, 985 F.3d 254, 266 (3d Cir. 2021). Plaintiff's story is surely a painful one, but it is one that deserves to be heard and is directly relevant to the underlying liability in this case. There is no prevailing reason to keep it away from the jury in phases.

**C. Defendant Cannot Prevent Plaintiff from Testifying Based on its Subjective Understanding of Her Trauma.**

Defendant next argues that Plaintiff should be prevented from testifying so that she should not have to "recount traumatic experiences or be subjected to cross examination on damages issues when such testimony is only necessary if liability is first established." Def.'s Motion at p. 13. Plaintiff should be in charge of deciding what she can tolerate and what she is willing to "recount" before a jury in this case. It is not Defendant's job to muzzle Plaintiff should she desire to testify. Plaintiff deserves her day in court.

### D. There is No Evidence that Bifurcating Liability and Damages in this Case Will Economize Judicial Resources.

Lastly, Defendant claims that bifurcation of trial into separate liability and damages phases "will promote judicial economy and convenience by **potentially** reducing the number of witnesses testifying at trial and the overall length of trial." Def.'s Motion at p. 14 (emphasis added). Defendant's own Motion hits the nail on the head. There is no evidence that a bifurcation of liability and damages will save any judicial resources and time, only "potentially." This is not a complex case. All of the liability evidence from both parties, including cross examination, should be concluded within four days. The economist damages experts can be examined in less than one trial day. In this case, bifurcation will not materially save judicial time or resources.

## IV. CONCLUSION

WHEREFORE, Plaintiff respectfully requests that this Court deny Defendant's Motion to Bifurcate Trial in Separate Liability and Damages Phases.

Respectfully submitted,

Dated: April 22, 2024            **ANAPOL WEISS**

*/s/ Sol H. Weiss*
Sol H. Weiss, Esquire
Gabrielle I. Weiss, Esquire
PA I.D. Nos. 15925 & 325890
Anapol Weiss
One Logan Square
130 N. 18th Street – Suite 1600
Philadelphia, PA 19103
(215) 735-1130
sweiss@anapolweiss.com
gweiss@anapolweiss.com

8

*Attorney for Plaintiff, Victoria Evanoff, as Administrator of the Estate of John Evanoff, Deceased*

## CERTIFICATE OF SERVICE

I hereby certify that on this 22nd day of April 2024, the foregoing Opposition to Defendant's Motion to Bifurcate Trial in Separate Liability and Damages Phases was filed and made available via ECF to all counsel of record.

Dated: April 22, 2024

**ANAPOL WEISS**

*/s/ Sol H. Weiss*
Sol H. Weiss, Esquire
Gabrielle I. Weiss, Esquire
PA I.D. Nos. 15925 & 325890
One Logan Square
130 N. 18th Street – Suite 1600
Philadelphia, PA 19103
(215) 735-1130
sweiss@anapolweiss.com
gweiss@anapolweiss.com

*Attorney for Plaintiff, Victoria Evanoff, as Administrator of the Estate of John Evanoff, Deceased*