# EXHIBIT 1

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| VICTORIA EVANOFF, as Administrator of | : | CIVIL ACTION |
| the ESTATE OF JOHN EVANOFF, | : | |
| DECEASED | : | No. 5:23-cv-03417-JFL |
| Plaintiff, | : | |
| | : | |
| vs. | : | |
| | : | |
| MARSH USA, LLC, | : | |
| | : | |
| Defendant. | : | |
| | : | |

## <u>ORDER</u>

**AND NOW**, this ____ day of _____, 2024, upon consideration of the Petition for Approval of Settlement, it is hereby **ORDERED** and **DECREED** that Petitioner is authorized to enter into a settlement with Defendant, Marsh USA LLC, in the gross present value sum of $███████.  Defendant shall forward all settlement checks to Petitioner's counsel for proper distribution.

It is further **ORDERED** and **DECREED** that the settlement proceeds are allocated as follows:

**<u>GROSS SETTLEMENT</u>**                                                         **$███████**

TO: Anapol Weiss                                                                  **$███████**

      Attorneys' Fee (40%) ($███████)

      Reimbursement of Costs ($22,443.86)

The balance of $███████ is hereby allocated 90% to the Wrongful Death Action and 10% to the Survival Action distributable as follows:

**WRONGFUL DEATH (90%)** _____ $ ████

TO: Victoria Evanoff, Surviving Spouse of John Evanoff, deceased.     $ ████

TO: G████ E████, Surviving Minor Child of John Evanoff, deceased.     $ ████

**SURVIVAL ACTION (10%)** _____ $ ████

TO: Victoria Evanoff, Surviving Spouse of John Evanoff, deceased.     $ ████

TO: G████ E████, Surviving Minor Child of John Evanoff, deceased.     $ ████

It is further **ORDERED** and **DECREED** that the settlement proceeds allocated to G████ E████ shall be made through a structured settlement as well as in a restricted savings account, described as follows:

1.  The settlement proceeds from the Wrongful Death Action allocated to G████ E████ shall be made pursuant to a structured settlement according to the Schedule of Payments as follows (the "Periodic Payments"):

    a.  $ ████ payable monthly, guaranteed for 12 years beginning 07/26/2033 at age 18, with the last guaranteed payment on 6/26/2045.

    b.  $ ████ lump sum payment on 07/26/2033 guaranteed.

    c.  $ ████ lump sum payment on 07/26/2037 guaranteed.

    d.  $ ████ lump sum payment on 07/26/2041 guaranteed.

    e.  $ ████ lump sum payment on 07/26/2045 guaranteed.

    Assignment:  The obligation to make the Periodic Payments described above may be assigned to Mutual of Omaha Structured Settlement Company and funded by an annuity contract issued by United of Omaha Structured Settlement Company, rated A+XV by A.M. Best. To fund the Periodic Payments, Defendant or their Insurer will issue a check in the amount of $ ████ payable to Mutual of Omaha Structured Settlement Company.

    The future Periodic Payments listed above are guaranteed based on current annuity rates and a projected annuity purchase date on or before August 20, 2024.  Any delay in funding the annuity purchase may result in a delay of the payment dates or

a change in the payment amounts that shall be accurately recorded in the settlement agreement and release, qualified assignment and release document and annuity contract without the need of obtaining an amended Petition/Court Order.

2. The settlement proceeds from the Survival Action allocated to G███ E███ shall be placed in a restricted savings account for the sole benefit of G███ E███. The savings account shall be restricted as follows: Not to be withdrawn before the minor attains majority, except for the payment of city, state, and federal income taxes on the interest earned by the savings certificate and savings account, or upon prior Order of Court.

It is further **ORDERED** and **DECREED** that a portion of the settlement proceeds allocated to Victoria Evanoff shall be made pursuant to a structured settlement according to the Schedule of Payments as follows (the "Periodic Payments"):

1. $███ payable monthly, guaranteed for 20 years, starting on 09/01/2024 with the last guaranteed payment on 08/01/2044.

   Assignment:  The obligation to make the Periodic Payments described above may be assigned to PASSCorp and funded by an annuity contract issued by The Prudential Insurance Company of America, rated A+XV by A.M. Best. To fund the Periodic Payments, Defendant or their Insurer will issue a check in the amount of $███ payable to PASSCorp.

   The future Periodic Payments listed above are guaranteed based on current annuity rates and a projected annuity purchase date on or before August 20, 2024.  Any delay in funding the annuity purchase may result in a delay of the payment dates or a change in the payment amounts that shall be accurately recorded in the settlement agreement and release, qualified assignment and release document and annuity contract without the need of obtaining an amended Petition/Court Order

Victoria Evanoff, as Administrator of the Estate of John Evanoff, deceased, is **ORDERED** and **DIRECTED** to file a copy of this **ORDER** with the Register of Wills of Berks County pursuant to 20 Pa. C.S.A. §3323(b)(3) within thirty (30) days.

Victoria Evanoff is further **ORDERED** and **DIRECTED** to file an Affidavit of Deposit regarding the opening of the restricted savings account with the Clerk of Orphans' Court within sixty (60) days.

_____ J.

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| VICTORIA EVANOFF, as Administrator of the ESTATE OF JOHN EVANOFF, DECEASED | : : : | CIVIL ACTION |
| Plaintiff, | : : | No. 5:23-cv-03417-JFL |
| vs. | : : | |
| MARSH USA, LLC, | : : | |
| Defendant. | : : | |

**PETITION FOR APPROVAL OF SETTLEMENT**

Pursuant to Local Rule 41.2, Plaintiff-Petitioner Victoria Evanoff, individually, as representative of her minor child G.E., and as Administrator of the Estate of John Evanoff, deceased ("Plaintiff-Petitioner" or "Victoria Evanoff"), respectfully requests that the Court (a) approve this Wrongful Death Act and Survival Action settlement for the sum of ████████ ████████ dollars ($██████), (b) allocate the settlement proceeds as between Plaintiff's claims under the Wrongful Death Act and the Survival Action statute, (c) allocate the settlement proceeds between Victoria Evanoff and her minor child G.E., and (d) approve Plaintiff-Petitioner's attorneys' fees and reimbursement of litigation costs.  In support thereof, Plaintiff-Petition avers as follows:

**I.      THE EVANOFF FAMILY**

1.      Decedent, John Evanoff, was born on ████████████ and died on March 6, 2021 at the age of 30.

2.      John Evanoff died intestate without a Last Will and Testament.

3.      Victoria Evanoff is the surviving spouse of John Evanoff.  Victoria Evanoff and John Evanoff were married on July 14, 2012, and remained married until the time of John

Evanoff's death on March 6, 2021.  A true and correct copy of the Marriage Certificate of Victoria Evanoff and John Evanoff is attached as **Exhibit A**.

4.     Victoria Evanoff and John Evanoff had one child together, G███████ E████ ("G.E."), who was born in ████.

5.     John Evanoff had no other children.

6.     Victoria Evanoff is an adult citizen of the Commonwealth of Pennsylvania, and currently resides at ██████████████████████.

7.     On August 31, 2022 the Register of Wills of Berks County, Pennsylvania appointed Victoria Evanoff as the Administrator of the Estate of John Evanoff, deceased.  A true and correct copy of the Certification of the Register of Wills is attached as **Exhibit B**.

8.     Plaintiff-Petitioner filed this action as the Administrator of the Estate of John Evanoff, as well as in her individual capacity and as the representative of Victoria Evanoff and John Evanoff's minor child G.E.

9.     Victoria Evanoff, as the surviving spouse of John Evanoff, and G.E., as the sole child of John Evanoff, are John Evanoff's sole beneficiaries under the Pennsylvania Wrongful Death Act, 42 Pa.C.S. § 8301 and the Pennsylvania Survival Action statute, 42 Pa.C.S. § 8302.

10.    Victoria Evanoff, as the surviving spouse of John Evanoff, and G.E., as the sole child of John Evanoff, are John Evanoff's intestate heirs as provided by 20 Pa.C.S. § 2101, et seq.

## II.    BACKGROUND

### A.    The March 6, 2021 Smelter Incident at East Penn Manufacturing Company.

11.    This action arises out of a fatal workplace incident that occurred on March 6, 2021, during the course of John Evanoff's employment as a refinery attendant at East Penn Manufacturing Company ("East Penn").

12.     East Penn is a battery manufacturer that operates a battery manufacturing complex in Lyons, Pennsylvania ("Lyons Complex").

13.     The Lyons Complex has multiple operational divisions, comprised of approximately twenty separate plants, including Plant 41 – Smelter (the "Smelter plant.")

14.     East Penn hired decedent John Evanoff as a refinery attendant in East Penn's Smelter plant on December 7, 2020.

15.     The Smelter plant has smelter kettles that are used to process and refine lead in the manufacture of batteries.

16.     The kettles were made and maintained by East Penn.

17.     The kettles are approximately 8' wide, 6.25' deep, with a 4' opening in the lid, and are used to heat molten lead to a temperature of 1000 degrees Fahrenheit.

18.     On March 6, 2021, while in course of his employment as a refinery attendant at East Penn, John Evanoff stepped onto the lid of a smelter kettle to facilitate a piece of lead through the 4' opening in the lid, when he fell through the opening into the 1000-degree molten lead, resulting in fatal injuries (the "Smelter Incident").

19.     Security video of the Smelter Incident shows that John Evanoff fell into the kettle within a fraction of a second, followed by an eruption of molten material within one second from when John Evanoff fell into the kettle.

20.     The security video thus indicates that John Evanoff did not have significant time to appreciate fright prior to death, and that John Evanoff's death was near instantaneous.

21.     Plaintiff-Petitioner's counsel attempted to serve a subpoena on an eyewitness to the Smelter Incident but were not successful in their efforts to do so.

22.     Accordingly, the only direct evidence of the circumstances of the Smelter Incident is the security video.

**B.     Marsh's January 2019 Statement of Work for East Penn.**

23.     In January 2019, East Penn engaged Marsh USA, LLC ("Marsh") pursuant to a written Statement of Work to perform a one-time outside evaluation, termed an "Operational Loss Prevention Gap Assessment," of East Penn's loss prevention processes and work culture at the Lyons Complex.

24.     Therese Perrette is the individual Consulting Director at Marsh who conducted the gap assessment.

25.     The gap assessment was conducted through an on-line survey, document review, four site visits to East Penn's Lyons Complex in February 2019, and delivery of a written report.

26.     Marsh's site visits to the Lyons Complex consisted of an initial site tour on February 8, 2019, and three subsequent site visits to certain locations in the Lyons Complex on February 13, 14, and 27, 2019, during which Marsh interviewed select employees and supervisors using a survey/questionnaire on categories of safety culture/practices.

27.     East Penn identified four departments as the areas of focus for the site visits.  The departments identified by East Penn as the areas of focus did not include the Smelter plant.

28.     Marsh's site visits to the Lyons Complex were limited to plants A-1, A-2, A-3, A-4, S-1, and Industrial, which are physically separate from, and unrelated to, the Smelter plant.

29.     Marsh never saw or visited the Smelter plant during its site visits.

30.     Marsh has maintained that the Statement of Work did not require Marsh to visit the Smelter plant and that East Penn did not request or expected Marsh to see the Smelter plant.

4

31.     Based on these site visits, an online survey, and document review, Marsh issued a written report to East Penn on March 20, 2019 titled Operational Loss Prevention Gap Assessment (the "Gap Assessment Report").

32.     The Gap Assessment Report discusses the approach to the safety culture surveys that were performed in February 2019, identifies the plants and operations that were visited, and makes certain recommendations for improvements for consideration by East Penn.

33.     Marsh presented the Gap Assessment Report and a PowerPoint presentation to East Penn during an in-person meeting held on May 15, 2019.

34.     East Penn had the sole discretion whether to implement any recommendations made by Marsh.

35.     Marsh's services pursuant to the Statement of Work concluded in May 2019, and Marsh was not engaged to perform any services for East Penn in subsequent years.

## III.     WRONGFUL DEATH ACT AND SURVIVAL ACTION LAWSUIT

36.     On March 3, 2023, Plaintiff initiated this negligence, Wrongful Death Act, and Survival Action lawsuit in the Court of Common Pleas of Philadelphia County, Pennsylvania.

37.     On August 23, 2023, Plaintiff filed an Amended Complaint in the Court of Common Pleas of Philadelphia County, Pennsylvania against Marsh, Therese Perrette, and John Doe Defendants #1-2.

38.     The Amended Complaint was the first pleading in this action to name Marsh as a Defendant.

39.     Marsh timely removed the action from the Court of Common Pleas of Philadelphia County, Pennsylvania to the United States District Court for the Eastern District of Pennsylvania by filing a Notice of Removal on August 31, 2023.  (ECF No. 1, Notice of Removal.)

40.     Plaintiff's Amended Complaint asserts the following claims: Count I – Negligence (Plaintiff v. Therese Perrette and John Doe Defendant #1); Count II – Corporate Negligence (Plaintiff v. Marsh and John Doe Defendant #2); Count III – Vicarious Liability (Plaintiff v. Marsh and John Doe Defendant #2); Count IV – Wrongful Death (Plaintiff v. All Defendants); and Count V – Survival Action (Plaintiff v. All Defendants).  (ECF No. 1-5, Am. Compl.)

41.     On February 5, 2024, Marsh and Therese Perrette filed a Motion for Summary Judgment (ECF No. 22) as well as a *Daubert* Motion to Exclude the Expert Report and Testimony of Plaintiff's standard of care Expert BobbiJo Curley, CSP (ECF No. 23).

42.     On February 20, 2024, Plaintiff filed an Opposition to Marsh and Therese Perrette's Motion for Summary Judgment (ECF No. 26) and an Opposition to Marsh's *Daubert* Motion (ECF No. 27).

43.     On February 27, 2024, Marsh and Therese Perrette filed a Reply Brief in further support of their Motion for Summary Judgment (ECF No. 28).

44.     On April 11, 2024, the Court entered a Stipulation of the Parties and Order dismissing Therese Perrette from the action with prejudice.  (ECF No. 43.)

45.     On April 24, 2024, the Court entered a Stipulation of the Parties and Order dismissing the John Doe Defendants from the action with prejudice. (ECF No. 50.)

46.     Thus, the only remaining defendant in this action is Marsh.

## IV.    SETTLEMENT

47.     On November 9, 2023, the Court entered an order referring this action to United States Magistrate Judge Pamela A. Carlos for a settlement conference.  (ECF No. 14.)

48.     On December 12, 2023, Judge Carlos held a telephonic status conference with counsel.  (ECF No. 18.)

49.     On February 7, 2024, the Parties appeared for an in-person settlement conference with Judge Carlos in the Edward N. Cahn U.S. Courthouse and Federal Building, 504 West Hamilton Street, Suite 3401, Allentown, Pennsylvania 18101.  (ECF No. 24.)

50.     The parties did not reach a settlement at that time, but continued settlement negotiations and agreed Judge Carlos could communicate with counsel ex parte.

51.     On March 12, 2024, Judge Carlos held a telephonic status conference with Defense counsel.  (ECF No. 31.)

52.     On April 16, 2024, Judge Carlos held a phone call with counsel for Plaintiff.

53.     On April 23, 2024, Judge Carlos held a settlement conference with the Parties and counsel via Zoom (ECF No. 48), in which the Parties reached a confidential settlement in principle to resolve this action for the total sum of ███████████████████████ ($██████), subject to approval from the Court.  *See* 20 Pa.C.S. § 3323 (requiring court approval of settlement of survival actions).

54.     The Parties have now memorialized the terms of the settlement in a written Confidential Settlement Agreement and Release ("Confidential Settlement Agreement").  A true and correct copy of the Confidential Settlement Agreement is attached as **Exhibit C**.

55.     Marsh's Motion for Summary Judgment and *Daubert* Motion were pending with the Court at the time the Parties reached a settlement of this action.

56.     If granted, Marsh's Motion for Summary Judgment would result in dismissal of this action in its entirety, and no recovery by Plaintiff.

57.     Plaintiff-Petitioner's counsel, Anapol Weiss, is of the opinion that the settlement of this civil action is fair, reasonable, and represents an appropriate recovery under the facts of this case and the applicable law.  Marsh has maintained throughout this action that its gap assessment

benefited East Penn, that Marsh had no legal duty to inspect the Smelter plant for physical safety hazards, that Marsh owed no duty of care to John Evanoff, and that the undisputed fact that Marsh never saw the Smelter plant confirms that Marsh did not increase the risk of harm to John Evanoff, which, if true, would preclude a finding of liability as a matter of law.  The Parties engaged in arm's length settlement negotiations before Judge Carlos over multiple settlement conferences.  Under the circumstances, the negotiated settlement represents a significant recovery that will transform the lives of Victoria Evanoff and G.E. for the better.

58.     Anapol Weiss has fully informed Plaintiff-Petitioner Victoria Evanoff of the terms and conditions of this proposed settlement.  Anapol Weiss has advised Plaintiff-Petitioner that the proposed settlement of this action is fair and reasonable, and that it represents a significant recovery.  Plaintiff-Petitioner Victoria Evanoff concurs with this opinion.

## V.      COUNSEL FEES AND COSTS

59.     Plaintiff-Petitioner's counsel was retained pursuant to a contingency fee agreement with attorneys' fees calculated at the rate of 40% (forty percent) of the gross recovery.  A true and correct copy of the Fee Agreement is attached as **Exhibit D**.   The total counsel fees are $███████.

60.     Plaintiff-Petitioner's counsel incurred total recoverable costs in the amount of $22,443.86, for which Plaintiff's counsel seeks reimbursement out of the settlement proceeds.  A true and correct Statement of Costs is attached as **Exhibit E**.

61.     Plaintiff-Petitioner's counsel requests that the sum of counsel's fees and expenses be deducted from the settlement sum, and that the net proceeds be distributed as set forth below.

62.     Plaintiff-Petitioner's counsel fee is fair, reasonable, and appropriate compensation given Plaintiff-Petitioner's counsel's significant work on this matter.   This work includes

undertaking efforts prior to filing the action to obtain records from East Penn regarding the identity of any third parties who may have been responsible for safety of the Smelter Plant; conducting written discovery on the Parties and serving subpoenas for depositions and documents directed to East Penn, taking depositions of multiple witnesses, engaging experts with respect to economic damages and liability and working with those experts to prepare expert reports; responding to numerous motions filed by Defendants, including a dispositive Motion for Summary Judgment and *Daubert* Motion, and preparing for trial, which had been scheduled to proceed on May 6, 2024.

## VI.   PROPOSED DISTRIBUTION BETWEEN THE WRONGFUL DEATH ACT AND SURVIVAL ACTION STATUTE

63.     The Wrongful Death Act, 42 Pa.C.S.A. § 8301, compensates the decedent's survivors "for the pecuniary losses they have sustained as a result of the decedent's death." *Machado v. Kunkel*, 804 A.2d 1238, 1245 (Pa. Super. 2002). Under the Wrongful Death Act, the decedent's survivors are entitled to compensation "for the loss of the contributions decedent would have made for such items as shelter, food, clothing, medical care, education, entertainment, gifts and recreation." *Hatwood v. Hosp. of the Univ. of Pa.*, 55 A.3d 1229, 1236 (Pa. Super. Ct. 2012) (*quoting Machado v. Kunkel*, 804 A.2d 1238, 1245 (Pa. Super. Ct. 2002)).  Additionally, the survivors may also recover non-economic damages under the Wrongful Death Act for the value of "services" the decedent would have provided to his family. *Machado v. Kunkel*, 804 A.2d 1238, 1245 (Pa. Super. Ct. 2002).  The term "services" includes the decedent's companionship, society, and comfort to a surviving spouse, as well as comfort, guidance, teaching, emotional support, and moral upbringing in the case of a surviving child.  *See Keller v. Feasterville Family Health Care Center*, 557 F. Supp. 2d 671, 687 (E.D. Pa. 2008).

64.     "A Survival Action under 42 Pa.C.S. § 8302 is brought by the administrator or executor of a decedent's estate in order to recover damages for the decedent's pain and suffering,

the loss of gross earning power from the time of injury to death, and the loss of earning power, less personal maintenance expenses, for the estimated life span of the decedent." *McMichael v. McMichael*, 241 A.3d 582, 587-88 (Pa. 2020).

65.     Pennsylvania law provides for the allocation of damages as between a Wrongful Death Act claim and Survival Action claim in proportion to the values of those claims. *Wilson v. Bensalem Township*, 367 A.2d 397 (Pa. Commw. Ct. 1976).  The Court has broad discretion in ordering this allocation.  Courts have approved settlements allocating the majority of a recovery to the Wrongful Death Act claim over the Survival Action claim where the evidence supports that result. *Smith v. Sandals Resorts Int'l, Ltd.*, 709 F. Supp. 2d 350, 358-59 (E.D. Pa. 2010), *aff'd*, 437 F. App'x 178 (3d Cir. 2011); *see Kaufman v. Jetson Elec. Bikes, LLC*, 2024 U.S. Dist. LEXIS 27128, at *4-5 (E.D. Pa. Feb. 16, 2024) (Leeson, J.) (allocating net settlement proceeds 80% to Wrongful Death Act claim and 20% to Survival Act Claim).

66.     Plaintiff-Petitioner requests that the Court approve a proportionate allocation of the net proceeds of the settlement between the Wrongful Death Act claim and the Survival Action Statute as follows: Wrongful Death claim: 90% (ninety percent); Survival Action claim: 10% (ten percent).

67.     Defense counsel consents to this proportionate allocation of settlement proceeds as between the Wrongful Death Act claim and the Survival Action claim.

68.     This distribution has been approved by the Pennsylvania Department of Revenue, Bureau of Individual Taxes Inheritance Tax Division.  A true and correct copy of a Letter from the Bureau of Individual Taxes Inheritance Tax Division is attached as **Exhibit F**.

69.     The facts of this case support an allocation of 90% of the settlement to the Wrongful Death claim and 10% to the Survival Action claim.

70.    In particular, the loss of John Evanoff's society, companionship, comfort to Victoria Evanoff and the loss of John Evanoff's comfort, guidance, and moral upbringing to G.E., are the most significant component of damages in this action.  These damages are compensable under the Wrongful Death Act.  Victoria Evanoff has provided a sworn affidavit in this matter attesting to the profound loss of John Evanoff's economic and non-economic services.  A true and correct copy of the Affidavit of Victoria Evanoff is attached as **Exhibit G**.  Victoria Evanoff stated in her affidavit that John Evanoff was a loving husband to Victoria Evanoff and loving father to G.E.  In addition to being husband and wife, John Evanoff and Victoria Evanoff were best friends, who spent nearly every day together.  John Evanoff was also a loving father to G.E., who was just five years old at the time of John Evanoff's death.  John Evanoff did the things that a loving father would do for G.E., including taking him to the park to play, taking G.E. on family trips to the zoo and museums, making G.E. breakfast and lunch, supervising G.E.'s schooling, and taking G.E. to doctors' appointments, among other services.

71.    In addition to the profound loss of non-economic services to Victoria Evanoff and G.E., Victoria Evanoff and G.E. also lost John Evanoff's services around the home.  John Evanoff and Victoria Evanoff split home responsibilities.  John Evanoff handled the heavy lifting, as well as cleaning, laundry, grocery shopping, and other tasks.  Plaintiff-Petitioner retained the services of Andrew C. Verzilli, M.B.A. of Verzilli Consulting Group, Inc. to prepare a report of the economic damages to Victoria Evanoff and G.E. caused by the death of John Evanoff ("Verzilli Report").  A true and correct copy of the Verzilli Report is attached as **Exhibit H**.    Mr. Verzilli calculated the economic loss of John Evanoff's services to be 14 hours per week, at an hourly rate of $17, for the estimated remainder of John Evanoff's natural life, which was calculated to be $491,087.

72.     The facts of this case likewise warrant an allocation of net proceeds to the Survival Action claim of no more than 10% (ten percent).

73.     As an initial matter, security video from the Smelter Incident indicates that John Evanoff died near instantaneously after falling into the smelter kettle.  With respect to pain and suffering damages under a survival action, it is well settled law that, when a decedent is killed instantaneously there is no recovery for pain and suffering. *Miller v. Precision Airmotive,* LLC, 2006 Phila. Ct. Com. Pl. LEXIS 532 *18 (Pa. Commw. Ct. 2006); *see also MacLeod v. Russo*, 13 Pa. D. & C. 5th 110, 119 (Pa. Commw. Ct. 2010) (explaining "loss of life's pleasures" "is not a separate element of damage in survival claims, but rather a component of the pain and suffering endured from the between the accident until death."). Further, because John Evanoff died immediately after falling into the smelter kettle, there are no medical expenses or losses to earning power between the date of injury and death.

74.     With respect to non-economic damages under the Survival Action claim, Wage Information from East Penn shows that John Evanoff earned a total of $10,664.82 for 53 days worked.  A true and correct copy of John Evanoff's Wage Information is attached as **Exhibit I**. These wages support an annual income of approximately $50,000/year.  The loss of John Evanoff's gross earning power, however, is offset because Plaintiff-Petitioner has reached a separate settlement of her Workers' Compensation Claim, which provides compensation based upon the gross earning power of John Evanoff.  That settlement includes a waiver of the Workers' Compensation lien, such that East Penn's workers' compensation carrier will not receive any proceeds from the settlement of this action.

75.     In light of the foregoing, Plaintiff-Petitioner respectfully submits that the proposed allocation of damages as between the Wrongful Death Act claim and Survival Action claim is fair

and reasonable.  Further, this allocation has been approved by the Pennsylvania Department of

Revenue. *See* **Exhibit F***,* Letter from the Bureau of Individual Taxes Inheritance Tax Division.

## VII.    PROPOSED DISTRIBUTION BETWEEN VICTORIA EVANOFF AND G.E.

76.    The Wrongful Death Act, 42 Pa.C.S. § 8301, provides a cause of action "to recover

damages for the death of an individual caused by the . . . negligence of another" for certain

"beneficiaries," which are defined as follows:

> Beneficiaries. . . . [T]he right of action created by this section shall exist
> only for the benefit of the spouse, children or parents of the deceased,
> whether or not citizens or residents of this Commonwealth or elsewhere.
> The damages recovered shall be distributed to the beneficiaries in the
> proportion they would take the personal estate of the decedent in the case
> of intestacy and without liability to creditors of the deceased person under
> the statutes of this Commonwealth.

42 Pa.C.S § 8301(b).

77.    "The Wrongful Death Act thus incorporates the intestate act to determine the

allocation of any recovery." *Short v. Pavlides*, 1999 Phila. Ct. Com. Pl. LEXIS 13 (Phila. CCP

Apr. 6, 1999).

78.    "The rules of intestate succession are set forth at 20 Pa.C.S. § 2101, et seq. and

provide for the following distribution where the deceased is survived by a spouse and children:

The intestate share of a decedent's surviving spouse is: (3) If there are surviving issue of the

decedent all of whom are issue of the surviving spouse also, the first $30,000 plus one half of the

balance of the intestate estate." *Short v. Pavlides*, 1999 Phila. Ct. Com. Pl. LEXIS 13 (Phila. CCP

Apr. 6, 1999) (quoting 20 Pa.C.S. § 2102(3)); *In Re Estate of O'Connor*, 140 A.3d 77, 79 (Pa.

Commw. Ct. 2016) ("Where an individual dies intestate, assets of the estate are distributed

according to . . . 20 Pa.C.S. §§ 2101-2110.")

79.    "The rules of intestate succession also provide for inheritance by the 'issue' or

children of the decedent, 20 Pa.C.S. § 2103(1) . . . ." *Id.*

80.     Pursuant to 20 Pa.C.S. § 2102(3), Victoria Evanoff's intestate share of the Estate of John Evanoff is "the first $30,000 plus one-half of the balance of the intestate estate." *Estate of O'Connor*, 140 A.3d at 79.

81.     Pursuant to 20 Pa.C.S. § 2103(1), G.E.'s intestate share of the Estate of John Evanoff is the remainder of the intestate estate after deducting Victoria Evanoff's share. *See id.*

82.     Accordingly, Plaintiff-Petitioner requests that the net proceeds be distributed equally between the beneficiaries of the Estate of John Evanoff pursuant to the Wrongful Death Act, as follows:

    a.  Victoria Evanoff ($30,000 + 50%):     $ ███████

    b.  G.E. (50%):     $ ███████

83.     The settlement proceeds for G.E. will be held in an investment account at Metropolitan Tower Life Insurance Company.  The account will be a custodial account in accordance with the Uniform Transfers to Minors Act.  Sage Settlement Consulting will be serving as investment manager and fiduciary.  Victoria Evanoff will serve as the Custodian/Guardian until G.E. reaches eighteen (18) years of age, at which point G.E. will assume control of the account.

84.     A survival action is brought by the personal representative of the decedent and is an action that the decedent himself could have brought had he survived. *Donlan v. Ridge*, 58 F. Supp. 2d 604 (E.D. Pa. 1999); 20 Pa.C.S. §§ 3372 and 3373.

85.     The amount recovered in a Survival Action becomes a part of the testator's estate, and any amount allocated as proceeds of the survival cause of action passes on to the heirs of the decedent either through his will (if probated) or by the laws of intestate succession in the absence of a probated will. *Moore v. Pocono Med. Ctr.*, 2001 Pa. Dist. & Cnty. Dec. LEXIS 352, at *9 (Monroe County CCP Oct. 17, 2001).

14

86.     As described above, the intestate laws of the Commonwealth of Pennsylvania provide for the distribution of an award to the Estate pursuant to the Survival Action Statute.

87.     Accordingly, Plaintiff-Petitioner requests that the following allocation be made from the net proceeds to the beneficiaries of the Estate pursuant to the Survival Act:

 a.  Victoria Evanoff (50%):  $ ███████

 b.  G.E. (50%):     $ ███████

88.     The settlement proceeds allocated to Victoria Evanoff shall be made pursuant to a structured settlement according to the Schedule of Payments as follows (the "Periodic Payments"):

 a.  $ ██████ payable monthly, guaranteed for 20 years, starting on 09/01/2024 with the last guaranteed payment on 08/01/2044.

  Assignment:  The obligation to make the Periodic Payments described above may be assigned to PASSCorp and funded by an annuity contract issued by The Prudential Insurance Company of America, rated A+XV by A.M. Best. To fund the Periodic Payments, Defendant or their Insurer will issue a check in the amount of $ ██████ payable to PASSCorp.

  The future Periodic Payments listed above are guaranteed based on current annuity rates and a projected annuity purchase date on or before August 20, 2024.  Any delay in funding the annuity purchase may result in a delay of the payment dates or a change in the payment amounts that shall be accurately recorded in the settlement agreement and release, qualified assignment and release document and annuity contract without the need of obtaining an amended Petition/Court Order

89.     G.E.'s settlement proceeds will be allocated as follows:

 a.  The settlement proceeds from the Wrongful Death Action allocated to G.E. shall be made pursuant to a structured settlement according to the Schedule of Payments as follows (the "Periodic Payments"):

  •  $ ██████ payable monthly, guaranteed for 12 years beginning 07/26/2033 at age 18, with the last guaranteed payment on 6/26/2045.

  •  $ ██████ lump sum payment on 07/26/2033 guaranteed.

- $███████ lump sum payment on 07/26/2037 guaranteed.

- $███████ lump sum payment on 07/26/2041 guaranteed.

- $███████ lump sum payment on 07/26/2045 guaranteed.

Assignment:  The obligation to make the Periodic Payments described above may be assigned to Mutual of Omaha Structured Settlement Company and funded by an annuity contract issued by United of Omaha Structured Settlement Company, rated A+XV by A.M. Best. To fund the Periodic Payments, Defendant or their Insurer will issue a check in the amount of $███████ payable to Mutual of Omaha Structured Settlement Company.

The future Periodic Payments listed above are guaranteed based on current annuity rates and a projected annuity purchase date on or before August 20, 2024.  Any delay in funding the annuity purchase may result in a delay of the payment dates or a change in the payment amounts that shall be accurately recorded in the settlement agreement and release, qualified assignment and release document and annuity contract without the need of obtaining an amended Petition/Court Order.

b.  The settlement proceeds from the Survival Action allocated to G.E. shall be placed in a restricted savings account for the sole benefit of G.E. The savings account shall be restricted as follows: Not to be withdrawn before the minor attains majority, except for the payment of city, state, and federal income taxes on the interest earned by the savings certificate and savings account, or upon prior Order of Court.

## VIII.  OVERALL PROPOSED ALLOCATION

90.  For the reasons set forth above, the proposed settlement proceeds of ███████ ███████ ($███████) should be allocated and distributed as follows:

| | |
|---|---|
| GROSS SETTLEMENT | $████████ |
| TOTAL PAYABLE TO ANAPOL WEISS | $████████ |
| Payable to Anapol Weiss Attorneys' Fee 40% Contingency Fee | $████████ |

| | |
|---|---|
| Payable to Anapol Weiss Reimbursement for costs | $22,443.86 |
| NET AMOUNT FOR DISTRIBUTION | $ ███████ |
| **Wrongful Death Act Claim (90%)** | $ ██████ |
| TO: Victoria Evanoff ($30,000 + 50%) | $ ██████ |
| TO: G████ E████ (50%) | $ ██████ |
| **Survival Action Claim (10%)** | $ █████ |
| TO: Victoria Evanoff (50%) | $ ██████ |
| TO: G████ E████ (50%) | $ ██████ |

Distribution will occur after the payment of any and all estate debts, expenses, estate attorney fees, costs and applicable taxes, provided that counsel shall not distribute any funds to said administrator until a copy of this order is filed with the Register of Wills and the additional security as may be required by the Register of Wills pursuant to 20 Pa.C.S. § 3323(b)(3) is posted.

## IX.   REVIEW BY DEFENSE COUNSEL

91.   Counsel for Defendant Marsh has received and reviewed a copy of this Petition for Approval of Settlement and has no objection to its terms or provisions.

WHEREFORE, Plaintiff-Petitioner Victoria Evanoff requests that she be permitted to enter into the settlement recited above and that the Court approve the proposed allocation and distribution of the settlement proceeds.

Dated: June 12, 2024

**ANAPOL WEISS**

*/s/* Sol H. Weiss
Sol H. Weiss, Esquire
Gabrielle I. Weiss, Esquire
PA I.D. Nos. 15925 & 325890
Anapol Weiss
One Logan Square
130 N. 18th Street – Suite 1600
Philadelphia, PA 19103
(215) 735-1130
sweiss@anapolweiss.com
gweiss@anapolweiss.com

*Attorney for Plaintiff, Victoria Evanoff, as*
*Administrator of the Estate of John Evanoff,*
*Deceased*

# EXHIBIT A



# Marriage Certificate

I, Bishop William E. Gampe, hereby certify that on the Fourteenth day of July 2012 at Reading Pennsylvania John Michael Evanoff and Victoria Lei McNeal were by me united in marriage in accordance with license issued by the Clerk of the Orphans' Court Division of Berks County, Penna.

Vol. 442    No. 458

Bishop William E Gampe

Minister, Priest, Rabbi, Judge or Magisterial District Judge

# EXHIBIT B

**Larry Medaglia**
## REGISTER OF WILLS
Berks County,
Pennsylvania

### *Certificate of Grant of Letters Administration*

| | |
|---|---|
| **Estate No.** | **0622-1043** |
| **Estate of** | **JOHN MICHAEL EVANOFF**<br>**Deceased** |
| **Late of** | **CUMRU TOWNSHIP**<br>**BERKS COUNTY** |
| **Soc Sec No.** | █████████ |

    ***WHEREAS***, **JOHN MICHAEL EVANOFF**, late of CUMRU TOWNSHIP, Berks County, who died on March 07, 2021 and;

    ***WHEREAS***, the Grant of LETTERS OF ADMINISTRATION is required for the administration of the estate.

    ***THEREFORE***, I, ***Larry Medaglia***, Register of Wills in and for the County of Berks, in the Commonwealth of Pennsylvania, hereby certify that I have this day granted **LETTERS OF ADMINISTRATION** to **VICTORIA LEI EVANOFF** who has duly qualified as ADMINISTRATOR(RIX) and has agreed to administer the estate according to law, all of which fully appears on record in my Office at Berks County Service Center in Reading, Pennsylvania.

    ***IN TESTIMONY WHEREOF***, I have here unto set my hand and affixed the seal of my Office on August 31, 2022.

_____
*Register of Wills*

# EXHIBIT C

## <u>CONFIDENTIAL SETTLEMENT AGREEMENT AND RELEASE</u>

This Confidential Settlement Agreement and Release (the "Agreement") is made and entered into this ___13th___ day of May, 2024 by and between Victoria Evanoff, individually, as the representative of her minor child G.E., and as Administrator of the Estate of John Evanoff, Deceased ("Victoria Evanoff") and Marsh USA, LLC ("Marsh") (collectively, the "Parties"; individually, a "Party").

## <u>RECITALS</u>

**WHEREAS**, East Penn Manufacturing Company ("East Penn") is a Pennsylvania corporation with a principal place of business at 102 Deka Road, Lyon Station, Pennsylvania 19536 (the "Lyon Facility");

**WHEREAS**, Marsh is a Delaware Limited Liability Company with offices in the Commonwealth of Pennsylvania;

**WHEREAS**, East Penn contracted with Marsh in January 2019 pursuant to a written Statement of Work to perform an "Operational Loss Prevention Gap Assessment" ("Gap Assessment") at the Lyon Facility in February and March 2019;

**WHEREAS**, the Gap Assessment was performed by Marsh Consulting Director Therese Perrette;

**WHEREAS**, on December 7, 2020, East Penn hired John Evanoff as a Refinery Attendant in East Penn's Smelter Department;

**WHEREAS**, on March 6, 2021, John Evanoff was involved in a fatal workplace incident in the course of employment as a Refinery Attendant at East Penn (the "Incident");

**WHEREAS**, on March 3, 2024, Victoria Evanoff instituted a civil action in the Court of Common Pleas of Philadelphia County, Pennsylvania, Case ID No. 23-0300411, in connection with the Incident against Therese Perrette and others (the "Lawsuit");

**WHEREAS**, on August 23, 2023, Victoria Evanoff filed an Amended Complaint in the Lawsuit against Marsh, Therese Perrette, and John Doe Defendants #1-2;

**WHEREAS**, the Amended Complaint asserts the following claims: Count I – Negligence (Victoria Evanoff v. Therese Perrette and John Doe Defendant #1); Count II – Corporate Negligence (Victoria Evanoff v. Marsh and John Doe Defendant #2); Count III – Vicarious Liability (Victoria Evanoff v. Marsh and John Doe Defendant #2); Count IV – Wrongful Death (Victoria Evanoff v. All Defendants); and Count V – Survival Action (Victoria Evanoff v. All Defendants);

CONFIDENTIAL

**WHEREAS**, on August 31, 2023, Marsh filed a Notice of Removal to remove the Lawsuit from the Court of Common Pleas of Philadelphia County, Pennsylvania to the United States District Court for the Eastern District of Pennsylvania, Case No. 5:23-cv-03417-JFL.

**WHEREAS**, Marsh and Therese Perrette disputed the allegations asserted by Victoria Evanoff in the Lawsuit;

**WHEREAS**, on April 11, 2024, the Court entered a Stipulation of the Parties and Order dismissing the Lawsuit as to Therese Perrette only with prejudice;

**WHEREAS**, on April 24, 2024, the Court entered a Stipulation of the Parties and Order dismissing the Lawsuit as to John Doe Defendants #1-2 only with prejudice;

**WHEREAS**, the Parties have concluded that it is in the best interest of all concerned to compromise amicably all claims asserted by the Parties or which could have been asserted by the Parties in connection with the allegations in the Lawsuit, including all claims, crossclaims, counterclaims, causes of action, complaints, petitions or disputes, known or unknown, in law or in equity, in tort or in contract, or pursuant to any federal, state or local statute which the Parties ever had, now have, or hereafter can, shall or may have against the Parties by reason of any cause, matter or event whatsoever which could have been asserted in the Lawsuit;

**NOW, THEREFORE**, in consideration of the foregoing, the promises and mutual covenants contained herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties, intending to be legally bound hereby, agree as follows:

**I.**     **Incorporation of Recitals.**

The recitals set forth above are incorporated herein by reference.

**II.**     **Consideration and Terms.**

**A.**     **Payment.**  In consideration of the foregoing and in full and final settlement of the claims set forth in the Lawsuit, within thirty (30) days after Court approval of this Agreement and receipt of a signed IRS Form W-9 from Anapol Weiss, Marsh shall wire the  sum of ███████ ███████████████ ($███████) (the "Settlement Sum") to Anapol Weiss' escrow account maintained at Esquire Bank.

The Settlement Sum constitutes the total amount that Marsh shall pay Victoria Evanoff pursuant to this Agreement.  Victoria Evanoff agrees to accept the Settlement Sum as full settlement, accord, and satisfaction of all claims, demands, rights, and liens that were asserted, or that could have been asserted, against Marsh in the Lawsuit.

**B.**     **Release.**  In consideration of the foregoing, Victoria Evanoff, on behalf of herself, on behalf of her minor child G.E., and on behalf of the Estate of John Evanoff, and each of their representatives, administrators, attorneys, successors in interest and assigns, and any persons

**CONFIDENTIAL**

subrogated to the rights or having any rights of representation through them and their personal representatives for their claims (hereinafter the "Releasors"), do hereby remise, release, and forever discharge Marsh, and its members, agents, interns, employees (including Therese Perrette), representatives, administrators, predecessors, successors, directors, officers, partners, attorneys, heirs, affiliated corporations or companies, assigns, and insurers and each of them (hereinafter the "Releasees") of and from all causes of action, liabilities, claims, demands, suits, debts, dues, accounts, bonds, covenants, contracts, agreements, judgments, and/or expenses whatsoever, in law or in equity, presently known or unknown, arising out of or related to the subject matter of the Lawsuit (hereinafter, collectively, the "Released Claims").

      **C.**    <u>**Covenant Not to Sue.**</u>  The Releasors each agree that they will not make, assert, or maintain against any of the Releasees any claim, demand, action, or suit arising out of, or in connection with, the Released Claims, including, but not limited to, any claims that were brought, or could, or should, have been brought, in the Lawsuit.

      **D.**    <u>**Dismissal of Lawsuit.**</u>  Subject to Court approval of this Agreement, within five (5) days of receipt of the Settlement Sum and clearance from Victoria Evanoff's counsel's trust account, Victoria Evanoff shall take all actions necessary to mark the Lawsuit dismissed with prejudice, including filing a stipulation of dismissal with prejudice or submitting to the judge to whom the action is assigned a notice of settlement and request for dismissal with prejudice pursuant to Local Civil Rule 41.1(b).

**III.**    <u>**Compromise of Disputed Claims / No Admission of Liability.**</u>

      It is understood and agreed by the Parties that this Agreement is in compromise of disputed claims in the Lawsuit.  The settlement of the claims by and against the Parties shall not be construed as an admission of liability on the part of any Party to this Agreement.  By entering into this Agreement, the Parties do not admit to any liability or wrongdoing, or concede the truth or accuracy of any pleading entered in the Lawsuit, except as to the matters set forth in the recital clauses above.  Further, the Parties deny any and all liability, responsibility, and/or fault.

**IV.**    <u>**Confidentiality.**</u>

      The Parties agree that the Settlement Sum shall be held confidential between them and shall not be disclosed to any individual, person, organization, or entity without the prior written consent of the other Parties to this Agreement, unless required by a court of competent jurisdiction, or by applicable law, regulation, or legal or judicial process, or for purposes of seeking financial or legal or tax advice, or as may be required by licensing authorities or insurers, or as necessary to effect each Party's duties under this Agreement, including the dismissal of claims in the Lawsuit with prejudice.

**V.**    <u>**Non-Disparagement.**</u>

      The Parties agree not to defame or willfully disparage any other Party to this Agreement, or cause the Parties to be defamed or disparaged in any regard or as to any subject matter, including, but not limited to the subject matter of the Lawsuit, except as may be required to make

**CONFIDENTIAL**

statements that would otherwise be disparaging or defamatory by order of any court of competent jurisdiction, or otherwise required by applicable law, regulation, or legal or judicial process, including statements made in the course of prosecuting the Lawsuit.

**VI.**     **Waiver of Terms.**

The Parties agree that the waiver of any provision of this Agreement must be in writing signed by an authorized agent of each Party making such a waiver.  Waiver of any default, breach, or violation of this Agreement shall not be deemed a waiver of any other default, breach, violation, or other provisions of this Agreement.

**VII.**     **Severability.**

Once fully executed, each covenant and agreement contained in this Agreement shall be for all purposes construed to be a separate and independent covenant and agreement.  If any term or provision of this Agreement, or the application thereof to any person or circumstance, should be invalid or unenforceable, the remainder of this Agreement, or the application of such term or provision to persons or circumstances other than those to which it is invalid or unenforceable, shall not be affected thereby, and each term and provision of this Agreement shall be valid and enforced to the extent permitted by law.

**VIII.**     **Governing Law; No Drafting Party.**

This Agreement, and the obligations and performances of the Parties hereunder, shall be governed, interpreted, construed, and enforced solely in accordance with the laws of the Commonwealth of Pennsylvania, without regard to choice of law principles.  The drafting and preparation of this Agreement is the result of the efforts of all Parties hereto and their respective counsel, and the language of all parts of this Agreement shall in all cases be construed as a whole, according to its fair meaning, and not strictly for or against any one Party.

**IX.**     **Binding Effect.**

All of the terms of this Agreement shall be binding upon and inure to the benefit of, and be enforceable by, the successors, assigns, or affiliates of each of the Parties to this Agreement.

**X.**     **Counterparts.**

This Agreement may be executed in two or more counterparts, each of which will be deemed an original, but all of which together shall constitute one and the same instrument.

**XI.**     **Entire Agreement.**

This Agreement constitutes the entire agreement between the Parties with respect to the Lawsuit.  Except as specifically provided herein, no amendment, modification, or alteration of the terms or provisions of this Agreement shall be binding unless signed in writing by all Parties to this Agreement.

CONFIDENTIAL

**XII.** **No Evidence in Future Proceedings.**

The Parties agree that if this Agreement does not become effective for any reason, it shall be deemed to be negotiation for settlement purposes only, and will not be admissible in evidence or usable for any purpose whatsoever, except to enforce the terms of this Agreement.

**XIII.** **Attorneys' Fees and Costs.**

The Parties shall bear their own attorneys' fees and costs.

**XIV.** **Effective Date.**

This Agreement shall become effective, and be deemed executed, on the date that it is signed by an authorized representative of Marsh and by Victoria Evanoff.

**XV.** **Warranty of Authority to Execute Agreement.**

The Parties represent and warrant that no other person or entity has or has had any interest in the claims, demands, obligations, or causes of action referred to in this Agreement, and that they have not sold, assigned, transferred, conveyed, or otherwise disposed of any of the claims, demands, obligations, or causes of action referred to in this Agreement.

**XVI.** **Headings.**

The headings used in this Agreement are for convenience only and shall not be used to aid in the interpretation of any provision of this Agreement.

**XVII.** **Acknowledgement.**

The Parties acknowledge and agree that: (a) each Party has had the opportunity to consult with, and has in fact consulted with, such professionals, experts, and legal counsel of their choice as such Party may have desired with respect to all matters settled and resolved herein; (b) each Party has participated fully in the negotiation and preparation of this Agreement; (c) each Party has carefully reviewed the entire Agreement; (d) each Party has been advised of their rights and obligations with respect to the execution of this Agreement; and (e) each Party is entering into this Agreement knowingly and willfully. Accordingly, this Agreement shall not be more strictly construed in favor of, or against any Party hereto.

**IN WITNESS WHEREOF**, the following have hereto set their hands and seals as of the dates indicated:

CONFIDENTIAL

**MARSH USA, LLC**

By: _____

Name: Jessica Fischweicher

Title: Assistant General Counsel

Dated: 5-13-24

_____

Victoria Evanoff, individually, as
representative of her minor child
G.E., and as Administrator of the
Estate of John Evanoff

Dated: __May 10, 2024__

## AMENDMENT TO
## CONFIDENTIAL SETTLEMENT AGREEMENT AND RELEASE

This Amendment to Confidential Settlement Agreement and Release ("Agreement") is made and entered into this __11__ th day of June, 2024, by and between Victoria Evanoff, individually, as the representative of her minor child G.E., and as Administrator of the Estate of John Evanoff, deceased ("Victoria Evanoff") and Marsh USA, LLC ("Marsh") (together, the "Parties").    This Agreement amends that certain CONFIDENTIAL SETTLEMENT AGREEMENT AND RELEASE dated May 13, 2024, by and between Victoria Evanoff and Marsh ("Settlement Agreement"), as follows:

Page 2, Section II.A., of the Settlement Agreement, which currently reads,

**A.  Payment**.  In consideration of the foregoing and in full and final settlement of the claims set forth in the Lawsuit, within thirty (30) days after Court approval of this Agreement and receipt of a signed IRS Form W-9 from Anapol Weiss, Marsh shall wire the sum of ███ ███████████ ( ████████████ ) (the "Settlement Sum") to Anapol Weiss' escrow account maintained at Esquire Bank.

shall be amended to read,

**A.  Payment**.  In consideration of the foregoing and in full and final settlement of the claims set forth in the Lawsuit, within thirty (30) days after Court approval of this Agreement and receipt of a signed IRS Form W-9 from (i) Anapol Weiss, (ii) Prudential Assigned Settlement Services Corporation, and (iii) Mutual of Omaha Structured Settlement Company, Marsh shall make payment in the amount of ███████████ ( ████████ ) (the "Settlement Sum") as set forth in the attached Exhibit A.

Acknowledged and Agreed:

_____
Victoria Evanoff, individually, as
Representative of her minor child G.E., and
as Administrator of the Estate of John Evanoff

June 11, 2024
_____
Date

MARSH USA, LLC

By: _____
Name: Jessica Fischweicher
Title: Assistant General Counsel

June 11, 2024
_____
Date

## Exhibit A

A.      **Payment**.

In consideration of the release set forth above, and the Parties intending to be legally bound, Marsh agrees to pay the Settlement Sum as follows:

1. Payments due within thirty (30) days after Court approval of the Settlement Agreement and receipt by Marsh of signed IRS Forms W-9 from Anapol Weiss, PASSCorp, and Mutual of Omaha Structured Settlement Company:

   a. $██████ payable to Anapol Weiss's escrow account maintained at Esquire Bank for attorney's fees, reimbursement of costs, and the proceeds of the Survival Action for G████ E████ to be placed in a restricted savings account.  This amount will be paid to Anapol Weiss's escrow account via wire transfer.

   b. $██████ payable to PASSCorp to fund the periodic payments for the benefit of Victoria Evanoff as outlined below.  This amount will be paid via check mailed to:

   > Kari Morrison
   > Sage Settlement Consulting
   > 11044 Research Boulevard, Suite B-415
   > Austin, TX 78759

   c. $██████ payable to Mutual of Omaha Structured Settlement Company to fund the periodic payments for the benefit of G████ E████ as outlined below.  This amount will be paid via check mailed to:

   > Kari Morrison
   > Sage Settlement Consulting
   > 11044 Research Boulevard, Suite B-415
   > Austin, TX 78759

2. Periodic payments made according to the Schedule of Payments as follows (the "Periodic Payments"):

   a. Periodic payments for Victoria Evanoff

   Payee:  Victoria Evanoff

   - $██████ payable monthly, guaranteed for 20 years, starting on 09/01/2024 with the last guaranteed payment on 08/01/2044.

1

Assignee:   Prudential   Assigned   Settlement   Services   Corporation (PASSCorp)
Annuity Issuer:  The Prudential Insurance Company of America

b.  <u>Periodic payments for G███ E███</u>

Payee:  G███ E███

- $ ████  payable monthly, guaranteed for 12 years beginning 07/26/2033 at age 18, with the last guaranteed payment on 6/26/2045.
- $ ████  lump sum payment on 07/26/2033 guaranteed.
- $ ████  lump sum payment on 07/26/2037 guaranteed.
- $ ████  lump sum payment on 07/26/2041 guaranteed.
- $ ████  lump sum payment on 07/26/2045 guaranteed.

Assignee:  Mutual of Omaha Structured Settlement Company
Annuity Issuer:  United of Omaha Life Insurance Company

All the payments set forth herein constitute damages on account of personal physical injuries, arising from an occurrence within the meaning of Section 104(a)(2) of the IRS Code of 1986, as amended.

3.  <u>Qualified Assignment</u>

The Parties acknowledge and agree that Marsh has the right to make a qualified assignment within the meaning of Section 130(c) of the Internal Revenue Code of 1986, as amended, of Marsh's liability to make the periodic payments required in Sections 2 of this Agreement.  The Parties further acknowledge and agree that Marsh has executed Qualified Assignment and Release Agreements of the payment obligations in Sections 2.a. and 2.b. of this Agreement to PASSCorp and Mutual of Omaha Structured Settlement Company, respectively, as assignees (together, the "Assignees") (the "Qualified Assignments"). Victoria Evanoff accepts these Qualified Assignments without right of rejection and shall completely release and discharge Marsh from any obligation to make periodic settlement payments hereunder as are assigned to the Assignees. Victoria Evanoff recognizes that the Assignees shall be the sole obligors with respect to the obligations assigned, and that all other releases that pertain to the liability of Marsh are final, irrevocable, and absolute.

Victoria Evanoff further acknowledges and agrees that the Assignees' obligation for payment of the periodic payments is no greater than the obligation of the person originally liable (whether by suit or agreement) for payment and from whom the obligation was assigned.

In recognition of the obligation of Marsh specified above, the parties further agree as follows:

The obligation of Marsh to make periodic payments shall, by this novation, become the sole and exclusive duty of the Assignees, and the terms and conditions of payments shall remain unchanged in lieu of the substitution of the Assignees for the obligations of Marsh.

Marsh's issuance of the payments in Section 1 of this Agreement shall absolutely and completely discharge Marsh from any further payment obligation under this Agreement or the Settlement Agreement.  If either the Assignees or the issuer of the annuity contract purchased by Assignees to make the payment obligation specified above fail to make payments or become insolvent or bankrupt, Victoria Evanoff's or Victoria Evanoff's heirs or representatives' sole remedy to enforce payment obligations assigned shall be against either the Assignees, guarantor and/or other responsible party other than Marsh.  Marsh will have absolutely no obligations to Victoria Evanoff under those circumstances.

4. <u>Rights to Payments</u>

Said payments cannot be accelerated, deferred, increased, or decreased by Victoria Evanoff or any Payee, nor shall Victoria Evanoff or any Payee have the power to sell or mortgage or encumber same, or any part thereof, nor anticipate the same, or any part hereof, by assignment or otherwise.

5. <u>Right to Purchase an Annuity</u>

The Assignee reserves the right to fund its liability to make periodic payments through the purchase of an annuity policy from the "Annuity Issuer".  The Assignee shall be the owner of the Annuity policy and shall have all the rights of ownership.  The Assignee may have the Annuity Issuer mail payments directly to the Payee.  Victoria Evanoff and/or the Payee shall be responsible for maintaining the currency of the proper mailing address and mortality information to the Annuity Issuer.

6. <u>Payee's Beneficiary</u>

Any payments to be made after the death of the Payee pursuant to the terms of this Settlement Agreement and Release shall be made to such person or entity as shall be designated in writing by the said Payee, upon reaching the age of majority, to the Assignee.  If no such person or entity is so designated by said Payee, such payments shall be made to the Estate of the Payee. No such designation, nor any revocation thereof, shall be effective unless it is in writing and delivered to the Assignee.  The designation must be in a form acceptable to the Assignee, but in no event shall the request of the Payee be unreasonably withheld or denied.

7. <u>Discharge of Obligation</u>

The obligation of the Assignee to make each Periodic Payment shall be fully discharged upon the mailing of a valid check or electronic funds transfer in the amount of such payment on or before the due date to the last address on record for the Payee with the Annuity Issuer.  If the Payee notifies the Assignee that any check or electronic funds transfer was not received, the Assignee shall direct the Annuity Issuer to initiate a stop payment action and, upon confirmation

that such check was not previously negotiated or electronic funds transfer deposited, shall have the Annuity Issuer process a replacement payment.

8.   <u>Nature of Payments</u>

All sums paid pursuant to this Structured Settlement constitute damages on account of personal injuries or sickness arising from physical injuries that resulted from the allegations made in the Lawsuit and no portion of the proceeds paid under this Structured Settlement represent exemplary or punitive damages nor pre-judgment or post-judgment interest.

9.   <u>Future Cooperation</u>

The Parties agree to cooperate fully and execute any and all supplementary documents and take all additional actions that may be necessary or appropriate to give full force and effect to the terms and intent of this Settlement Agreement, which are not inconsistent with its terms.

# EXHIBIT D

**ANAPOL WEISS**
**ONE LOGAN SQUARE**
**130 N. 18th STREET, SUITE 1600**
**PHILADELPHIA, PENNSYLVANIA  19103**

## CONTINGENT FEE AGREEMENT/POWER OF ATTORNEY

**THIS IS A BINDING LEGAL DOCUMENT.**
**READ IT CAREFULLY BEFORE YOU SIGN IT.**
**KEEP A COPY FOR YOUR RECORDS.**

Date: February 1, 2024

This agreement between Victoria Evanoff ("Client(s)") and Sol H. Weiss, Esq., of the law firm of Anapol Weiss (collectively referred to as "Attorneys"), governs the legal representation of Victoria Evanoff, in her own capacity and as the Administrator of the Estate of John Evanoff, deceased, and G███ E████, as a result of a fatal accident occurring on March 6, 2021.

Clients request a contingency fee of 40% of the gross recovery rather than an hourly fee and grant Attorneys a lien to assure payment of the fee and costs of the litigation advanced by attorneys from any recovery. Attorneys will advance all court costs and expenses, including expenses reasonably necessary for the investigation, preparation, trial, appeal and/or settlement of this matter. All such costs and expenses, including expenses advanced or incurred by Attorneys, will be deducted from Clients' portion of the recovery. If clients do not make a recovery, attorneys will neither receive a fee nor repayment of the advanced costs and other expenses.

The terms "costs and other expenses" include but are not limited to: filing fees, costs to obtain records, deposition costs, investigative fees, cost of witnesses, including expert witnesses, necessary travel, cost of consultants to ensure Medicare/Medicaid compliance and to assist in private lien resolution when applicable, costs of trial and all other reasonable and necessary costs and expenses which the Attorneys, in their professional judgment, determine to be reasonably necessary to the prosecution and/or settlement of the claims of the Clients.

Clients understand once a verdict or settlement occurs, they may owe money (lien) to their Health Insurance Provider(s) (Medicare/Medicaid/VA/Other Governmental and Private Health Insurance) who paid medical bills related to their injuries. Clients are solely responsible for the reimbursement and payment of all health insurance/ medical provider liens. Clients authorize Attorneys to pay medical bills/liens on his/her behalf directly to the health insurance provider(s), physician(s) or hospital(s) concerned.

Clients are aware that Pietragallo, Gordon, Alfano, Bosick & Raspanti, LLP will receive a referral fee out of the total attorneys' fee from Anapol Weiss for acting as cooperating counsel. Clients understand that the payment of the cooperating counsel fee does not increase or affect the total contingent fee paid by Clients.  Clients do not object to this division of fees.

Clients understand that the relationship of attorney and client is based upon mutual trust and confidence. Attorneys will keep Clients apprised of any important developments in the above referenced claim.  Clients will keep the attorney advised of their whereabouts at all times, appear

on reasonable notice at any and all depositions and court appearances, and comply with all reasonable requests by attorneys in connection with the preparation and presentation of the above claim.

Upon notification to Clients (certified, registered or regular U.S. mail), Attorneys may withdraw as counsel in the event of Clients' failure to cooperate or if Attorneys conclude, in their sole judgment, that the claim cannot be successfully prosecuted. In the event Attorneys withdraw as counsel, Clients will not be obligated to pay them for any professional services they have rendered. Should Clients discharge Attorneys, Clients will immediately repay all litigation expenses and either agrees to pay (1) a portion of the eventual recovery or (2) a payment based upon time actually expended or reasonably estimated at the Attorney's prevailing rates for work performed prior to discharge.

This agreement does not include appeal in the event of an adverse decision at the trial court level. In that event, the parties will discuss the prospects on appeal and will have to agree to a new contract.

Clients agree that notification to Clients occurs upon mailing of the notification to the last known address for Clients in a pre-paid envelope deposited with the U.S. mail.

Upon completion of Clients' claim and/or closure of Clients' file, Anapol Weiss will only retain the file for a period of six (6) months. Thereafter, portions of the file (as selected by Anapol Weiss) may be electronically retained and the physical file will be destroyed. It is Clients' responsibility to inform Anapol Weiss immediately upon completion/closure of their case if Clients desire any portion of their file.

Clients acknowledge that a copy of this document has been given to Clients to retain. Clients read and understood the contents of this document before signing it.

SHOULD NO MONEY BE RECOVERED BY SUIT OR SETTLEMENT, ATTORNEYS HAVE NO CLAIM OF ANY KIND AGAINST CLIENT FOR ANY PROFESSIONAL SERVICES RENDERED.

Victoria Evanoff
(Claimant Name)                                    (Additional Claimant Name, if applicable)

236 E. Elm Street, Shillington, PA 19607
(Address)                                          (Address)

(Signature)                                        (Signature of Additional Claimant)

(Attorney Signature)                               (Signature of Additional Attorney, if applicable)

# EXHIBIT E

John Evanoff

EVANOFF, JOHN vs PRODUCT LIABILITY

Draft Bill

| Date | Description | Amount |
|---|---|---|
| 03/01/2022 | INVESTIGATION - (11428) SEAN M. HAWKE, P.I. - 2/14/22-2/24/22 | 594.46 |
| 06/22/2022 | COURIER SERVICE - (724) FEDERAL EXPRESS CORP. - 6/7/22 DAN TO VICTORIA EVANOFF | 28.14 |
| 06/22/2022 | COURIER SERVICE - (724) FEDERAL EXPRESS CORP. - 6/9/22 VICTORIA EVANOFF TO DAN | 22.75 |
| 06/22/2022 | FILING - (2468) REGISTER OF WILLS - DESIGNATE SPOUSE EXECUTOR OF ESTATE | 142.75 |
| 06/28/2022 | COURIER SERVICE - (724) FEDERAL EXPRESS CORP. - 6/14/22 DANIEL TO VICTORIA EVANOFF | 28.43 |
| 07/07/2022 | COURIER SERVICE - (724) FEDERAL EXPRESS CORP. - 6/22/22 DAN TO VICTORIA EVANOFF | 29.06 |
| 07/07/2022 | COURIER SERVICE - (724) FEDERAL EXPRESS CORP. - 6/23/22 VICTORIA EVANOFF TO GIW | 23.56 |
| 07/07/2022 | MISCELLANEOUS - (18449) GABRIELLE WEISS - REIMBURSEMENT FOR REQUEST OF DEATH CERTIFICATE | 30.00 |
| 08/09/2022 | MISCELLANEOUS - (3009) VITAL RECORDS - COPY OF DEATH CERTIFICATE | 20.00 |
| 08/22/2022 | COURIER SERVICE - (724) FEDERAL EXPRESS CORP. - 8/10/22 DAN TO DIVISION OF VITAL RECORDS/DEPARTMENT OF HEALTH | 17.09 |
| 09/12/2022 | COURIER SERVICE - (724) FEDERAL EXPRESS CORP. - 8/30/22 GIW TO SUZANNE M MYERS/REGISTER OF WILLS | 21.30 |
| 10/20/2022 | SHERIFF-SERVICE - (2651) ERIC WEAKNECHT, SHERIFF - SERVICE OF A WRIT OF SUMMONS | 150.00 |
| 10/31/2022 | FILING - (49) AMERICAN EXPRESS - JS 10/14/22 AMEX - 10/13/22 COUNTY OF BERKS WRIT OF SUMMONS | 202.75 |
| 01/05/2023 | FILING - (49) AMERICAN EXPRESS - JS 12/15/22 AMEX - 11/28/22 COUNTY OF BERKS | 8.00 |
| 03/16/2023 | SUBPOENA/PROCESS SERVICE - (3916) GUARANTEED SUBPOENA SERVICE - 3/3/23 THERESE PERRETTE | 130.00 |
| 03/21/2023 | SUBPOENA/PROCESS SERVICE - (3916) GUARANTEED SUBPOENA SERVICE - 3/7/23 NATIONAL QUALITY ASSURANCE USA INC | 210.00 |
| 03/21/2023 | SUBPOENA/PROCESS SERVICE - (3916) GUARANTEED SUBPOENA SERVICE - 3/6/23 FACTORY MUTUAL GLOBAL SERVICE LLC | 210.00 |
| 03/24/2023 | SUBPOENA/PROCESS SERVICE - (3916) GUARANTEED SUBPOENA SERVICE - 3/14/23 CSA CENTRAL ARCHITECTS & ENGINEERS PC DBA CSA GROUP | 135.00 |
| 03/24/2023 | SUBPOENA/PROCESS SERVICE - (3916) GUARANTEED SUBPOENA SERVICE - 3/14/23 FM GLOBAL LLC | 135.00 |
| 03/27/2023 | SUBPOENA/PROCESS SERVICE - (3916) GUARANTEED SUBPOENA SERVICE - JOSEPH E DIORIO | 165.00 |
| 03/27/2023 | SUBPOENA/PROCESS SERVICE - (3916) GUARANTEED SUBPOENA SERVICE - 3/6/23 CANADIAN STANDARDS ASSOCIATION GROUP INC | 210.00 |
| 03/27/2023 | SUBPOENA/PROCESS SERVICE - (3916) GUARANTEED SUBPOENA SERVICE - 3/6/23 MARSH & MCLENNAN COMPANIES INC | 210.00 |
| 03/31/2023 | FILING - (49) AMERICAN EXPRESS - TRA 3/15/23 AMEX - 3/3/23 PROTHONOTARY OF PHILADELPHIA | 937.17 |
| 03/31/2023 | MISCELLANEOUS - (49) AMERICAN EXPRESS - JRR 3/15/23 AMEX - 2/24/23 | |

John Evanoff

Account No:    220104621-81
Statement No:    9315

EVANOFF, JOHN vs PRODUCT LIABILITY

| | | |
|---|---|---:|
| | AD LIB | 9.42 |
| 03/31/2023 | TRANSPORTATION/TRAVEL- (49) AMERICAN EXPRESS - JRR 3/15/23 AMEX - 2/28/23 READING PARK MOBILE | 6.45 |
| 03/31/2023 | FILING - (49) AMERICAN EXPRESS - JS 3/15/23 AMEX - 2/21/23 PAYPAL COUNTY OF BERKS | 8.00 |
| 04/11/2023 | SUBPOENA/PROCESS SERVICE - (3916) GUARANTEED SUBPOENA SERVICE - 3/6/23 CELESTE MURDOCK | 210.00 |
| 04/13/2023 | SUBPOENA/PROCESS SERVICE - (3916) GUARANTEED SUBPOENA SERVICE - BODO WOLTORS | 135.00 |
| 04/25/2023 | RESEARCH- (4348) PACER SERVICE CENTER - 1/1/23-3/31/23 | 22.80 |
| 05/12/2023 | SUBPOENA/PROCESS SERVICE - (3916) GUARANTEED SUBPOENA SERVICE - 3/6/23 MARSH & MCLENNAN AGENCY LLC | 155.00 |
| 08/03/2023 | FILING - (49) AMERICAN EXPRESS - JS 7/14/23 AMEX - 6/21/23 PROTHONOTARY OF PHILADELPHIA | 12.70 |
| 08/04/2023 | DEPOSITION VIDEOTAPE - (13196) MAGNA LEGAL SERVICES, LLC - 7/26/23 BRIAN BIRCKBICHLER | 560.00 |
| 08/17/2023 | DEPOSITION TRANSCRIPT - (13196) MAGNA LEGAL SERVICES, LLC - 7/26/23 BRIAN BIRCKBICHLER | 657.75 |
| 10/26/2023 | MISCELLANEOUS - (13196) MAGNA LEGAL SERVICES, LLC - 7/26/23 BRIAN BIRCKBICHLER REMOTE VIDEO SERVICES | 525.00 |
| 10/26/2023 | TELEPHONE/INTERNET - (14967) CONNEX INTERNATIONAL, INC. - 9/14/23 CONFERENCE CALL SHW | 2.74 |
| 12/27/2023 | LEGAL SERVICES - (18877) THE LAW OFFICE OF JOSEPH L MECCA JR - 11/7/23-11/8/23 REVIEW AND MEDIATION TOTAL = $1,740 AW SHARE = 1/2 = $870 | 870.00 |
| 01/03/2024 | EXPERTS- (18879) BOBBIJO CURLEY - RETAINER | 2,000.00 |
| 01/05/2024 | FILING - (49) AMERICAN EXPRESS - JS 12/15/23 AMEX - 11/21/23 PROTHONOTARY OF PHILADELPHIA | 27.00 |
| 01/22/2024 | ECONOMIC EXPERT- (5575) VERZILLI CONSULTING GROUP, INC - ANALYSIS AND REPORT | 3,000.00 |
| 01/23/2024 | COURIER SERVICE - (724) FEDERAL EXPRESS CORP. - 1/5/24 ANJA TO BOBBIJO CURLEY | 60.58 |
| 01/25/2024 | DEPOSITION TRANSCRIPT - (18839) STENO AGENCY, INC. - 1/8/24 THERESE PERRETTE | 3,837.25 |
| 01/25/2024 | DEPOSITION TRANSCRIPT - (13196) MAGNA LEGAL SERVICES, LLC - 1/23/24 VICTORIA EVANOFF | 341.75 |
| 01/30/2024 | RESEARCH- (4348) PACER SERVICE CENTER - 10/1/23-12/31/23 | 1.70 |
| 02/01/2024 | EXPERTS- (18879) BOBBIJO CURLEY - 11/15/23 & 1/2/24-1/17/24 TOTAL = $3,510 - $2,000 RETAINER PAID ON 1/5/24 = $1,510 | 1,510.00 |
| 02/05/2024 | FILING - (18449) GABRIELLE WEISS - FILING FEES BERKS COUNTY 3/20/23, 4/26/23, 5/1/23 | 24.00 |
| 02/06/2024 | DEPOSITION TRANSCRIPT - (18839) STENO AGENCY, INC. - 2/1/24 TROY GREISS | 2,722.46 |
| 03/01/2024 | EXPERTS- (18879) BOBBIJO CURLEY - 2/14/24-2/21/24 | 2,190.00 |
| 04/22/2024 | TELEPHONE/INTERNET - (14967) CONNEX INTERNATIONAL, INC. - 2/9/24 CONFERENCE CALL SHW | 0.92 |
| | Total Advances | 22,550.98 |
| | Total Current Work | 22,550.98 |

| | | |
|---|---|---|
| 10/14/2022 | 2022-COST REIMBURSEMENT -GABI WEISS CK# 1079- CHARGE NEVER PROCESSED ON HER CREDIT CARD BUT SHE WAS REIMBURSED BY | |

John Evanoff

EVANOFF, JOHN vs PRODUCT LIABILITY

|            | ANAPOL                                                     |          |
|------------|------------------------------------------------------------|----------|
|            | ANAPOL                                                     | -30.00   |
| 11/10/2022 | 2022-COST REIMBURSEMENT -COUNTY OF BERKS CK# 228396        | -77.12   |
|            | Total Payments                                             | -107.12  |
|            |                                                            |          |
|            | Balance Due                                                | $22,443.86 |

# EXHIBIT F

REV mL018 2


**pennsylvania**
DEPARTMENT OF REVENUE
HARRISBURG PA  17128-2005

ANAPOL WEISS
SOL H. WEISS, ESQUIRE
130 N 18TH ST STE 1600
PHILADELPHIA PA  19103-2780

| | |
|---|---|
| Date Issued | 05/22/2024 |
| Letter ID | L0025455352 |
| Case Number | 0-007-749-474 |

**Wrongful Death Survival Action Allocation**

The Pennsylvania Department of Revenue received the Petition for Approval of Settlement Claim to be filed on behalf of the below-referenced estate in regard to a Wrongful Death and Survival Action. It was forwarded for the approval of allocated proceeds paid to settle the actions.

According to the petition, the decedent died as a result of a workplace accident. The decedent is survived by his spouse and minor child. The decedent was 30 years old.

**Account Information**

Estate of: EVANOFF, JOHN M                                File Number: 0622-1043

**Departmental determination**

If you have any questions regarding this matter, please direct them using the contact information listed below.

Susan Cruz
(717) 787-8327

Please be advised that, based upon these facts and for Inheritance Tax purposes only, the department has no objection to the proposed allocation of the gross proceeds of this action:

Wrongful Death Claim: $█████
Survival Action Claim: $█████

Proceeds of a Survival Action are an asset included in the decedent's estate and are subject to the imposition of Pennsylvania Inheritance Tax (42 Pa. C.S.A. § 8302) (72 P.S. §§ 9106, 9107). Costs and fees must be deducted in the same percentages as the proceeds are allocated (*Estate of Merryman*).

As the department has no objections to the petition, an attorney from the Pennsylvania Department of Revenue will not be attending any hearing regarding it.

Please use the contact information provided above if you or the Court have any questions or requires anything additional from this bureau.

**References**

In re Estate of Merryman, 669 A.2d 1059 (Pa. Cmwlth. Ct. 1995)

# EXHIBIT G

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| VICTORIA EVANOFF, as Administrator of the ESTATE OF JOHN EVANOFF, DECEASED | : CIVIL ACTION<br>:<br>: No. 5:23-cv-03417 |
| **Plaintiff,** | : |
| | : |
| **vs.** | : |
| | : |
| **MARSH USA, LLC,** | : |
| | : |
| | : |
| **THERESE PERRETTE, and** | : |
| | : |
| | : |
| **JOHN DOE DEFENDANTS # 1-2** | : |
| | : |
| | : |
| **Defendants.** | : |

## AFFIDAVIT OF VICTORIA EVANOFF

1.      My name is Victoria Evanoff. I am the Plaintiff in the above-captioned matter.

2.      On March 6, 2021, I tragically lost my husband, John Evanoff, when he was fatally injured at work at East Penn Manufacturing Company, Inc.

3.      John and I were together as high school sweethearts. We got engaged on October 14th, 2011 and were married on July 14th, 2012.

4.      John was a loving husband. He and I were equals in the home, so we split everything as far as home duties. I did most of the cooking and cleaning, John would take out the trash and handle anything that had to do with heavy lifting. We both did dishes and we would do laundry together. We both went grocery shopping together as well.

5.      He was an incredible father to our son G█████, who was born in ████████. G█████ was a micro-premie and was born about 3 months early. G█████ had a long 5 month journey in both the Reading and Hershey NICUs. He and G█████ were best buds and they were

Evanoff_02763

always doing things together when John was home from work. John would take him to play outside and go to the playground. They also played video games together and watched movies.

6.      During Covid, John also made sure G█████ would go to school on the computer or walk him to school and walk with him home from school. He would feed him breakfast and lunch. He also would take him to doctors' appointments if necessary. If John was at work, I would handle those things at home.

7.      John never went anywhere, except work, without G████ and me. We were a family unit. We would go to the zoo and to the museums together. We would go to Ohio every year to see John's sisters and we would do fun activities there as well.

8.      Financially, John was the breadwinner for the entirety of our relationship. I worked but never made nearly as much as he did. We had a joint bank account and we would share the money that was made. John owned our vehicle, the car insurance was in his name, the utilities were in his name, the internet was in his name, our apartment lease was in his name. I believe even G████'s health insurance was always through his employment. I didn't ever have anything in my name until after the accident occurred. My income was always supplemental. John and I decided that I would be a stay at home mother when he became employed at Deka. I had just resigned from my job a few days before his accident and had no income of my own when it occurred.

9.      John wasn't just my husband, we were also best friends. Losing him really affected every single aspect of our lives. We did absolutely everything together at all times. Telling a five year old that their daddy is never coming home from work was the hardest things I've ever had to do. G████ was so affected by the accident that I had to physically walk him directly to the door of his school and he'd cry hysterically thinking he'd go into school and something would happen

Evanoff_02764

to me while he would be there. His dad went to work one night and never came home. He thought I would drop him off at school and never come to pick him up. He still struggles with losing his dad so young and will for the rest of his life. Even more than my own heart ache, my son's life was forever altered and he will always miss his dad.

10.     John was a wonderful man. He worked for non-profits with mentally handicaped individuals before Deka, and in nursing homes taking care of the elderly. G███ and I didn't just lose a great man, the world did.

I declare, under penalty of perjury and pursuant to 28 U.S.C. § 1746, that all of the information provided in this Affidavit is true and correct to the best of my knowledge, information, and belief.

Date:   January 3, 2024

Victoria Evanoff

3

# EXHIBIT H

# Verzilli Consulting Group, Inc.
## Consulting Economists

Office Address:
411 North Broad Street
Lansdale, PA 19446

(215) 368-7797
Fax: (215) 368-9006

January 7, 2024

Gabrielle I. Weiss, Esquire
Anapol Weiss
One Logan Square
130 North 18th Street
Suite 1600
Philadelphia, PA 19103

Re:   Estate of John Evanoff

Dear Ms. Weiss:

The following is our analysis of the values of the losses in earning capacity and household services relative to John Evanoff, deceased. Mr. Evanoff passed away on March 6, 2021, as a result of injuries sustained in a work-related incident.

The opinions are presented based on Pennsylvania damage guidelines.

## Documents Reviewed

- Amended Complaint
- Records from the PA Department of Labor/Industry
- Wage Records from East Penn Manufacturing
- Affidavit from Victoria Evanoff
- Death Certificate
- Various Publications/Source Documents (as cited)

Evanoff_02766

**Estate of John Evanoff**
**Page 2**

## Background

John Evanoff was born on ███████████. At the time of his passing, he was 30.3 years of age, with an average statistical life expectancy of an additional 45.9 years (Life Tables: CDC).

Mr. Evanoff was employed with East Penn Manufacturing in the smelting department with average weekly earnings of $1,022.94 ($53,193 annually). Mr. Evanoff had been employed in this capacity since December 2020. In addition, Mr. Evanoff graduated from high school.

Mr. Evanoff is survived by his wife, Victoria, and a son, G████ (age 8)

## Methodology

### Lifetime Earning Capacity

Utilizing 1) Mr. Evanoff's background and 2) economic principles, we have presented an estimate of earning capacity based on his annualized earnings with East Pen Manufacturing of $53,193. This figure has been held constant to the present time.

This methodology considers PA damage guidelines, in which earning capacity is to consider the individual's "economic horizons."

### Duration of Estimates

The loss in future earning capacity is estimated to the date that John Evanoff would have attained age 67, which is normal retirement age for individuals born since 1960.

This retirement age, as a measure of earning capacity, considers both 1) the fact that there is no mandatory retirement age in the United States and 2) that labor force participation for the older population has been increasing (Older Workers: Labor Force Trends and Career Options: www.bls.gov).

Finally, retirement at age 67 is further supported by research from the Center for Retirement Research, the Social Security Administration, and the Journal of Forensic Economics relative to labor force participation and retirement trends (i.e., "Trends in Social Security Claiming").

Evanoff_02767

**Estate of John Evanoff**
**Page 3**

Fringe Benefits

The value of employer-provided benefits is included in the value of earning capacity. Employer-provided benefits at East Penn Manufacturing include matching 401K contributions and health insurance. Based on data from Employer Costs for Employee Compensation, we have estimated the value of employer-provided benefits to be 22.6% of earnings.

Future Growth

Future earnings have been increased at annual productivity growth rates in the range of 0.0% (total offset) to 1.0%. This range has significance in the American economy and reflects the range of average annual increases in worker wages due to increasing worker productivity over both the long run and the short run.  The rates can be introduced under the Kaczkowski v. Bolubasz decision.

In further support of the above range of productivity growth rates, from 2003 through 2022, average annual productivity growth in the non-farm private sector of the economy has been approximately 1.6% (Bureau of Labor Statistics).  In addition, from 2013 through 2022, average annual productivity growth has been 1.6% annually.

We would also note that real compensation has increased, at average annual rates of 1.2% and 0.9%, over the last ten and twenty-year periods.  This range is also within estimates of productivity and real wage growth forecasted by the Social Security Administration.

Personal Maintenance

Based on data from 1) the Consumer Expenditure Survey and 2) research from the Journal of Forensic Economics ("Personal Consumption by Family Type and Household Income"), personal maintenance expenses, relative to John Evanoff, have been estimated to be 25% of earnings.

This estimate of personal maintenance considers the concept of "shared expenses" in a household with multiple members.

Personal maintenance has been estimated, consistent with the guidelines set forth in the McClinton v. White decision. Further, personal maintenance is not total consumption; therefore, the net losses presented do not represent savings.

Earning Capacity

Earning capacity may be defined as the level of income that an individual may reasonably be expected to receive from work, given that individual's age, level of educational attainment, particular skills and talents, actual earnings and work history, intentions, and the supply and demand conditions in the labor market, relative to the individual's realistic employment choices. It should be noted that the realization of earning capacity (utilization of earnings) may be a function of economic and non-economic factors and is not a measure of potential earning capacity.

Loss in Services

Mr. Evanoff provided household services for the benefit of his family. Based on the affidavit of Victoria Evanoff, they "split everything as far as home duties." Economic theory supports that household services individuals provide for family members have economic value.

Based on data from The Dollar Value of a Day, we have estimated the loss in services to be 14 hours per week. Household services have been valued at an hourly rate of $17 (www.bls.gov) to the date Mr. Evanoff would have been age 70. Future services have been estimated based on the total offset approach.

Finally, the value of household services is not limited to out-of-pocket expenses. It is to consider the economic value of household production.

Estate of John Evanoff
Page 5

## Summary of Opinions

Based on the methodology discussed and the information provided to date, we have estimated the losses in earning capacity and household services, relative to John Evanoff, to be as follows:

| | |
|---|---|
| Loss in Earning Capacity | $1,904,317 to $2,224,647 |
| Loss in Household Services | $491,087 |
| **Total Economic Loss** | **$2,395,403 to $2,715,734** |

The opinions presented are within a reasonable degree of economic certainty. We reserve the right to revise our analysis upon receipt of information that may impact the data and assumptions utilized.

The following pages are detailed summary tables of the estimates. If you have any questions, please contact us.

Sincerely,

Andrew C. Verzilli, M.B.A.

**John Evanoff**

**Table 1 : Loss in Earning Capacity**

|  | 0.0% Productivity | | 1.0% Productivity | |
|---|---|---|---|---|
| Future Earning Capacity | $ | 1,796,737 | $ | 2,124,944 | [$53,193 Annually] |
| Less Personal Maintenance | $ | (449,184) | $ | (531,236) | [25% of Earnings] |
| Loss in Benefits | $ | 406,063 | $ | 480,237 | [22.6% of Earnings] |
| Net Loss in Earning Capacity | $ | 1,753,616 | $ | 2,073,945 | |
| Past-Lost Earnings | $ | 150,701 | $ | 150,701 | [to January 2024] |
| Total Past + Future Loss | $ | 1,904,317 | $ | 2,224,647 | |

Evanoff_02771

**John Evanoff**

**Table 2 : Loss in Household Services**

| | | | |
|---|---|---|---|
| Past-Lost Services | $ | 35,925 | [to January 2024] |
| Future Lost Services | $ | 455,162 | [To Age 70] |
| **Total Loss in Services** | **$** | **491,087** | |

# EXHIBIT I

# EAST PENN manufacturing co., inc.



*P.O. BOX 147, DEKA ROAD   •   LYON STATION, PA 19536-0147*
*PHONE: 610-682-6361   •   MEDICAL CENTER FAX: 610-682-6351*

## WAGE INFORMATION

EMPLOYEE's NAME:   JOHN M EVANOFF      EMPLOYEE #:   205200

DATE OF INJURY:   03/06/2021      DATE OF HIRE: 12/07/20

| | FROM | TO | | REGULAR EARNINGS | BONUS EARNINGS | DAYS WORKED |
|---|---|---|---|---|---|---|
| 1st Period | 03/01/2020 | 05/30/2020 | $ | 0.00 | 0.00 | 0 |
| 2nd Period | 05/31/2020 | 08/29/2020 | $ | 0.00 | 0.00 | 0 |
| 3rd Period | 08/30/2020 | 11/28/2020 | $ | 0.00 | 0.00 | 0 |
| 4th Period | 11/29/2020 | 02/27/2021 | $ | 10,664.82 | 0.00 | 53 |

Bonus:   -

Current Hourly Rate:   22.35

Average Hourly Rate:   22.35

# EAST PENN manufacturing co., inc.

*P.O. BOX 147, DEKA ROAD  •  LYON STATION, PA 19536-0147*
*PHONE: 610-682-6361  •  MEDICAL CENTER FAX: 610-682-6351*



## WAGE INFORMATION

EMPLOYEE's NAME:  JOHN M EVANOFF

EMPLOYEE #:  205200

DATE OF INJURY:  03/06/2021

DATE OF HIRE:  12/07/20

10,664.82

(Pre Injury Wage)

X 2/3 = _____   (Total Disability)
                       PMA / Hartford

- Light Duty Wages $5.75/Hr. 40 Hrs/Weeks
Minus Taxes and Payroll Deductions

X 2/3 = _____   (PMA / Hartford)

21 Day Waiting Period

Vacation or Personal Days will receive light duty wages.

Not eligible for no work or inventory days. Must work or take a vacation or personal holiday.

East Penn 424

# EAST PENN manufacturing co., inc.

*P.O. BOX 147, DEKA ROAD · LYON STATION, PA 19536-0147*
*PHONE: 610-682-6361 · MEDICAL CENTER FAX: 610-682-6351*



## WAGE INFORMATION

EMPLOYEE's NAME:  JOHN M EVANOFF      EMPLOYEE #:  205200

DATE OF INJURY:  03/06/2021      DATE OF HIRE:  12/07/20

East Penn 425